


RECEIVED
AXM
5/31/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| HEATHER LOUISE BENDL,<br><br>        Plaintiff,<br><br>    v.<br><br>ERIC F. RINEHART, in his individual and official capacities as Lake County State's Attorney; KEVIN J. BERRILL, in his individual and official capacities as Assistant Lake County State's Attorney; CHRISTY M. HARTFORD, in her individual capacity; Jacquelyn D. MELIUS, in her individual capacity for non-judicial acts and official capacity for declaratory relief; and JOHN/JANE DOES 1-10,<br><br>        Defendants. | Case No.<br><br>Judge<br><br>**1:26-cv-6428**<br>**Judge Thomas M. Durkin**<br>**Magistrate Judge Jeannice W. Appenteng**<br>**Random / Cat. 2** |

## COMPLAINT FOR CONSTITUTIONAL AND ADA VIOLATIONS, DECLARATORY RELIEF, DAMAGES, SUPPLEMENTAL STATE-LAW CLAIMS, AND PROSPECTIVE RELIEF

### INTRODUCTION

1. Plaintiff Heather L. Bendl, proceeding pro se, brings this civil-rights action for independent constitutional and statutory injuries arising from Defendants' allegedly retaliatory and procedurally defective use of court, prosecutorial, administrative, disability-accommodation, and service processes against her after she engaged in protected speech, protected petitioning activity, appellate litigation, ADA

accommodation requests, judicial-misconduct reporting, and federal civil-rights preservation.

2.     Plaintiff does not ask this Court to review, reverse, modify, vacate, or enforce any child-custody judgment, parenting-time order, child-support order, domestic-relations decree, state appellate decision, or ongoing state contempt proceeding. Plaintiff brings this action only for independent constitutional and statutory injuries arising from retaliation, denial of due process, off-record monitoring of protected speech, denial of meaningful disability access, fair-notice violations, chilling of protected speech, coordinated retaliatory conduct, civil conspiracy under 42 U.S.C. § 1983, and intentional infliction of emotional distress.

**JURISDICTION AND VENUE**

3.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

4.     This Court has jurisdiction under 28 U.S.C. § 1343 because Plaintiff seeks redress for deprivation, under color of state law, of rights secured by the Constitution and federal civil-rights statutes.

5.     Plaintiff brings claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, the ADA anti-retaliation and interference provision, 42 U.S.C. § 12203, and Illinois supplemental state law. Plaintiff reserves the right to seek leave to amend if discovery reveals facts supporting claims under 42 U.S.C. §§ 1985 or 1986.

6. This Court has supplemental jurisdiction over Plaintiff's Illinois state-law claim for intentional infliction of emotional distress under 28 U.S.C. § 1367 because that claim arises from the same facts and controversy as Plaintiff's federal claims.

7. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Lake County, Illinois.

8. Plaintiff currently resides in Edgewater, Volusia County, Florida, but the core acts challenged here were initiated, coordinated, processed, mailed, or performed by Illinois officials and actors in Lake County, Illinois.

## PARTIES

9. Plaintiff Heather L. Bendl is an adult resident of Edgewater, Volusia County, Florida.

10. Plaintiff is a mother, former Illinois resident, Florida resident, self-represented litigant, disabled litigant, ADA accommodation requester, public advocate, and complainant regarding alleged governmental and judicial misconduct.

11. Plaintiff has documented right profound sensorineural hearing loss and hearing-related limitations affecting her ability to meaningfully participate in court proceedings without reasonable accommodations.

12. Plaintiff has also asserted PTSD and trauma-related limitations arising from or aggravated by her experiences in Circuit 19 proceedings starting October 8, 2020, including removal of her children, foster-care involvement, ongoing separation from her children, and related family-court proceedings.

13. Defendant Eric F. Rinehart is the elected Lake County State's Attorney. He is sued in his official capacity for declaratory and prospective relief and in his individual capacity only for conduct not protected by absolute prosecutorial immunity, including administrative, supervisory, investigative, service-related, retaliatory, or non-advocacy conduct. Defendant Rinehart is named under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act where applicable, and Plaintiff's supplemental Illinois state-law claim for intentional infliction of emotional distress, as set forth in this Complaint. Plaintiff reserves the right to seek leave to amend if discovery reveals facts supporting claims under 42 U.S.C. §§ 1985 or 1986.

14. Defendant Kevin J. Berrill is an Assistant Lake County State's Attorney. He is sued in his official capacity for declaratory and prospective relief and in his individual capacity only for conduct not protected by absolute prosecutorial immunity, including administrative, investigative, service-related, retaliatory, or non-advocacy conduct. Defendant Berrill is named under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act where applicable, and Plaintiff's supplemental Illinois state-law claim for intentional infliction of emotional distress, as set forth in this Complaint. Plaintiff reserves the right to seek leave to amend if discovery reveals facts supporting claims under 42 U.S.C. §§ 1985 or 1986.

15. Defendant Christy M. Hartford is, upon information and belief, an employee, agent, representative, or staff member connected to the Lake County State's Attorney's Office or related court/prosecutorial service process. She is sued in her individual capacity. Hartford signed or is identified on the Certificate of Service for

4

the contempt notice mailed to Plaintiff. Plaintiff alleges that Hartford participated in preparing, certifying, processing, mailing, docketing, or relying on the contempt notice and certificate of service that contained a materially incorrect or hybrid address and was not reasonably calculated to reach Plaintiff before the arrest-threatening hearing. Defendant Hartford is named under 42 U.S.C. § 1983 and Plaintiff's supplemental Illinois state-law claim for intentional infliction of emotional distress, as set forth in this Complaint. Plaintiff reserves the right to seek leave to amend if discovery reveals facts supporting additional claims.

16.     Defendant Jacquelyn D. Melius is a judge in the Nineteenth Judicial Circuit, Lake County, Illinois. She is sued in her individual capacity only for alleged non-judicial acts, including personal off-record monitoring or viewing of Plaintiff's Facebook activity during active litigation, and in her official capacity only for declaratory and prospective relief to the extent permitted by law. Defendant Melius is named under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act where applicable, and Plaintiff's supplemental Illinois state-law claim for intentional infliction of emotional distress, as set forth in this Complaint. Plaintiff seeks damages from Defendant Melius only for alleged non-judicial conduct and seeks declaratory or prospective relief only to the extent permitted by law. Plaintiff reserves the right to seek leave to amend if discovery reveals facts supporting claims under 42 U.S.C. §§ 1985 or 1986.

17.     John/Jane Does 1-10 are currently unidentified persons who participated in, approved, coordinated, encouraged, processed, mailed, docketed, investigated,

monitored, contributed to, or failed to correct the retaliatory and procedurally defective acts alleged herein.

## LEGAL BACKGROUND

18.     This action arises under the Constitution and laws of the United States. Plaintiff brings claims under 42 U.S.C. § 1983 for deprivation, under color of state law, of rights secured by the Constitution and federal law. Plaintiff also brings disability-access claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, 42 U.S.C. § 12203 and a supplemental Illinois state-law claim for intentional infliction of emotional distress under 28 U.S.C. § 1367. Plaintiff reserves the right to seek leave to amend if discovery reveals facts supporting claims under 42 U.S.C. §§ 1985 or 1986.

19.     The constitutional provisions at issue include the First Amendment to the United States Constitution, including freedom of speech and the right to petition, and the Fourteenth Amendment to the United States Constitution, including procedural due process and fair access to court processes. Plaintiff also brings claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the ADA anti-retaliation and interference provision, 42 U.S.C. § 12203.

## FACTUAL ALLEGATIONS

### A. Protected Activity and Prior Notice

20.     Plaintiff was involved in Illinois Circuit 19 family-court proceedings under case numbers including 13 D 981 and 20 F 422.

6

21.    Plaintiff's protected activity included appeals, court filings, ADA accommodation requests, notices of judicial misconduct, complaints to governmental officials, public criticism of alleged court misconduct, social-media advocacy, and preservation of federal civil-rights claims, including claims under 42 U.S.C. § 1983.

22.    Plaintiff does not contend that every screenshot, recording, or reproduction of a court proceeding is automatically protected from reasonable court regulation. Plaintiff alleges that Defendants' enforcement activity targeted or chilled her broader protected speech and petitioning activity, including public criticism of alleged court misconduct, disability-access advocacy, judicial-misconduct reporting, appeals, complaints to governmental officials, and social-media advocacy on matters of public concern.

23.    Plaintiff's speech and petitioning activity addressed matters of public concern, including family-court practices, child protection, alleged judicial misconduct, disability access, governmental accountability, domestic violence, and civil rights.

24.    Plaintiff's protected advocacy arose from long-running family-court proceedings involving her children, removal from her care, foster-care involvement, and transfer of the children to their father in Florida. Plaintiff alleges those proceedings caused or aggravated PTSD-related symptoms and led her to pursue appeals, ADA accommodations, judicial-misconduct notices, public advocacy, and federal civil-rights preservation.

25.    On or about May 3, 2022, Plaintiff emailed the Lake County State's Attorney's Office at StatesAttorney@lakecountyil.gov, reporting alleged DCFS

corruption, failures of the Illinois child-protection system, failures of the Lake County judicial system, and alleged failure of former State's Attorney Michael G. Nerheim to protect Plaintiff and her children.

26.     Plaintiff thereby placed the Lake County State's Attorney's Office on notice of her protected complaints and civil-rights concerns as early as May 2022.

27.     On or about January 14, 2025, Plaintiff again emailed the Lake County State's Attorney's Office using its published work email address regarding alleged corruption and collusion involving Judge Michael G. Nerheim, a non-party to her family-law proceedings.

28.     The Lake County State's Attorney's Office sent an automatic reply confirming receipt through the office email system, and Plaintiff has a read receipt showing that the January 14, 2025 email was received. Relevant excerpts of Plaintiff's May 3, 2022 and January 14, 2025 emails and the January 14, 2025 receipt confirmation are attached as **Exhibit G**. **(See Ex. G at 1, 8-9.)**

29.     Plaintiff alleges that, upon information and belief, no meaningful investigation, referral, disclosure, or corrective action followed.

30.     Plaintiff filed notices of judicial misconduct against Defendant Judge Jacquelyn D. Melius and against Michael G. Nerheim in his capacity as a judge. The filed notices and associated filing or service records are attached as **Exhibit D**. **(See Ex. D at 1-16.)**

31. Plaintiff sent copies of these notices to the Chief Judge of the Nineteenth Judicial Circuit as instructed by applicable procedures.

32. Plaintiff's notices of judicial misconduct constituted protected petitioning activity under the First Amendment.

**B. Historical Circuit 19 Conduct Relevant to Notice, Chilling Effect, and Emotional-Distress Injury**

33. Plaintiff pleads the following historical Circuit 19 facts for limited purposes only. These older Circuit 19 events explain why the 2025-2026 defective contempt notice, alleged Facebook monitoring, ADA denial or non-accommodation, delayed notice, and arrest-threatening process were foreseeably traumatic, coercive, and retaliatory to Plaintiff. Plaintiff does not ask this Court to review, reverse, modify, vacate, or relitigate any juvenile, custody, parenting-time, child-support, or domestic-relations order.

34. Plaintiff alleges that before her children were removed from her care, Plaintiff and two of her middle children T.S. and B.S. made formal abuse-related reports concerning Plaintiff's former husband, Justin Derrick Serlick, including reports connected to the Gurnee Children's Advocacy Center in Lake County, Illinois, within the jurisdiction of Circuit 19 and the reports were made in or around September 2020, when Michael G. Nerheim was the elected Lake County State's Attorney. Plaintiff pleads this allegation only as background showing protected reporting activity,

emotional-distress context, trauma history, and why later court threats, contempt warnings, and delayed notice were foreseeably coercive and traumatic.

35.     Plaintiff alleges, upon information and belief, that the abuse-related investigation was not pursued or was dropped, and that this occurred in close temporal proximity to the October 8, 2020 removal of Plaintiff's children from daycare and from Plaintiff's custody. Plaintiff does not ask this Court to adjudicate the merits of the 2020 abuse allegations, dependency proceedings, or prosecutorial decisions; Plaintiff pleads these facts only to explain the origin of her protected advocacy, her distrust and fear of Circuit 19 processes, her PTSD-related symptoms, and the foreseeability of emotional harm caused by later arrest-threatening contempt procedures.

36.     Plaintiff alleges that on October 8, 2020, her children were taken from Kiddie Kottage Daycare in Lake County, Illinois during the commencement of juvenile proceedings, and that those events began a prolonged period of family separation, trauma, and court-related fear.

37.     Plaintiff alleges that on October 13, 2020, during juvenile proceedings before Judge Christopher Morozin, Plaintiff was subjected to a court-imposed gag order warning her that if she spoke about the juvenile case outside juvenile court she could be held in contempt. Plaintiff alleges that this gag order remained in effect until the last related juvenile matter closed on December 28, 2023. Plaintiff pleads this allegation only as historical context for chilling effect, trauma-related injury, notice,

and foreseeability. Plaintiff does not seek a ruling in this action on the validity of the former gag restriction.

38.     Plaintiff alleges that the 2020 gag restriction chilled her speech, impaired her ability to seek public support or oversight, caused fear of contempt exposure, and contributed to Plaintiff's later PTSD-related symptoms and fear of court retaliation.

39.     Plaintiff alleges that on August 11, 2021, Circuit 19 Judge Christopher Morozin authorized and facilitated the transfer of Plaintiff's children to Florida while Plaintiff remained in Illinois, and that Plaintiff, through counsel, objected and raised due-process and parental-rights concerns. Plaintiff pleads this allegation as background and emotional-distress context only, not as a request for this Court to alter custody or parenting orders.

40.     Plaintiff alleges that on April 27, 2022, an Illinois order was entered by Judge Marnie Slavin while Plaintiff was not present and did not have counsel, and that the order affected issues later relevant to Plaintiff's appeals, filings, protected petitioning activity, disability-access requests, and emotional distress. Plaintiff pleads this allegation only as background and does not ask this Court to review, reverse, modify, vacate, or relitigate that order.

41.     Plaintiff alleges that on June 12, 2025, in connection with a fee-waiver or indigency issue, she was directed to appear by separate Zoom session before Judge Sharmila K. Manak less than twenty-four hours after filing or submitting the fee-waiver application and after being contacted by a judicial assistant. Plaintiff alleges that the hearing involved invasive questioning, questioning of a non-party

11

household member, muting or silencing, and treatment that Plaintiff experienced as coercive and humiliating.

42. Plaintiff alleges that the June 12, 2025 indigency proceeding caused panic, emotional distress, and fear of further court-related harm, and contributed to her decision to withdraw or not pursue certain fee-waiver relief rather than face further similar treatment.

43. Plaintiff further alleges that on June 12, 2025, docket entries or minutes concerning a September 3, 2024 UCCJEA-related hearing appeared in the docket long after the hearing date and contemporaneously with Plaintiff's attempt to obtain court records. Plaintiff pleads this allegation as part of her notice, record-access, court-access, and emotional-distress context.

44. Plaintiff further alleges that, beginning on or about October 13, 2020 and continuing through the present, she was repeatedly administratively muted during remote or hybrid Circuit 19 proceedings while appearing as a self-represented litigant. By "administratively muted," Plaintiff means that a person with host or administrative control over the remote proceeding disabled Plaintiff's microphone and prevented her from unmuting herself or speaking for the remainder of the hearing. Plaintiff alleges that this occurred in all or nearly all remote or hybrid Circuit 19 proceedings in which she participated during that period. Plaintiff further alleges that, in some proceedings, she was removed from the active hearing and placed in a digital waiting room, preventing her from hearing, responding to, objecting to, or participating in portions of the proceeding.

45.     Plaintiff alleges that being barred from speaking, advocating for herself, responding to statements, requesting clarification, making objections, and participating in proceedings concerning her family and parental rights contributed to feelings of helplessness, panic, trauma activation, and PTSD-related symptoms.

46.     Plaintiff alleges that these historical events placed Circuit 19 actors on notice that threats of contempt, delayed or irregular notice, rushed hearing settings, repeated administrative muting for the remainder of hearings, removal to digital waiting rooms, private or inaccessible proceedings, restricted speech, ignored or unpursued abuse reporting, family-separation proceedings, and unclear court-access procedures would foreseeably cause severe emotional distress and trauma activation to Plaintiff.

47.     Plaintiff does not seek damages in this action for time-barred historical events as standalone claims. Plaintiff pleads them as background showing notice, foreseeability, motive, chilling effect, disability-related vulnerability, and the severity of the injuries caused by the 2025-2026 conduct challenged in this Complaint.

*C. Disability, ADA Accommodation Request, and Delayed Zoom-Access Notice*

48.     Plaintiff is a disabled litigant with hearing impairment and PTSD-related limitations affecting her ability to meaningfully participate in court proceedings without reasonable accommodation.

49.     Plaintiff has documented right profound sensorineural hearing loss. A limited, redacted audiologic report is attached as **Exhibit F**. **(See Ex. F at 1.)**

13

50. Plaintiff's hearing impairment affects her ability to understand oral proceedings, particularly remote, hybrid, crowded, echo-prone, or poorly captioned proceedings where audio quality, overlapping speech, lack of captioning, and lack of real-time transcription interfere with comprehension.

51. Plaintiff requires reasonable accommodations for meaningful participation, including remote access where appropriate, CART or real-time captioning, clear audio procedures, written access to hearing information, use of assistive hearing devices, and meaningful opportunity to review and respond to oral statements.

52. Plaintiff also suffers from PTSD and trauma-related symptoms arising from and/or aggravated by her experiences in Circuit 19 proceedings, including panic, fear, trauma activation, sleep disturbance, impaired concentration, emotional destabilization, and fear of further state retaliation.

53. On or about October 1, 2025, Plaintiff filed a verified emergency motion requesting clarification of conflicting September 2, 2025 appearance orders, reinstatement or confirmation of remote appearance under Illinois Supreme Court Rule 45, and ADA accommodations for the October 8, 2025 hearing. Relevant records concerning the conflicting appearance orders, Plaintiff's ADA-related motion, the delayed transmittal email, and the court's disposition are attached as **Exhibit E**. **(See Ex. E at 1-3, 24-27, 36-38.)**

54. Plaintiff specifically requested Zoom appearance, real-time CART captioning, and permission to use personal assistive hearing devices.

14

55.     Plaintiff's ADA-related filing advised the court that she has a documented hearing disability, including profound right-ear hearing loss, and that she experiences PTSD-related limitations affecting her ability to safely and effectively participate in proceedings connected to Circuit 19.

56.     Plaintiff also advised the court that two September 2, 2025 orders created conflicting appearance instructions.

57.     One order stated that the parties were required to appear and "may attend via Zoom."

58.     A later-sent order stated that Plaintiff's Zoom privileges were revoked or under review for all hearings and that failure to appear in person would prevent Plaintiff from making arguments.

59.     Plaintiff alleges that the later order was transmitted by the Clerk's Office through a blank email on or about September 23, 2025, barely more than one week before the scheduled October 8, 2025 hearing.

60.     Plaintiff alleges that this delayed notice substantially prejudiced her because she resided in Florida, the hearing was in Lake County, Illinois, she had disability-related hearing and PTSD limitations, and she had relied on the prior order allowing Zoom appearance.

61.     On October 8, 2025, Judge Melius struck Plaintiff's ADA/emergency motion on procedural grounds, including alleged failure to notice the motion, failure to appear in person, failure to provide courtesy copies, and failure to provide an affidavit.

62.     Plaintiff alleges that the court did not meaningfully address the substance of Plaintiff's disability-related access needs, including hearing impairment, need for CART captioning, remote-access accommodation, and PTSD-related limitations.

63.     Plaintiff alleges that the September 2025 delayed Zoom-access notice placed Circuit 19 actors on notice that delayed and contradictory notice practices interfered with Plaintiff's ability to participate, request accommodations, and protect her rights.

64.     Plaintiff further alleges that Circuit 19 actors had notice from prior proceedings that Plaintiff had repeatedly been administratively muted for the remainder of remote or hybrid hearings and, in some instances, removed from the active hearing and placed in a digital waiting room. Plaintiff alleges that these practices prevented her from hearing portions of proceedings, responding to statements, objecting, seeking clarification, requesting accommodations, and meaningfully advocating for herself while appearing pro se. Plaintiff alleges that reliable remote-access procedures and safeguards ensuring a meaningful opportunity to hear and speak were necessary for equal access to court processes.

### D. Judge Melius's Alleged Non-Judicial Facebook Monitoring

65.     During active appellate litigation and post-judgment proceedings arising from the same Illinois family-court proceedings over which Defendant Judge Jacquelyn D. Melius had presided, Plaintiff alleges that Defendant Melius, through a Facebook profile reasonably identifiable as her personal account, viewed Plaintiff Heather L. Bendl's personal Facebook stories or page.

16

66. On or about April 20, 2026, Plaintiff observed that a Facebook profile identified as "Jacqui Melius" appeared among the viewers of Plaintiff's Facebook story.

67. The profile appeared as a non-follower viewer of Plaintiff's story.

68. Plaintiff preserved a screenshot documenting the April 20, 2026 view. **(See Ex. C at 1.)**

69. On April 21, 2026, Plaintiff filed a verified Notice of Judicial Misconduct and Material Facts Regarding Conduct of Judge Jacquelyn D. Melius in the Illinois proceedings.

70. The notice was file-stamped by the Lake County Clerk on April 21, 2026 at 8:39 p.m.

71. The notice stated that Plaintiff was a pro se litigant in proceedings before the Nineteenth Judicial Circuit, including matters presided over by Judge Melius.

72. The notice further stated that the underlying case had been subject to appellate review in the Illinois Appellate Court, Second District, with rehearing denied, and that further review was being contemplated through a Petition for Leave to Appeal to the Illinois Supreme Court.

73. The notice alleged that on April 20, 2026, Judge Melius accessed and viewed Plaintiff's personal Facebook social-media profile.

74. The notice further alleged that Plaintiff's Facebook profile was not part of the evidentiary record in any proceeding before the Court, that no content from the profile had been introduced, authenticated, or admitted into evidence, and that

Plaintiff did not consent to any review of her personal social media by the Court outside formal evidentiary procedures.

75. The notice identified the alleged conduct as extra-judicial access to information outside the record and as raising concerns regarding independent factual investigation, consideration of non-record information, judicial neutrality, impartiality, appearance of impropriety, and due process.

76. Plaintiff served the notice on Chief Judge Daniel B. Shanes, among others, by certified mail and email, as reflected in the certificate of service attached to the notice.

77. Plaintiff preserved screenshots of the public Facebook profile associated with the viewer account.

78. The profile URL appears as facebook.com/jacqui.melius.

79. The profile displays the name "Jacqui Melius."

80. The profile publicly lists personal details including "Lives in Chicago, Illinois" and "From Waukegan, Illinois."

81. The profile image appearing beside the "Jacqui Melius" account in Plaintiff's Facebook story-view list matches the profile image displayed on the public Facebook profile located at facebook.com/jacqui.melius.

82. Plaintiff also preserved a screenshot of a public family photograph posted by the same profile where a commenter refers to the profile owner as "Judge Melius."

83. Plaintiff alleges that the matching profile image, account name, profile URL, public location details, public photographs, and third-party comment referring to

the profile owner as "Judge Melius" collectively make the account reasonably identifiable as Defendant Judge Jacquelyn D. Melius's personal Facebook profile or a profile accessed by someone acting with her knowledge. **(See Ex. C at 3-4.)**

84.    Plaintiff reserves the right to seek discovery from Meta/Facebook and Defendant Melius regarding account ownership, login activity, access history, profile ownership, and whether Defendant Melius or anyone acting with her knowledge accessed Plaintiff's Facebook stories or profile.

85.    After Plaintiff filed the judicial-misconduct notice against Defendant Melius, Plaintiff observed at least one additional Facebook story view by the same "Jacqui Melius" profile on or about May 16, 2026.

86.    Plaintiff possesses a screenshot dated or annotated May 16, 2026 showing the "Jacqui Melius" profile again appearing among the viewers of Plaintiff's Facebook story. **(See Ex. C at 2.)**

87.    The May 16, 2026 view occurred after Plaintiff had filed the judicial-misconduct notice concerning Defendant Melius.

88.    Plaintiff thereafter blocked the "Jacqui Melius" profile.

89.    Defendant Melius never disclosed on the record that she had viewed, monitored, accessed, or reviewed Plaintiff's personal Facebook activity during active appellate, post-judgment, or related litigation.

90.    Plaintiff was never given notice, an opportunity to object, an opportunity to seek substitution, or an opportunity to seek recusal based on Defendant Melius's off-record social-media monitoring.

19

91.     Defendant Melius's alleged Facebook viewing was not performed from the bench, was not part of a hearing, was not part of a disclosed evidentiary record, was not subject to adversarial testing, and was not a judicial ruling or case-management order.

92.     Plaintiff alleges that Defendant Melius's personal, off-record monitoring before and after Plaintiff filed a judicial-misconduct notice is evidence of retaliatory motive, bias, and participation in a broader pattern of monitoring and targeting Plaintiff's protected speech, protected petitioning activity, disability-access requests, and federal civil-rights notices.

93.     Plaintiff does not presently allege that Defendant Melius personally signed, filed, or verified the contempt petition. Plaintiff alleges that the Facebook monitoring is relevant to retaliatory motive, chilling effect, procedural unfairness, lack of disclosure, and discovery concerning whether Plaintiff's protected social-media activity was monitored, preserved, shared, referred, or used by court or prosecutorial actors.

### E. Indirect Criminal Contempt Proceeding and Defective Service

94.     On or about April 13, 2026, Defendant Rinehart, through Defendant Berrill, initiated or advanced an indirect criminal contempt proceeding against Plaintiff.

95.     The proceeding was styled People of the State of Illinois v. Heather L. Bendl.

96.    The contempt petition alleged that Plaintiff posted screenshots from remote court proceedings on Facebook.

97.    The petition alleged that Plaintiff posted screenshots from proceedings occurring on or about August 12, 2025 and September 2, 2025.

98.    Defendant Berrill signed and verified the petition.

99.    The Verified Petition was brought by the People of the State of Illinois, by Eric F. Rinehart, State's Attorney of Lake County, through Kevin J. Berrill, Assistant State's Attorney. The petition alleges that Lake County Sheriff's Office Deputy Vasile Pop observed Plaintiff's Facebook posts, but Deputy Pop is not listed as the petitioner and the petition is not brought by the presiding judge or by the Circuit Court itself.

100.    Plaintiff does not allege that the State's Attorney is categorically prohibited from prosecuting indirect criminal contempt. Plaintiff alleges that, under the applicable contempt procedure, the court must first review the verified petition, determine whether it sets forth factual allegations supporting contempt, set the matter for hearing, and order that notice be given before an arrest-threatening indirect criminal contempt hearing proceeds.

101.    The notice packet Plaintiff received did not include any written court order showing that a judge reviewed the petition, found it sufficient, set the May 6, 2026 hearing, or ordered notice before the arrest-threatening hearing. Instead, the Notice of Hearing states that the Assistant State's Attorney would "move for a hearing" on the attached petition and request hearing "instanter." The Notice of Hearing, Verified

Petition for Adjudication of Indirect Criminal Contempt, and Certificate of Service are attached as **Exhibit A**. **(See Ex. A at 1-4.)**

102.    Plaintiff alleges that the Verified Petition relies on Circuit 19 Local Rule 1-4.01(A)(1), (A)(6), and (A)(7), and on Illinois Supreme Court Rule 44, rather than identifying any case-specific order personally directed to Plaintiff that prohibited the alleged screenshot conduct.

103.    Plaintiff further alleges that separate official Circuit 19 remote-hearing materials available to self-represented litigants, including Circuit 19 Local Rule 1-1.22 and the Circuit 19 Zoom Instruction and Protocol Sheet, expressly referred to "taking screenshots" but attributed the asserted prohibition and potential contempt penalties to "Illinois Supreme Court Rule 68(A)(8)."

104.    The petition sought an adjudication of indirect criminal contempt.

105.    The notice warned that Plaintiff's failure to appear could result in arrest.

106.    The notice set a hearing for May 6, 2026 at 9:00 a.m.

107.    The certificate of service stated that the notice was mailed on or about April 14, 2026.

108.    Plaintiff possesses the certified-mail envelope, USPS tracking records, and return-receipt documents showing that the notice was not meaningfully placed into USPS transit in time to provide notice before the hearing. The certified-mail envelope, return receipt, and USPS tracking history are attached as **Exhibit B**. **(See Ex. B at 1-2.)**

22

109. The envelope bears certified mail tracking number 7019 2280 0001 1251 1604 and identifies the sender as the Lake County State's Attorney's Office, Eric F. Rinehart, State's Attorney, 18 N. County Street, Waukegan, Illinois 60085.

110. The envelope was addressed to Plaintiff at her correct Edgewater, Florida address.

111. The envelope appears to bear a postage or meter date of May 4, 2026, but USPS tracking shows the item first arriving at the Carol Stream, Illinois Distribution Center at 9:44 p.m. on May 5, 2026, less than twelve hours before the scheduled May 6, 2026 hearing.

112. USPS tracking shows the item was still "In Transit to Next Facility" on May 6, 2026, the date of the scheduled hearing.

113. USPS tracking shows the item did not arrive at the Orlando, Florida Distribution Center until May 7, 2026, after the hearing date.

114. USPS tracking shows the item did not arrive at the Lake Mary, Florida Distribution Center until May 7, 2026 at 10:06 p.m.

115. USPS tracking shows that delivery was not attempted in Edgewater, Florida until May 8, 2026 at 10:49 a.m., when USPS left notice because no authorized recipient was available.

116. The green certified-mail return receipt reflects receipt/signature by Peter J. Arnold, a resident of Plaintiff's household, on or about May 8, 2026, after the scheduled hearing date had already passed.

117.   The notice packet contained a Certificate of Service listing a materially incorrect or hybrid address for Plaintiff. The address appeared to combine portions of Plaintiff's actual Edgewater, Florida mailing address with portions of an address associated with Plaintiff's former in-laws in Port Orange, Florida. By contrast, the outside certified-mail envelope was addressed to Plaintiff at her correct Edgewater, Florida address. This discrepancy made the service documentation internally inconsistent and unreliable. **(See Ex. A at 1; Ex. B at 1.)**

118.   Plaintiff alleges that a certificate of service containing a materially incorrect address, contradicted by objective certified-mail tracking, was not reasonably calculated to provide meaningful notice before an arrest-threatening criminal contempt hearing.

119.   Plaintiff therefore did not receive actual, meaningful, timely notice before the May 6, 2026 hearing.

120.   Plaintiff could not meaningfully appear at a hearing she did not receive notice of until after it occurred.

121.   Plaintiff could not obtain counsel, prepare a defense, contest the allegations, file a response, seek a continuance, request disability accommodations, or protect herself from threatened arrest before the scheduled hearing because the notice did not reach Florida until after the hearing date.

122.   After learning of the issue, Plaintiff contacted the State's Attorney's Office by telephone.

123. Plaintiff was told by an investigator that the notice issue was a clerical mistake and that a new notice would be mailed or had already been mailed.

124. As of the preparation of this Complaint, Plaintiff has not received a new notice.

125. Plaintiff has not received written confirmation that the May 6, 2026 hearing did not proceed.

126. Plaintiff has not received written confirmation that she was not marked absent.

127. Plaintiff has not received written confirmation that no warrant, body attachment, contempt finding, default, or law-enforcement entry was issued or entered based on her nonappearance.

128. Plaintiff has not received written confirmation that the arrest-threatening notice was withdrawn, corrected, recalled, or rendered void.

129. Plaintiff alleges that the May 2026 contempt notice repeated and escalated the prior pattern of delayed or contradictory notice affecting Plaintiff's access to the court.

130. Plaintiff alleges that the timing, context, prior complaints, judicial-misconduct notices, appellate activity, ADA accommodation activity, federal civil-rights notices, Facebook monitoring, prior delayed Zoom-access notice, defective certificate-of-service address, defective mailing, and continued lack of written clarification support an inference that the contempt proceeding was retaliatory.

### F. Court Rule and Pro Se Fair-Notice Problem

131. The contempt proceeding is based on an alleged violation of a local or court rule restricting recording, photographing, screenshotting, broadcasting, publishing, transmitting, or reproducing remote court proceedings.

132. Plaintiff does not contend that courts lack authority to maintain order, protect minors, protect confidential information, regulate the manner of proceedings, or restrict recording of court proceedings.

133. Plaintiff pleads the rule-related enforcement facts because Defendants allegedly used the rule selectively, retroactively, without timely notice, without individualized fair warning, without meaningful pro se disclosure, and in retaliation for protected speech, disability-access requests, and petitioning activity.

134. Plaintiff received no prior individualized warning that the specific alleged August 12, 2025 or September 2, 2025 conduct would be treated as indirect criminal contempt exposing her to arrest.

135. Plaintiff recalls a later warning in connection with an October hearing not to record or take photographs, but that warning came after the alleged incidents identified in the contempt petition.

136. Plaintiff alleges that official Circuit 19 remote-hearing materials available to self-represented litigants, including Circuit 19 Local Rule 1-1.22 and the Circuit 19 Zoom Instruction and Protocol Sheet, expressly prohibited recording, photographing, taking screenshots, reproducing, publishing, broadcasting, copying, or transmitting

26

remote-court proceedings, but attributed the asserted prohibition and potential contempt penalties to "Illinois Supreme Court Rule 68(A)(8)."

137. Plaintiff alleges that the cited statewide authority was inaccurate and, by the time of the alleged conduct, repealed. Former Illinois Supreme Court Rule 68 concerned annual judicial economic-interest disclosures rather than courtroom recording. Illinois Supreme Court Rules 61 through 68 were repealed effective January 1, 2023.

138. Plaintiff alleges that the current statewide provision addressing photographic recording, digital capturing, or other recording of remote proceedings is Illinois Supreme Court Rule 44. Rule 44 does not expressly use the term "screenshot," although Rule 44(c) refers to "photographic recording, digital capturing, or other recording" of a remote proceeding. The Committee Comments to Rule 44 state that the former courtroom-photography prohibition was relocated from former Rule 63, not Rule 68.

139. Plaintiff further alleges that Circuit 19 maintained multiple overlapping materials concerning remote-hearing conduct, including Local Rule 1-1.22, the Circuit 19 Zoom Instruction and Protocol Sheet, and Local Rule 1-4.01. Plaintiff acknowledges that Local Rule 1-4.01 exists and that the Verified Petition relies on that local rule. Plaintiff does not contend that no local restriction existed or that courts lack authority to regulate screenshots, recordings, photographs, publication, transmission, or reproduction of court proceedings. Relevant Circuit 19 materials and

27

Illinois Supreme Court rule-history documents are attached as **Exhibit H**. **(See Ex. H at 2, 9, 11, 19-27.)**

140.   Plaintiff alleges that a self-represented litigant was required to locate, open, cross-reference, and correctly interpret multiple remote-hearing materials to determine the scope of the asserted restriction and potential contempt consequences, while official Circuit 19 materials expressly referring to screenshots pointed to an inaccurate and repealed statewide-rule authority.

141.   Plaintiff alleges that these circumstances, combined with the absence of a clear, timely, individualized pre-incident warning concerning the specific conduct later charged, did not provide sufficiently accurate and meaningful fair notice to support arrest-threatening indirect-criminal-contempt process against a self-represented litigant.

142.   Plaintiff alleges that the asserted restrictions, as enforced or construed against her, chilled protected speech concerning public matters, government accountability, judicial conduct, disability access, and family-court practices.

143.   Plaintiff pleads these rule-related allegations as part of her procedural-due-process, First Amendment retaliation, fair-notice, chilling-effect, and damages theories. Plaintiff does not ask this Court to enjoin, stay, dismiss, or otherwise interfere with any ongoing state contempt proceeding, and Plaintiff reserves the right to raise any rule-validity, fair-notice, sufficiency, or as-applied constitutional defenses in the state proceeding.

### G. Injury

144. Plaintiff suffered fear of arrest and loss of liberty.

145. Plaintiff suffered fear that a warrant, body attachment, contempt finding, default, or other law-enforcement entry may have been entered without timely notice.

146. Plaintiff suffered chilling of her speech, chilling of her right to petition courts and governmental bodies, and chilling of her right to request disability accommodations without retaliation.

147. Plaintiff suffered emotional distress, anxiety, humiliation, trauma activation, reputational harm, and fear of further retaliation.

148. Plaintiff incurred time, expense, and burden responding to the contempt threat.

149. Plaintiff was forced to divert resources from her appeals, family matters, disability-accommodation efforts, and civil-rights advocacy.

150. Plaintiff suffered unequal access to court processes as a self-represented and disabled litigant where obscure remote-hearing rules carrying criminal-contempt and arrest exposure were not meaningfully disclosed through pro se resources.

151. Plaintiff suffered constitutional injury independent of any custody judgment or family-court order.

152. Plaintiff suffered trauma activation, panic, helplessness, and impaired ability to advocate for herself as a result of repeatedly being administratively muted for the remainder of remote or hybrid hearings and, in some instances, removed from active proceedings and placed in digital waiting rooms.

**FIRST CLAIM FOR RELIEF**

**42 U.S.C. § 1983 - FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS**

**Against Defendants Rinehart, Berrill, Hartford, and Doe Defendants as Applicable**

153.  Plaintiff incorporates all prior paragraphs as if fully set forth herein.

154.  Plaintiff had a protected liberty interest in freedom from arrest, incarceration, contempt sanctions, body attachment, and punitive criminal-contempt consequences without due process of law.

155.  Plaintiff had a right to meaningful notice and a meaningful opportunity to be heard before being exposed to punitive contempt sanctions or arrest for nonappearance.

156.  Plaintiff had a right to fair notice before being subjected to criminal contempt for alleged violation of a court rule, particularly where Plaintiff was self-represented, disabled, hearing impaired, and not trained in court rules or local remote-hearing protocols.

157.  Defendants initiated, advanced, processed, certified, mailed, or caused service of an indirect criminal contempt notice that threatened arrest for failure to appear.

158.  The notice set a hearing for May 6, 2026 at 9:00 a.m.

159.  USPS tracking shows the item was still in transit on May 6, 2026, did not arrive in Florida until May 7, 2026, and was not presented for delivery in Edgewater, Florida until May 8, 2026 at 10:49 a.m.

30

160. Plaintiff therefore did not receive meaningful notice until after the scheduled hearing date had passed.

161. The certificate of service itself was defective because it listed an incorrect or hybrid address for Plaintiff, while the envelope reflected a different and correct address.

162. A materially incorrect certificate of service, combined with certified-mail tracking showing that the notice was still in transit on the hearing date, was not reasonably calculated to give Plaintiff meaningful notice or an opportunity to be heard before threatened arrest or contempt consequences.

163. Plaintiff therefore had no meaningful notice and no meaningful opportunity to appear, respond, retain counsel, prepare a defense, contest the allegations, seek a continuance, request accommodations, or protect herself from threatened arrest.

164. Defendants' mailing, processing, certification, or continued reliance on an arrest-threatening notice under these circumstances violated Plaintiff's Fourteenth Amendment right to procedural due process.

165. To the extent Defendants contend the defective notice was a clerical mistake, the mistake still created an active liberty threat and required immediate correction, written notice, withdrawal, recall, or clarification.

166. Plaintiff has not received written confirmation that no warrant, body attachment, contempt finding, default, or law-enforcement entry exists.

167. Defendants also violated due process by subjecting Plaintiff to arrest-threatening process based on multiple overlapping remote-hearing rules and

protocols, including official Circuit 19 materials that expressly referenced screenshots while citing Illinois Supreme Court Rule 68(A)(8), an inaccurate and, by the time of the alleged conduct, repealed authority. Plaintiff alleges that she was a self-represented disabled litigant who lacked a clear, timely, individualized pre-incident warning, lacked meaningful and accurate disclosure through the court's pro se resources, and lacked timely notice of the contempt hearing.

168. The May 2026 defective contempt notice followed a prior September 2025 delayed-notice incident in which Circuit 19 actors transmitted a contradictory order revoking or limiting Plaintiff's Zoom access by blank email weeks after the order date and barely more than one week before an Illinois hearing, despite Plaintiff residing in Florida and having disability-related access needs.

169. Defendants also violated due process by causing or relying on an arrest-threatening indirect criminal contempt notice without providing Plaintiff any written order showing that the court first reviewed the verified petition, found it sufficient to support contempt proceedings, set the hearing, and ordered notice, as required by the applicable indirect criminal contempt procedure.

170. The notice packet also did not identify any case-specific order personally directed to Plaintiff prohibiting the alleged screenshot conduct. Plaintiff alleges that the absence of an identified case-specific order is relevant to fair notice, willfulness, and the sufficiency of the asserted contempt predicate. Plaintiff does not ask this Court to adjudicate the merits of that state-court defense; Plaintiff pleads the fact as

32

part of her independent due-process, chilling-effect, damages, and prospective-relief theories.

171. Defendants acted under color of state law.

172. Defendants' conduct violated Plaintiff's rights under the Fourteenth Amendment.

## SECOND CLAIM FOR RELIEF

**42 U.S.C. § 1983 - FIRST AMENDMENT**

**RETALIATION / SPEECH AND PETITION CLAUSE**

**Against Defendants Rinehart, Berrill, Melius, Hartford, and Doe Defendants as Applicable**

173. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

174. Plaintiff engaged in protected speech and protected petitioning activity under the First Amendment.

175. Plaintiff's protected activity included appeals, court filings, judicial-misconduct notices, complaints to government officials, public criticism, Facebook advocacy, social-media speech, ADA-related accommodation requests, and preservation of federal civil-rights claims.

176. Defendants took adverse actions against Plaintiff, including initiating, advancing, monitoring, processing, serving, or participating in an indirect criminal contempt proceeding based on Plaintiff's alleged Facebook-related conduct and threatening arrest for nonappearance at a hearing for which Plaintiff did not receive timely notice.

33

177.   A person of ordinary firmness would be chilled from continuing public criticism, misconduct reporting, ADA accommodation requests, appeals, and civil-rights advocacy after being subjected to an arrest-threatening criminal contempt proceeding based on social-media activity.

178.   Plaintiff's protected activity was a motivating factor in Defendants' actions.

179.   Retaliatory motive is supported by the timing of the contempt proceeding, Plaintiff's prior misconduct notices, Plaintiff's January 14, 2025 email referencing Facebook advocacy, Defendant Melius's alleged undisclosed Facebook monitoring, Plaintiff's ADA-related request, the Facebook-based nature of the contempt allegations, the lack of pre-incident individualized warning, the defective certificate-of-service address, the late service timeline, and the failure to provide written clarification after the defect was identified.

180.   Retaliatory motive is further supported by the chronology: the contempt petition was filed on or about April 13, 2026; the certificate of service was dated on or about April 14, 2026; a Facebook profile reasonably identifiable as Defendant Melius's personal account allegedly viewed Plaintiff's Facebook story on or about April 20, 2026; Plaintiff filed a judicial-misconduct notice on April 21, 2026; the certified-mail item was not meaningfully placed into transit until May 2026; the hearing was set for May 6, 2026; Plaintiff did not receive notice until after the hearing date; and the same Facebook profile allegedly viewed Plaintiff's story again on or about May 16, 2026. Plaintiff pleads the Facebook views as evidence of continuing

monitoring, chilling effect, and potentially relevant post-filing conduct, not as proof that Defendant Melius caused initiation of the April 13, 2026 petition.

181.   Plaintiff further alleges that the contempt proceeding lacked probable cause, or that any asserted probable cause was constitutionally defective, because arrest-threatening process was pursued through multiple overlapping and inaccurately cross-referenced remote-hearing materials, without a clear and timely individualized warning, without meaningful and accurate disclosure through self-representation resources, without identification of any case-specific order personally directing Plaintiff not to engage in the alleged screenshot conduct, without proof that Plaintiff knowingly and willfully violated a clearly communicated criminal-contempt prohibition, and without service reasonably calculated to provide notice and an opportunity to be heard before an arrest-threatening hearing.

182.   Plaintiff further alleges that any asserted probable cause was undermined by the defective certificate of service, the materially incorrect or hybrid address, the certified-mail timeline showing the notice remained in transit on the hearing date, and Defendants' failure to provide written confirmation that no warrant, body attachment, contempt finding, default, or law-enforcement entry exists.

183.   To the extent Defendants contend that probable cause existed merely because screenshots were allegedly posted, Plaintiff acknowledges that Circuit 19 local materials expressly referenced screenshots and that Illinois Supreme Court Rule 44 uses the broader phrase "digital capturing." Plaintiff alleges that the relevant issue is not whether a court may regulate such conduct in general, but whether

35

Defendants selectively and retaliatorily used criminal-contempt and arrest-threatening process against Plaintiff because of her protected speech, judicial-misconduct reporting, ADA accommodation requests, appeals, and petitioning activity, where official Circuit 19 materials included an inaccurate and repealed statewide-rule cross-reference, no case-specific order was identified in the notice packet, and Plaintiff received no clear, timely, individualized pre-incident warning concerning the conduct later charged.

184. Plaintiff further alleges that probable cause was lacking or constitutionally defective because the notice packet did not include any written court order showing that the court had reviewed the verified petition, found it sufficient, set the hearing, or ordered notice before Plaintiff was threatened with arrest for nonappearance.

185. Plaintiff does not seek damages from Defendant Rinehart or Defendant Berrill for protected prosecutorial advocacy functions, including the decision to initiate or prosecute a contempt petition, to the extent absolute immunity applies. Plaintiff seeks damages only for non-advocacy conduct, including administrative, service-related, investigative, supervisory, retaliatory, or post-service corrective conduct not protected by absolute prosecutorial immunity, and seeks declaratory or prospective relief only where permitted by law.

186. Defendants acted under color of state law.

187. Defendants' conduct violated Plaintiff's rights under the First Amendment.

**THIRD CLAIM FOR RELIEF**

**42 U.S.C. § 1983 — NON-JUDICIAL OFF-RECORD MONITORING CAUSING CHILLING EFFECT, RETALIATION-RELATED INJURY, AND PROCEDURAL UNFAIRNESS**

**Against Defendant Judge Jacquelyn D. Melius**

188. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

189. Plaintiff alleges that Defendant Judge Melius, while acting under the appearance and authority of her judicial office, engaged in or permitted personal, off-record monitoring of Plaintiff's protected speech through a Facebook profile reasonably identifiable as Defendant Melius's personal account or a profile accessed by someone acting with her knowledge.

190. Plaintiff alleges that the known Facebook views are not pleaded merely as isolated public-profile views. Plaintiff pleads them as the only currently available evidence of undisclosed off-record monitoring of Plaintiff's protected speech during active appellate, post-judgment, or related litigation arising from proceedings over which Defendant Melius had presided.

191. Plaintiff alleges, upon information and belief, that discovery may reveal additional monitoring, communications, referrals, screenshots, internal sharing, or use of Plaintiff's protected social-media activity by Defendant Melius or others acting with knowledge of her judicial role.

192. The Facebook profile was reasonably identifiable as Defendant Melius's personal account because the profile used the name "Jacqui Melius," appeared at the URL facebook.com/jacqui.melius, displayed public details consistent with Defendant

37

Melius, showed a profile image matching the story-view screenshot, and included a public comment referring to the profile owner as "Judge Melius."

193. Defendant Melius's alleged off-record monitoring was not disclosed to Plaintiff, to the parties, or on the record.

194. Plaintiff was denied any opportunity to object, seek recusal, seek substitution, request disclosure, or challenge whether extra-record information was being viewed, preserved, shared, or used.

195. Plaintiff alleges that Defendant Melius's alleged monitoring was not a ruling, order, hearing, docket-management action, or function normally performed from the bench in open court. Plaintiff alleges it was personal, off-record, undisclosed, and investigative in nature.

196. Plaintiff alleges that the monitoring occurred on or about April 20, 2026, immediately before Plaintiff filed a judicial-misconduct notice against Defendant Melius on April 21, 2026, and occurred again on or about May 16, 2026, after Plaintiff filed that notice.

197. Plaintiff alleges that this timing supports a reasonable inference that the monitoring was not accidental, isolated, or unrelated to Plaintiff's protected speech, petitioning activity, ADA accommodation activity, judicial-misconduct reporting, and federal civil-rights preservation.

198. Plaintiff alleges that the monitoring chilled Plaintiff's protected speech and contributed to Plaintiff's reasonable fear that her public criticism, misconduct

complaints, ADA accommodation requests, and civil-rights notices were being tracked, preserved, shared, or used for retaliatory purposes.

199. Plaintiff pleads this claim in the alternative and recognizes that Defendant Melius may assert judicial-immunity defenses. Plaintiff does not seek damages for any judicial act, ruling, order, hearing conduct, docket-management decision, or case-management function.

200. Plaintiff alleges that the off-record Facebook monitoring is independently relevant to retaliatory motive, chilling effect, procedural unfairness, lack of meaningful disclosure, and the need for discovery even if the Court determines that damages are unavailable against Defendant Melius.

201. Plaintiff seeks declaratory relief where permitted by law and damages only to the extent such damages are not barred by judicial immunity or other applicable doctrines.

### FOURTH CLAIM FOR RELIEF

**TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132, AND ADA ANTI-RETALIATION AND INTERFERENCE, 42 U.S.C. § 12203, AGAINST PUBLIC-ENTITY AND OFFICIAL-CAPACITY DEFENDANTS AS APPLICABLE; AND 42 U.S.C. § 1983 AGAINST INDIVIDUAL DEFENDANTS AS APPLICABLE — DISABILITY ACCESS, RETALIATION, INTERFERENCE, AND DENIAL OF MEANINGFUL ACCESS TO COURT PROCESSES**

**Against Defendants Melius, Rinehart, Berrill, Hartford, and Doe Defendants as Applicable**

202. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

203. Plaintiff brings the Title II ADA portion of this claim only against public-entity and official-capacity Defendants responsible for court access,

39

accommodation processing, remote-appearance procedures, notice procedures, and meaningful access to court services, to the extent permitted by law. Plaintiff does not seek individual-capacity damages under Title II of the ADA. Plaintiff brings individual-capacity claims against Defendants only under 42 U.S.C. § 1983 and Illinois law as otherwise alleged.

204.   Plaintiff is a disabled litigant with documented right profound sensorineural hearing loss and PTSD-related limitations affecting her ability to meaningfully participate in court proceedings without reasonable accommodation.

205.   Plaintiff requested accommodations from Judge Melius and Circuit 19 related to hearing impairment and PTSD-related limitations, including Zoom appearance, real-time CART captioning, and use of personal assistive hearing devices.

206.   Plaintiff's request for disability-related accommodations constituted protected activity.

207.   Plaintiff alleges that retaliation against her, or coercion, intimidation, threats, or interference directed at her because she requested accommodations or exercised ADA-protected rights, violated 42 U.S.C. § 12203 to the extent applicable. Plaintiff does not allege that lawful judicial, prosecutorial, or administrative conduct becomes unlawful merely because it followed an accommodation request. Plaintiff alleges that the retaliatory, coercive, or interfering conduct must be evaluated in the context of the delayed and contradictory appearance instructions, repeated

administrative muting, removal to digital waiting rooms, alleged failure to meaningfully consider accommodations, and later arrest-threatening process without timely notice.

208. Plaintiff alleges that Judge Melius and Circuit 19 had notice of Plaintiff's disability-related limitations and access needs.

209. Plaintiff alleges that her accommodation request was stricken, dismissed, denied, ignored, or not meaningfully addressed on procedural grounds.

210. Plaintiff alleges that rejecting or refusing to meaningfully consider disability-access needs on technical procedural grounds denied her meaningful access to court processes.

211. Plaintiff further alleges that conflicting orders first allowed Zoom attendance and later revoked or questioned Plaintiff's Zoom privileges, thereby creating confusion, unequal access, and risk of forfeiture of her ability to present argument.

212. Plaintiff further alleges that Defendants later subjected her to an arrest-threatening contempt process without timely notice and without written clarification of whether a warrant, body attachment, default, or contempt consequence exists.

213. Plaintiff alleges that Defendants denied her meaningful access to court services, programs, or activities by reason of her disability and disability-related accommodation requests, including by failing to meaningfully consider hearing-related accommodations, failing to provide clear and reliable remote-access procedures, striking or rejecting her ADA/emergency motion on technical grounds,

41

and later subjecting her to an arrest-threatening contempt process without timely notice or accommodation opportunity despite prior notice of her hearing impairment and PTSD-related limitations.

214. Plaintiff does not ask this Court to review or reverse any custody judgment, parenting order, child-support order, or domestic-relations order.

215. Plaintiff asserts this claim as an independent Title II ADA, access-to-courts, retaliation, disability-access, and procedural-fairness claim arising from Defendants' conduct, notice, and procedures.

216. Defendants acted under color of state law.

## FIFTH CLAIM FOR RELIEF

**ILLINOIS STATE LAW - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**Against Defendants Rinehart, Berrill, Hartford, Melius, and Doe Defendants as Applicable**

217. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

218. This claim is brought under Illinois law and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

219. Defendants' conduct was extreme and outrageous.

220. Defendants' conduct exceeded the bounds of decency in a civilized society because it involved the use or threatened use of criminal-contempt and arrest machinery against Plaintiff after she engaged in protected speech, appellate litigation, judicial-misconduct reporting, disability-accommodation requests, and civil-rights advocacy.

221.   Defendants knew or should have known that Plaintiff was a self-represented disabled mother involved in highly sensitive family-court litigation concerning her children, parental rights, alleged abuse, alleged government misconduct, disability-access needs, and alleged retaliation.

222.   Defendants knew or should have known from Plaintiff's filings, emails, judicial-misconduct notices, ADA-related filings, and the Circuit 19 record that Plaintiff had a long history with Circuit 19 proceedings, including abuse-related reporting involving her former husband, alleged non-pursuit of those reports, family-separation proceedings, alleged gag restrictions, delayed or irregular notice, rushed hearing settings, repeated administrative muting for the remainder of remote or hybrid hearings, removal to digital waiting rooms, disability-access disputes, and coercive or inaccessible court procedures, and that further use of arrest-threatening contempt process without timely notice would foreseeably cause severe emotional distress and trauma activation.

223.   Defendants knew or should have known from the September 2025 delayed-notice and Zoom-access incident that delayed, contradictory, or unreliable notice prejudiced Plaintiff's ability to participate, especially given her Florida residence and disability-related access needs.

224.   Defendants knew or should have known that mailing or processing an arrest-threatening notice so late that USPS tracking showed it first scanned in Illinois at 9:44 p.m. on May 5, 2026 for a May 6, 2026 hearing would be insufficient to provide meaningful notice to a Florida resident.

225. Defendants knew or should have known that a materially incorrect or hybrid certificate-of-service address, combined with a late certified-mail timeline and arrest warning, would foreseeably cause severe emotional distress to a self-represented disabled litigant.

226. Defendants knew or should have known that failing to provide written confirmation that no warrant, body attachment, contempt finding, default, or law-enforcement entry exists would leave Plaintiff in fear of arrest and continuing liberty consequences.

227. Defendant Melius's alleged continued viewing of Plaintiff's Facebook story after Plaintiff filed a judicial-misconduct notice heightened Plaintiff's fear that her protected speech, court-access activity, ADA requests, misconduct complaints, and civil-rights notices were being surveilled and used against her.

228. Defendants either intended to cause emotional distress or acted with reckless disregard of the probability that their conduct would cause severe emotional distress.

229. Plaintiff alleges that Defendants' conduct, to the extent not protected by applicable immunity, was willful and wanton because it reflected deliberate intent to cause harm or, at minimum, utter indifference or conscious disregard for Plaintiff's rights, liberty, disability-related access needs, and emotional safety.

230. Plaintiff further alleges, to the extent required by the Illinois Tort Immunity Act, that Defendants' conduct was malicious and without probable cause, including because the arrest-threatening contempt notice was mailed or processed in a manner

44

not reasonably calculated to reach Plaintiff before the hearing, relied on a materially incorrect or hybrid certificate-of-service address, invoked an overlapping and inaccurately cross-referenced remote-hearing rule framework without a clear, timely, individualized pre-incident warning, and was not followed by timely written withdrawal, recall, correction, or clarification after the defect was identified.

231.  Plaintiff suffered severe emotional distress, including fear of arrest, fear of incarceration, fear of warrant exposure, anxiety, humiliation, emotional destabilization, sleep disturbance, fear of further retaliation, trauma activation, and chilling of her protected speech and petitioning activity.

232.  Plaintiff seeks IIED damages only to the extent such claims are not barred by applicable immunity doctrines, and only for conduct that is non-judicial, non-advocacy, administrative, service-related, retaliatory, or otherwise not protected by absolute immunity.

**SIXTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 — CIVIL CONSPIRACY / COORDINATED RETALIATORY CONDUCT**

**Against Defendants Rinehart, Berrill, Hartford, Melius, and Doe Defendants as Applicable**

233.  Plaintiff incorporates all prior paragraphs as if fully set forth herein.

234.  Defendants, acting under color of state law, reached an express or implied agreement, or acted jointly and in coordinated fashion, to deprive Plaintiff of rights secured by the First and Fourteenth Amendments and federal disability-access law.

235. The purpose and effect of the agreement or coordinated conduct was to chill, deter, punish, or burden Plaintiff's protected speech, protected petitioning activity, ADA accommodation requests, access to court processes, and ability to defend against liberty-threatening contempt proceedings.

236. Plaintiff pleads this civil-conspiracy/coordinated-conduct claim in the alternative. Plaintiff recognizes that discovery may be necessary to identify communications, internal referrals, mailing decisions, docketing decisions, service instructions, and coordination among Defendants. Plaintiff does not allege conspiracy based merely on shared employment, lawful prosecutorial advocacy, lawful judicial rulings, or parallel conduct, but on the sequence of non-judicial, administrative, service-related, notice-related, disability-access, post-service corrective, and retaliatory conduct alleged herein.

237. Plaintiff does not allege a conspiracy based solely on protected judicial rulings or protected prosecutorial advocacy. Plaintiff alleges a coordinated retaliatory course of conduct involving non-judicial, administrative, service-related, investigative, disability-access, notice-related, and post-service corrective failures, including off-record monitoring of protected speech, defective service documentation, mailing or processing an arrest-threatening notice not reasonably calculated to arrive before the hearing, failure to meaningfully address disability-access needs, and failure to provide written clarification after the defective notice was identified.

238. Plaintiff alleges that the agreement or coordination may be inferred from the sequence, timing, and relationship of Defendants' acts, including:

a. Plaintiff's protected appeals, judicial-misconduct notices, ADA accommodation requests, public criticism, Facebook advocacy, and federal civil-rights preservation;

b. Plaintiff's prior notice to the Lake County State's Attorney's Office regarding alleged misconduct and civil-rights concerns;

c. Defendant Melius's alleged off-record Facebook monitoring through a profile reasonably identifiable as her personal Facebook account or a profile accessed by someone acting with her knowledge;

d. Plaintiff's filing of a judicial-misconduct notice regarding Defendant Melius's Facebook monitoring;

e. the alleged continued or repeated Facebook monitoring after Plaintiff filed the judicial-misconduct notice;

f. the Facebook-based indirect-criminal-contempt petition filed on or about April 13, 2026 and the later service, hearing-notice, and post-service corrective failures associated with that proceeding;

g. the defective certificate of service containing a materially incorrect or hybrid address;

h. the certified-mail timeline showing the arrest-threatening contempt notice was still in transit on the hearing date and not presented for delivery until after the hearing date;

i. the failure to provide written confirmation that no warrant, body attachment, contempt finding, default, or law-enforcement entry exists; and

j. the prior September 2025 delayed and contradictory Zoom-access notice affecting Plaintiff's ADA accommodation rights and ability to participate.

k. the use of multiple overlapping remote-hearing materials, including official Circuit 19 materials expressly referencing screenshots while citing an inaccurate and repealed statewide authority, without a clear, timely, individualized pre-incident warning concerning the specific conduct later charged.

239. Plaintiff alleges that the agreement or coordination may be inferred from the sequence and timing of events, including that the contempt petition was filed on or about April 13, 2026; the contempt notice contained a certificate of service dated April 14, 2026; a Facebook profile reasonably identifiable as Defendant Melius's personal account allegedly viewed Plaintiff's Facebook story on or about April 20, 2026; Plaintiff filed a judicial-misconduct notice against Defendant Melius on April 21, 2026; USPS tracking shows the certified item was first scanned into transit on May 5, 2026; the notice set a May 6, 2026 hearing and threatened arrest for nonappearance; Plaintiff did not receive notice until May 8, 2026, after the hearing date; and the same Facebook profile allegedly viewed Plaintiff's story again on or about May 16, 2026.

48

Plaintiff pleads the alleged Facebook views as evidence of continuing monitoring and potentially relevant post-filing conduct, not as proof that Defendant Melius caused initiation of the April 13, 2026 petition.

240. Plaintiff alleges that this sequence supports a reasonable inference of a meeting of the minds or coordinated retaliatory course of conduct, including coordination to monitor Plaintiff's protected speech, use alleged Facebook-related activity as the basis for contempt proceedings, and expose Plaintiff to arrest-threatening consequences without meaningful notice.

241. Plaintiff alleges that Defendants committed overt acts in furtherance of the conspiracy or coordinated course of conduct, including but not limited to:

a. monitoring Plaintiff's protected Facebook activity outside the judicial record;

b. continuing or repeating that monitoring after Plaintiff filed a judicial-misconduct notice;

c. initiating, advancing, processing, or maintaining a Facebook-based indirect criminal contempt proceeding;

d. preparing, certifying, mailing, processing, or relying on a certificate of service listing a materially incorrect or hybrid address;

e. mailing, processing, or relying on an arrest-threatening contempt notice that was not reasonably calculated to reach Plaintiff before the hearing;

f. failing to meaningfully address Plaintiff's disability-access needs;

g. issuing, transmitting, or relying on delayed or contradictory appearance instructions affecting Zoom access and ADA accommodations; and

h. failing to correct, withdraw, recall, or provide written clarification regarding the defective contempt notice and any resulting liberty threat.

i. Relying on multiple overlapping and inaccurately cross-referenced remote-hearing materials in pursuing arrest-threatening contempt process without a clear, timely, individualized pre-incident warning.

242. The underlying constitutional and statutory deprivations included, but were not limited to, deprivation of procedural due process, retaliation for protected First Amendment speech and petitioning activity, denial of meaningful access to court processes, and retaliatory burdening of Plaintiff's disability-accommodation requests.

243. Plaintiff suffered injury as a result of Defendants' conspiracy or coordinated conduct, including fear of arrest, fear of warrant or body-attachment exposure, chilling of protected speech, chilling of petitioning activity, chilling of ADA accommodation requests, emotional distress, trauma activation, reputational harm, and the burden of responding to an arrest-threatening contempt notice that was not timely or meaningfully served.

244. Plaintiff brings this claim under 42 U.S.C. § 1983 only. Plaintiff does not presently assert a claim under 42 U.S.C. § 1985 or § 1986, but reserves the right to

seek leave to amend if discovery reveals facts supporting class-based discriminatory animus or failure to prevent a qualifying § 1985 conspiracy.

## LIMITATION ON DAMAGES AND RELIEF

Plaintiff seeks monetary damages only from Defendants in their individual capacities and only to the extent such damages are not barred by absolute immunity, qualified immunity, judicial immunity, prosecutorial immunity, sovereign immunity, or other applicable doctrines. Plaintiff seeks declaratory, prospective, or injunctive relief only to the extent lawful and not barred by abstention, immunity, or other jurisdictional doctrines.

Plaintiff does not seek an injunction staying, terminating, dismissing, or otherwise interfering with any ongoing state criminal-contempt proceeding. To the extent any requested declaratory or prospective relief could be construed to interfere with an ongoing state proceeding, Plaintiff requests that the Court limit, defer, stay, or tailor such relief as required by Younger abstention while retaining jurisdiction over Plaintiff's claims for damages and other relief not barred by abstention.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Heather Louise Bendl respectfully requests that the Court enter judgment against Defendants and award the following relief:

A.  Declare that Defendants violated Plaintiff's Fourteenth Amendment procedural due-process rights by threatening arrest or punitive

consequences through a contempt notice that was not timely or meaningfully served before the scheduled hearing;

B. Declare that Defendants violated Plaintiff's Fourteenth Amendment procedural due-process rights by relying on a materially incorrect or hybrid certificate-of-service address and a certified-mail timeline showing the notice remained in transit on the hearing date;

C. Declare, to the extent permitted by law, that Defendants violated Plaintiff's First Amendment rights by retaliating against her for protected speech and petitioning activity, including through selective, procedurally defective, and arrest-threatening enforcement activity that chilled protected speech;

D. Declare, to the extent permitted by law, that personal, off-record monitoring of Plaintiff's Facebook activity by a profile reasonably identifiable as belonging to or being controlled by a presiding judge during active appellate litigation arising from the same underlying case was non-judicial conduct relevant to Plaintiff's claims of retaliation, chilling effect, procedural unfairness, and lack of meaningful disclosure;

E. Declare that Defendants denied Plaintiff meaningful access to court processes by failing to meaningfully consider or accommodate her disability-related access needs;

F. Declare that Plaintiff's federal due-process rights required timely and meaningful notice and an opportunity to be heard before any arrest-threatening or liberty-restricting consequence could be imposed based on nonappearance at the May 6, 2026 hearing;

G. Award such declaratory or prospective relief concerning the defective notice and service process as is lawful, appropriate, and not barred by Younger abstention, judicial immunity, prosecutorial immunity, sovereign immunity, or any other jurisdictional doctrine;

H. Compensatory damages against Defendants in their individual capacities where permitted by law;

I. Damages for intentional infliction of emotional distress under Illinois law where permitted by law;

J. Punitive damages against individual Defendants where permitted by law and supported by evidence;

K. Nominal damages for constitutional violations;

L. Costs of this action;

M. Pre-judgment and post-judgment interest where allowed;

N. Such declaratory, prospective, or injunctive relief as is lawful and appropriate and not barred by abstention, immunity, or other jurisdictional doctrines;

O. Leave to amend after discovery to identify Doe Defendants and add facts concerning coordination, communications, service defects, warrant processing, internal forwarding of Plaintiff's complaints, social-media monitoring, Facebook account ownership, emotional-distress damages, disability discrimination, retaliatory intent, and, if supported by discovery, claims under 42 U.S.C. §§ 1985 or 1986; and

P. Grant such narrowly tailored prospective relief as is supported by the evidence and permitted by law to prevent unlawful retaliation, coercion, intimidation, or interference with Plaintiff's exercise of ADA-protected rights, First Amendment petitioning activity, and prosecution of this civil-rights action, without restraining lawful judicial, prosecutorial, or administrative conduct and without interfering with any ongoing state proceeding.

Q. Award such additional relief as the interests of justice may require.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated this 31st Day of May, 2026

HEATHER LOUISE BENDL
*Plaintiff, pro se*

/s/  Heather Louise Bendl

1709 Queen Palm Drive
Edgewater, Florida 32132
386-846-0599
HBendl@comcast.net

**YOUR FAILURE TO APPEAR AT THIS HEARING MAY RESULT IN YOUR ARREST**

STATE OF ILLINOIS     )
                              ) SS
COUNTY OF LAKE        )

### IN THE CIRCUIT COURT OF THE NINETEENTH
### JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS,  )
                                  )
            Petitioner,         )
                                  )  26 CC 5
vs.                              )
                                  )
HEATHER L. BENDL,       )
                                  )
            Respondent.     )

### NOTICE OF HEARING ON THE VERIFIED PETITION
### FOR ADJUDICATION OF INDIRECT CRIMINAL CONTEMPT

PLEASE TAKE NOTICE that on May 6, 2026, at 9:00 a.m., the Verified Petition for Adjudication of Indirect Criminal Contempt, which was filed on April 13, 2026 with the Clerk of the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, will be heard by the Honorable Ari Fisz, or any Judge sitting in his or her stead, in Courtroom T-812 of the Lake County Courthouse, 18 N. County St., Waukegan, Illinois 60085. At the appointed time, the undersigned will move for a hearing on the attached Verified Petition for Adjudication of Indirect Criminal Contempt on the matter of why the defendant should not be held in contempt of Court and hearing thereon shall be requested instanter.

_____
Assistant State's Attorney

Kevin J. Berrill
Assistant State's Attorney
18 North County Street
Waukegan, Illinois 60085
(847) 377-300

### CERTIFICATE OF SERVICE

I, _____Christy M. Hartford_____, certify that I sent a copy of the foregoing by prepaid certified mail to the Respondent at 1709 Queens Way, Port Orange, FL, on April 14th, 2026.

_____

Exhibit A, Page 1

**FILED**

04/13/2026 3:45 PM
2026CC00000005
Erin Cartwright Weinstein
**Clerk of the Court**
**Lake County, Illinois**

STATE OF ILLINOIS      )
                      ) SS
COUNTY OF LAKE      )

## IN THE CIRCUIT COURT OF THE NINETEENTH
## JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | 2026CC00000005 |
| ) | |
| HEATHER L. BENDL, ) | |
| ) | |
| Respondent. ) | |

## VERIFIED PETITION FOR ADJUDICATION OF INDIRECT CRIMINAL CONTEMPT

Now comes Petitioner People of the State of Illinois, by Eric Rinehart, State's Attorney of Lake County, through Kevin J. Berrill, Assistant State's Attorney, and, in support of an adjudication of indirect criminal contempt against Respondent Heather L. Bendl pursuant to Illinois Nineteenth Judicial Circuit Court Rule 10-1.03, alleges as follows:

1.    Illinois Nineteenth Judicial Circuit Court Rule 1-4.01 provides in pertinent part that, "[r]ecording of court proceedings in person or remotely is prohibited and may be subject to criminal prosecution, contempt of court, and any other sanctions deemed necessary by the court." IL R 19 CIR Rule 1-4.01(A)(1). Said Rule further provides that, "[p]hotography, broadcasting, audio or video recording, live streaming and social media broadcasting are prohibited in all Court Facilities areas and their surrounding environs." *Id.* at 1-4.01(A)(6). Moreover, said Rule states that,

> "[a]ll rules regarding the use of electronic devices apply equally to remote court proceedings, including those conducted via Zoom or other videoconferencing platforms. Participants are expected to follow the same standards of conduct and courtroom behavior as required when appearing in-person."

Exhibit A, Page 2

*Id.* at 1-4.01(A)(7).

2. Similarly, Illinois Supreme Court Rule 44 provides in pertinent part that, "the taking of photographs in the courtroom during sessions of the court . . . [is] permitted only to the extent authorized by order of the Supreme Court." IL R S CT Rule 44. "[P]hotographic recording, digital capturing, or other recording of a remote proceeding or a court broadcast of a proceeding" is strictly prohibited without the court's approval. *Id.*; *see also In re B.R.*, 2023 IL App (1st) 221614-U, ¶ 21.

3. Respondent is a party in 13D981 and 20F422, both of which cases were pending and heard remotely on August 12, 2025 in Courtroom C-105 of the Lake County Courthouse within the Nineteenth Judicial Circuit. Respondent attended said court proceedings remotely.

4. On August 12, 2025, Respondent posted to her public Facebook page five screen shots of the said remote court proceedings from that day.

5. On September 2, 2025, both of said cases were again pending and heard remotely in Courtroom C-105 of the Lake County Courthouse within the Nineteenth Judicial Circuit. Respondent attended said court proceedings remotely.

6. On September 2, 2025, Respondent posted to her public Facebook page six screen shots of the said remote court proceedings from that day.

7. On September 3, 2025, Lake County Sheriff's Office Deputy Vasile Pop observed Respondent to have posted on Respondent's public Facebook page said pictures of said remote Circuit Court proceedings on said days.

8. Respondent was not authorized or approved to take photographs or screen shots of remote Circuit Court proceedings in the Lake County Courthouse on either August 12, 2025 or

September 2, 2025, and Respondent was not authorized or approved to broadcast on social media photographs or screen shots of said remote Circuit Court proceedings on said days.

WHEREFORE, your Petitioner, People of the State of Illinois, prays that this Honorable Court, pursuant to Illinois Nineteenth Judicial Circuit Court Rule 10-1.03:

(a) issue against Respondent Heather Bendl an adjudication of indirect criminal contempt; and

(b) grant such other and further relief as this Court deems equitable and just.

<div align="right">Respectfully submitted,

ERIC F. RINEHART
State's Attorney of Lake County

By: _____
Kevin J. Berrill
Assistant State's Attorney</div>

## VERIFICATION

Under penalties as provided by law pursuant to section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

<div align="right">By: _____
Kevin J. Berrill
Assistant State's Attorney</div>

<div align="right">Exhibit A, Page 4</div>





# USPS Tracking®

FAQs >

**Remove ✕**

**Tracking Number:**

## 70192280000112511604

Copy     Add to Informed Delivery

### Latest Update

Your item was picked up at the post office at 3:54 pm on May 8, 2026 in EDGEWATER, FL 32132.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

Feedback

### ● Delivered

**Delivered, Individual Picked Up at Post Office**
EDGEWATER, FL 32132
May 8, 2026 3:54 PM

**Notice Left (No Authorized Recipient Available)**
EDGEWATER, FL 32132
May 8, 2026 10:49 AM

**Arrived at USPS Facility**
LAKE MARY FL DISTRIBUTION CENTER
May 7, 2026 10:06 PM

**Arrived at USPS Facility**
ORLANDO FL DISTRIBUTION CENTER
May 7, 2026 8:10 AM

**Arrived at USPS Facility**
CAROL STREAM IL DISTRIBUTION CENTER
May 5, 2026 9:44 PM

Screenshots of Illinois Circuit 19 Judge Jacquelyn D. Melius using her personal Facebook Account to view Pro Se Litigant Heather Bendl's personal Facebook Page on **April 20th, 2026**, that triggered the **Notice of Judicial Misconduct on April 21st, 2026** – This case is currently in Illinois Supreme Court as **Case # 133148**:



Screenshots of Illinois Circuit 19 Judge Jacquelyn D. Melius using her personal Facebook Account to view Pro Se Litigant Heather Bendl's personal Facebook Page on **May 16th, 2026** (**AFTER** the Notice of Judicial Misconduct) triggered Heather Bendl to **BLOCK** the Facebook Account "Jacqui Melius":



Screenshots of the Facebook Account "**Jacqui Melius**" to prove this personal account belongs to **Judge Jacquelyn D. Melius** using her personal social media to cyberstalk current Pro Se Litigants in active appeal status:



Exhibit C, Page 3



FILED
4/21/2026 8:39 PM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**

**LAKE COUNTY, ILLINOIS**

| | | |
|---|---|---|
| IN RE THE FORMER MARRIAGE OF:) | | |
| | ) | |
| HEATHER L. BENDL f/k/a SERLICK, ) | | |
| *Petitioner / Appellant,* | ) | |
| | ) | No. 13 D 981 |
| and | ) | 20 F 422 |
| | ) | |
| JUSTIN D. SERLICK, | ) | |
| *Respondent / Appellee.* | ) | |

## NOTICE OF JUDICIAL MISCONDUCT AND MATERIAL FACTS

## REGARDING CONDUCT OF JUDGE JACQUELYN D. MELIUS

NOW COMES the Petitioner / Appellant, HEATHER LOUISE BENDL,

and respectfully submits this Notice to preserve material facts for the record

and to alert appropriate judicial oversight authorities to conduct raising

serious concerns under the Illinois Code of Judicial Conduct.

1

Exhibit D, Page 1

## I. BACKGROUND

1. Petitioner / Appellant is a Pro Se Litigant in proceedings before the Nineteenth Judicial Circuit, Lake County, Illinois, including matters presided over by the Honorable Jacquelyn D. Melius.

2. The underlying case has been subject to appellate review in the Illinois Appellate Court, Second District, with rehearing denied, and further review currently being contemplated through a Petition for Leave to Appeal to the Illinois Supreme Court.

3. At all relevant times, the matter remained within the judicial process, including ongoing legal consequences and potential further appellate proceedings.

## II. FACTUAL ALLEGATION OF EXTRAJUDICIAL CONDUCT

4. On **April 20, 2026**, Petitioner observed that Judge Jacquelyn D. Melius accessed and viewed Petitioner's personal Facebook social media profile.

5. Petitioner has preserved a **screenshot documenting this activity**, which is attached hereto as **Exhibit A.**

2

6. The Facebook profile is not part of the evidentiary record in any proceeding before the Court, and no content from said profile has been introduced, authenticated, or admitted into evidence.

7. Petitioner did not consent to any review of her personal social media by the Court outside of formal evidentiary procedures.

8. Petitioner Heather Bendl has also endured verbal abuse from Judge Melius on numerous occasions where her third party court watchers also witnessed this abuse, including but not limited to: talking over petitioner, talking disrespectfully and "down" to the petitioner, muting petitioner mid-sentence many times over multiple hearings, demanded petitioner travel over 1,200 miles to the Waukegan, Illinois Court House while biasedly allowing Respondent Justin Derrick Serlick to remain remote while fully aware petitioner is a Public High School Teacher in Orlando, Florida that can not simply drop everything a fly up to Illinois for multiple days. However, it is worth noting that Justin Derrick Serlick did not attend any of the Illinois Circuit 19 hearings, not one. It is extremely obvious that Judge Melius has behaved in an abusive, biased manner towards Petitioner Heather Bendl and is refusing to protect the minor Serlick children B.S. and C.S. that Illinois Circuit 19 shipped down to the

3

Exhibit D, Page 3

non-custodial parent August 11th, 2021 where Respondent Justin Derrick Serlick of Daytona Beach, Florida has been withholding any and all contact with their mother Heather Bendl via the 3-page "Order" from Illinois Circuit 19 Judge Marnie Slavin illegally signed ex parte April 27th, 2022 that **RESERVED** Heather Bendl's rights and swapped child support ordering Heather Bendl to pay Justin Serlick $785/month based on his reported "expenditures". Heather Bendl and Justin Serlick were no longer legal residents of Illinois. Both had already obtained Florida Driver's Licenses and the three minor children in question had resided in Florida for over 6 months. The oldest child, Ariana Serlick, was **RESERVED** to **BOTH** parents, leaving her in legal limbo after the Illinois Temporary Guardianship had expired December 28th, 2023 until her 18th birthday September 15th, 2024. This is abuse of power, fraud upon the court under the color of law, and extortion.

## III. PRESERVATION OF MATERIAL FACT

9. Petitioner submits that the above-described conduct constitutes **extrajudicial access to information outside the record**, raising concerns regarding:

<p align="center">4</p>

- Independent factual investigation
- Consideration of non-record information
- Judicial neutrality and impartiality

## IV. POTENTIAL VIOLATIONS OF ILLINOIS CODE OF JUDICIAL CONDUCT

Petitioner respectfully asserts that the conduct described implicates the following provisions:

### A. Rule 2.9(C) - Independent Investigation Prohibited

A judge shall not independently investigate facts and shall consider only the evidence presented.

Petitioner asserts that accessing a litigant's personal social media outside the record constitutes **improper independent fact-gathering** and is considered **cyber-stalking**.

### B. Canon 1, Rule 1.2 - Appearance of Impropriety

A judge must avoid impropriety and the appearance of impropriety in all activities.

The act of viewing a litigant's personal social media during ongoing proceedings creates a reasonable perception that the Court:

5

- Is monitoring a party outside judicial proceedings

- May be considering information not subject to adversarial testing

## C. Canon 2, Rule 2.11 - Impartiality and Disqualification

A judge shall disqualify herself where impartiality might reasonably be questioned.

The conduct described raises reasonable concerns regarding:

- Exposure to extrajudicial information

- Potential influence on judicial decision-making

## V. IMPACT ON PROCEEDINGS AND DUE PROCESS

9. These actions raise substantial concerns regarding:

- The integrity and fairness of the proceedings

- The limitation of judicial decision-making to the evidentiary record

- The constitutional guarantee of due process

10. Petitioner asserts that judicial review of extra-record materials undermines confidence in the neutrality of the tribunal and may affect the validity of prior and future rulings.

6

## VI. EXHIBIT

11.  **Exhibit A** - Screenshot evidencing Judge Jacquelyn D. Melius viewed Petitioner's Facebook social media profile on April 20, 2026.

## VII. PRESERVATION OF RIGHTS

12.  Petitioner expressly preserves all rights to:

- Raise these issues in appellate proceedings, including a Petition for Leave to Appeal to the Illinois Supreme Court

- File formal complaints with judicial oversight bodies, including the Illinois Judicial Inquiry Board

- Petitioner / Appellant also preserves the right to seek redress in the Federal U.S. District Court under 42 U.S.C. §§ 1983, 1985, and 1986 Complaints against any parties violating Heather Bendl's U.S. Federally Protected Rights since September 15th, 2020.

## VIII. REQUEST FOR REVIEW

WHEREFORE, Petitioner Heather Bendl respectfully requests that this Notice be made part of the record and that appropriate review be conducted into the conduct described herein. Petitioner requests that there be a formal investigation into Judge Jacquelyn D. Melius' involvement with

7

Judge Michael G. Nerheim's misconduct in this case. Petitioner Heather Bendl filed a Notice of Misconduct against Michael G. Nerheim on December 15, 2025. Judge Jacquelyn D. Melius' behavior and conduct is highly unprofessional and gives the appearance that there is extreme bias in Petitioner Heather Bendl's case against Justin Derrick Serlick who, as of the date of this filing, has been hiding and blocking all contact between mother Heather Bendl and the minor children since August 11th, 2021. These minor children are being neglected and abused in father's care while Illinois Circuit 19 looks the other way. Judge Michael G. Nerheim's interference in Florida Circuit 7 is cause for great concern for the children's welfare and wellbeing in the State of Florida.

Respectfully submitted on this Tuesday, April 21st, 2026.

8

Exhibit D, Page 8

This screenshot was taken from Heather Bendl's cellphone at 5:31pm EST on Monday, April 20th, 2026. This was Illinois Circuit 19 Judge Jacquelyn D. Melius viewing my personal FB account https://www.facebook.com/HeatherBendl posted stories, which show all viewers while the story is live.



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to Chief Judge Daniel B. Shanes via Certified US Mail and Courtroom 105 emails, Justin Derrick Serlick, and his Attorney Will Traberis via eService and email on April 21st, 2026, to:

**Justin Derrick Serlick**

333 S. Lanvale Avenue

Daytona Beach, FL 32114

JSerlick@gmail.com

**and**

**Judge Daniel B. Shanes, Chief Judge**

Courtroom T-810

18 N County Street

Waukegan, IL 60085

CT810@LakeCountyIL.gov

847-377-3380 Option 3

**and**

KATZ, GOLDSTEIN & WARREN

**Attorney Will Trabaris**

wtrabaris@kgwlaw.com

ARDC No. 6336869

Attorneys for JUSTIN SERLICK

Bannockburn Lake Office Plaza

2345 Waukegan Road, Suite #150

9

Exhibit D, Page 10

Bannockburn, Illinois 60015

Telephone No. (847) 317-9500

E-mail: pleadings@kgwlaw.com

Dated: 4-21-2026

Signature: *Heather S. Bendl*

Printed Name: Heather Louise Bendl

Address: 1709 Queen Palm Drive

City, State, ZIP: Edgewater, Florida, 32132

Telephone No.: 386-846-0599

Email: HBendl@comcast.net

10

**VERIFICATION:**

I, HEATHER LOUISE BENDL, being first duly sworn, do hereby verify and state:

1. The facts set forth therein are true and correct to the best of my knowledge and belief.

Executed this 21ˢᵗ day of April , 2026

_Heather S. Bendl_

**Heather Louise Bendl**

Petitioner

State of Florida / County of **VOLUSIA**

Swore to (or affirmed) and subscribed before me by means of [X] physical presence or [ ] online notarization this 21 day of April , 2026 by **Heather Louise Bendl**, who is personally known to me of who has produced FL DL as identification.

_Peter J. Arnold_

**Notary Public**

My Commission Expires: _____

NOTARY PUBLIC · STATE OF FLORIDA
PETER J. ARNOLD
MY COMMISSION # HH349560
EXPIRES: January 22, 2027

11

Exhibit D, Page 12

**FILED**
**12/15/2025 12:00 AM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
Lake County, Illinois

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**

**LAKE COUNTY, ILLINOIS**

| | | |
|---|---|---|
| IN RE THE FORMER MARRIAGE OF:) | | |
| | ) | |
| HEATHER L. BENDL f/k/a SERLICK, | ) | |
| Petitioner / Appellant, | ) | |
| | ) | No. 13 D 981 |
| and | ) | 20 F 422 |
| | ) | |
| JUSTIN D. SERLICK, | ) | |
| Respondent / Appellee. | ) | |

## NOTICE OF JUDICIAL MISCONDUCT AND MATERIAL FACTS REGARDING JUDGE MICHAEL G. NERHEIM'S INVOLVEMENT IN RELATED PROCEEDINGS

NOW COMES the Petitioner / Appellant, HEATHER LOUISE BENDL, and submits this Memorandum to preserve material facts for the appellate record and to alert the Court to serious procedural irregularities relevant to this appeal.

1. Petitioner / Appellant has reason to believe and has documented that Presiding Judge Michael G. Nerheim of the Family Division of the

Exhibit D, Page 13

Nineteenth Judicial Circuit has engaged in acts affecting the fairness and integrity of the underlying proceedings.

2. Specifically, Petitioner / Appellant asserts that Judge Michael G. Nerheim: a. Participated in or directed off-the-record involvement in Florida proceedings involving Petitioner / Appellant's family matter; b. Engaged in or facilitated ex parte communications with parties in Florida or Illinois without notice or inclusion of Petitioner / Appellant; c. Acted in a manner that undermines the UCCJEA's jurisdictional protections and procedural safeguards.

3. Of particular note, Petitioner / Appellant alleges that Judge Michael G. Nerheim made a direct phone call concerning the Florida proceedings, which was contemporaneously referenced in an email dated January 26, 2024, sent by Attorney Mary Jane Nettles to the Florida court. This email documents the alleged communication but was never formally docketed on the record, thereby obscuring the involvement from judicial oversight and appellate review.

4. Attached hereto as **Exhibit A** is a true and correct copy of the email from Attorney Nettles referencing the call from Judge Michael G. Nerheim. Petitioner / Appellant respectfully submits this exhibit for the record in support of the above-referenced allegations.

Exhibit D, Page 14

5. These actions are alleged to have impacted:

- Custody determinations;

- Registration and enforcement of foreign orders;

- The integrity of the state court's jurisdictional findings.

6. Petitioner / Appellant preserves these allegations for future motions, complaints to judicial oversight bodies, or appeal of related orders.

7. Petitioner / Appellant also preserves the right to seek redress in the Federal U.S. District Court under 42 U.S.C. §§ 1983, 1985, and 1986 as well as 18 U.S.C. §§ 241 and 242 Complaints against any parties violating Heather Bendl's U.S. Federally Protected Rights since September 15th, 2020.

Respectfully submitted Sunday, December 14th, 2025.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to Chief Judge Daniel B. Shanes via Certified US Mail and Courtroom emails and Justin Derrick Serlick and his Attorney Will Traberis via eService and email on December 14th, 2025, to:

**Justin Derrick Serlick**

333 S. Lanvale Avenue

Daytona Beach, FL 32114

JSerlick@gmail.com

Exhibit D, Page 15

**and**

**Judge Daniel B. Shanes, Chief Judge**

Courtroom T-810

18 N County Street

Waukegan, IL 60085

CT810@LakeCountyIL.gov

847-377-3380 Option 3

**and**

KATZ, GOLDSTEIN & WARREN

**Attorney Will Trabaris**

wtrabaris@kgwlaw.com

ARDC No. 6336869

Attorneys for JUSTIN SERLICK

Bannockburn Lake Office Plaza

2345 Waukegan Road, Suite #150

Bannockburn, Illinois 60015

Telephone No. (847) 317-9500

E-mail: pleadings@kgwlaw.com

Dated: 12-14-2025

Signature: Heather S. Bendl

Printed Name: Heather Louise Bendl

Address: 1709 Queen Palm Drive

City, State, ZIP: Edgewater, Florida, 32132

Telephone No.: 386-846-0599

Email: HBendl@comcast.net

Exhibit D, Page 16

## IN THE DISTRICT COURT OF APPEAL OF THE STATE OF ILLINOIS
## SECOND DISTRICT

Heather Louise Bendl,

*Petitioner / Appellant,*

v.

Justin Derrick Serlick,
*Respondent / Appellee.*

Case No.: 2-25-0481
L.T. NO.: 20 F 422 / 13 D 981
Judge Jacquelyn D. Melius
Presiding Judge

---

### EXHIBIT A

### TO

### NOTICE OF JUDICIAL MISCONDUCT AND MATERIAL FACTS REGARDING JUDGE MICHAEL G. NERHEIM'S INVOLVEMENT IN RELATED PROCEEDINGS

Copy of Petitioner / Appellant Heather Bendl's emails from 1-7-2025 regarding a public record's request of Florida Circuit 7, Copy of Mary Jane Nettles documenting Michael G. Nerheim called Bendl's attorney off the record on 1-26-2024, and Copy of email dated 1-11-2025 from Heather Bendl to Mary Jane Nettles regarding forwarding Nerheim's private cell phone number.

---

Exhibit D, Page 17

**Joshua Griffith <jgriffith@circuit7.org>**                              1/7/2025 5:43 PM

## Re: Public Records Request - Case # 2023 31828 FMCI (35 - Stasia Warren)

To HBendl@comcast.net <hbendl@comcast.net>

Hello Ms. Bendl,

I hope this message finds you well. My name is Joshua Griffith, I am the General Counsel for the 7th Judicial Circuit. Our Trial Court Administrator, Mark Weinberg, asked me to follow up with you.

I wanted to take a moment to address your concerns regarding a recent records request. I know you are frustrated by the process, but I assure you that every circuit employee takes our public records responsibilities seriously.

As to your reference to Florida Statute §119 (referred to as the Public Records Law): while §119 establishes important rights for all Floridians, courts do not follow—nor is §119 applicable to—the judicial branch of government. The authority pertaining to the judicial branch's public records responsibilities flows from the Florida Rules of General Practice and Administration, specifically rule 2.420 et. alia, not statute §119.

As to your request for public records: we did not find any additional materials using the search query you provided. However—and although we are not required by the rule— using the spirit of your inquiry we slightly expanded the search parameters and found some additional documents which may pertain to your records request. They are provided herein. If you are looking for something specific, please let us know, but as of now this is the balance of your request.

As to your demand for an itemized invoice: this is not something we are required to provide under the rule. However, since you asked, we charge $30 per hour and .15¢ per page to produce records. In your case, four hours were expended conducting the initial search and 37 pages were produced.

Ms. Bendl, I understand dealing with the court system can be frustrating and laborious and I want to take this opportunity to thank you for your understanding and continued patience.

JG


Joshua L. Griffith, esq.
General Counsel
Seventh Judicial Circuit of Florida
Bar No.: 1038320
Phone: 386.626.6574
Email: JGriffith@Circuit7.org

---

- DOC010725.pdf (419 KB)

Exhibit A, Page 1
Exhibit D, Page 18

**Sent:** Friday, January 26, 2024 5:34 PM
**To:** Pomar, Leslie M.
**Cc:** Serena Baldacchino
**Subject:** UPDATED INFORMATION ON ILL JUDGE'S CONTACT
**Attachments:** 190629591 Motion.pdf; Untitled attachment 00074.htm

I want to advise that I received a telephone call this afternoon from the Illinois Judge, The Honorable Michael Nerheim, who had received the information from the clerk there with whom I spoke to get the name of the judge to whom the ILL case is now assigned, and the contact information. (I am without staff on Fridays so I answered the call myself thinking when I saw the caller ID that it was the clerk that I had spoken to earlier.)

He wanted to provide his cell number to Judge Warren to make it easier for her to contact him which is: ▇▇▇▇▇▇▇.

He and I had no discussions on the merits of the motion I filed here or on anything to do with the case. (I actually said to him, when he identified who he was, that I am pretty sure it was not appropriate for me to be having direct communications with him, to which he responded that he was just wanting to leave the information on a better way for the judge here to contact him than by going through the switchboard/number the clerk had given me.). We did discuss the weather though!! (It is cold and dreary up there right now he says!!)

Just wanted to A. Disclose this information, and B. Provide the number he asked me to give to Judge Warren!!

LAW OFFICE OF MARY JANE NETTLES, PLLC
Mary Jane Nettles, Esq.
FL BAR # 312045
409 So Orange St
New Smyrna Beach, FL 32168
386.426.1972
FAX: 386.426.1971

Begin forwarded message:

**Heather Bendl <hbendl@comcast.net>**       1/11/2025 2:02 PM

## Information Request Regarding a Phone Call 1/26/2024

To attorneymaryjane@aol.com <attorneymaryjane@aol.com> •
maryjane@attorneymaryjane.com <maryjane@attorneymaryjane.com> Copy
nadineturner@live.com <nadineturner@live.com> •
melissa@attorneymaryjane.com <melissa@attorneymaryjane.com> Blind copy
Peterjonarnold@gmail.com <peterjonarnold@gmail.com> • Karen Edouard <kedouard@chrysalishealth.com> •
Dad <ferraridave1@comcast.net>

---

Hello Attorney Mary Jane Nettles,

I would like to schedule some time to have a conversation with you about a phone call you had with Judge Michael G. Nerheim of Lake County, Illinois 19th Judicial Circuit Court which you memorialized on Friday, January 26th, 2024 at 5:34pm that was sent to Leslie M. Pomar, former JA to Judge Stasia Warren, and CC'ed to Serena Baldachhino, Justin Serlick's Former Attorney from August 2023 to December 2024.

This occurred the same day you filed DIN 18 in my docket for my Florida Family Case 2023-31828 FMCI.

In this email you memorialize that Judge Nerheim (Former State Attorney for Lake County, Illinois until November 2020) was communicating off-channel ex parte with with, asking you to pass along his personal cell number to Judge Stasia Warren.

You stated you wanted to A. Disclose this information, and B. Provide the number he asked you to give to Judge Warren.

As you are probably aware, this is not how these matters should be handled. As even I am aware that is not standard law practice.

So please let me know when you and I can have a conversation about what transpired during that phone call and after that phone call.

Mary Jane, my children are suffering in Justin Serlick's care. I have all of their school records since August 2021 in Volusia County Schools in my possession, it is very clear Justin Serlick is neglecting them. He is neglecting their education, their mental health, and more than likely their physical health.

Right now more than anything, I am a very concerned mother TRYING to advocate for her struggling children that need me.

I know people are trying to protect themselves in this situation as I am an educated woman as well. I am not stupid by any means and it's proven with the fact I knew how to pull Public Records Request with Mark Weinberg of Circuit Seven which is how I ultimately now have this email of yours in my possession.

Right now I am trying to PROTECT my children as their mother and they need me!

Exhibit A, Page 3
Exhibit D, Page 20

I have been having lunches with my youngest Charlie my youngest you got me a Zoom Session with exactly one year ago on his 7th birthday when you were my attorney. Charlie has been telling me some pretty disturbing things that has been happening in that home. Pete Arnold has met Charlie at Palm Terrace and my son made it VERY clear he knows Justin is keeping them from me and he voiced that he WANTS me to be in his life and even openly said he wants to come live with me

Everything else with this off-channel ex parte issue can wait, my children NEED HELP Mary Jane.

Please let me know when we can have this meeting to discuss this email you wrote out and memorialized so we can **PUT MY CHILDREN FIRST.**

Thank You,

Ms. Heather Bendl, B.S.

HBendl@comcast.net

386-846-0599

https://www.linkedin.com/in/heatherbendl/

Exhibit A, Page 4
Exhibit D, Page 21

# USPS Tracking®

FAQs >

**Track Packages
Anytime, Anywhere**

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

Feedback

**Remove** ✕

**Tracking Number:**

# 9505515848186117148621

**Copy**      **Add to Informed Delivery**

## Latest Update

Your item has been delivered and is available at a PO Box at 8:38 am on May 2, 2026 in WAUKEGAN, IL 60085.

---

**Get More Out of USPS Tracking:**

     **USPS Tracking Plus®**

● **Delivered**

**Delivered, PO Box**
WAUKEGAN, IL 60085
May 2, 2026 8:38 AM

● **Out for Delivery**
WAUKEGAN, IL 60085
May 2, 2026 6:10 AM

● **Arrived at Post Office**
WAUKEGAN, IL 60085
May 2, 2026 3:53 AM

● **Departed USPS Facility**
PALATINE IL DISTRIBUTION CENTER

Exhibit D, Page 22

May 2, 2026 1:51 AM

**In Transit to Next Facility**

May 1, 2026 3:27 PM

**Arrived at USPS Facility**

PALATINE IL DISTRIBUTION CENTER
May 1, 2026 2:50 PM

**In Transit to Next Facility**

May 1, 2026 12:23 PM

**Departed USPS Facility**

INDIANAPOLIS IN DISTRIBUTION CENTER
May 1, 2026 10:19 AM

**Arrived at USPS Facility**

INDIANAPOLIS IN DISTRIBUTION CENTER
April 30, 2026 12:51 PM

**In Transit to Next Facility**

April 29, 2026 8:53 PM

**In Transit to Next Facility**

April 29, 2026 10:56 AM

**In Transit to Next Facility**

April 29, 2026 7:30 AM

**Departed USPS Facility**

SEMINOLE-ORLANDO FL DISTRIBUTION CENTER

April 28, 2026 11:24 PM

**Arrived at USPS Facility**

SEMINOLE-ORLANDO FL DISTRIBUTION CENTER
April 28, 2026 5:37 PM

**Departed Post Office**

EDGEWATER, FL 32132
April 28, 2026 4:31 AM

**USPS in possession of item**

EDGEWATER, FL 32132
April 27, 2026 2:42 PM

**Hide Tracking History**

**What Do USPS Tracking Statuses Mean?**

---

## Text & Email Updates ⌄

---

## USPS Tracking Plus® ⌃

Your item is eligible for USPS Tracking Plus. This feature allows you to buy extended access to your tracking history and receive a statement via email upon request. Without this feature, your regular tracking history is only available on this site until August 25, 2026. To extend your access to this tracking history, select the length of time you would like and confirm your selection. You can only purchase extended history once, so all orders are final and are not eligible for a refund.

**Note:** For multiple tracking numbers, you can save and continue adding USPS Tracking Plus selections to your cart until you are ready to complete your purchase.

Exhibit D, Page 24

FILED
JÆÐÆ€Ĝ Áŀ€ï ÁÚT

Erin Cartwright Weinstein
**Clerk of the Court**
**Lake County, Illinois**

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

IN RE THE FORMER MARRIAGE OF: )
                                        )
HEATHER L. BENDL f/k/a SERLICK, )
    Petitioner, )
                                        )      No. 13 D 981
                                        )        20 F 422
    and )
                                          )
JUSTIN D. SERLICK, )
    Respondent. )

### ORDER

**THIS CAUSE** coming on before the Court for presentation of Respondent's Two Count Motion to Strike and Dismiss Petitioner's Verified Petition for Relief from Void Judgment and for Declaratory Relief Based on Lack of Jurisdiction and Due Process Violations Under 735 ILCS 5/2-1401(F) Under 735 ILCS 5/2-615(a) and 735 ILCS 5/2-619 and Other Relief; counsel for Respondent, and the Petitioner representing herself *pro se* appearing via Zoom; the Court being fully advised in the premises;

**IT IS HEREBY ORDERED**:

1. As Petitioner has already filed a Response on August 28, 2025; Respondent's Two Count Motion to Strike and Dismiss Petitioner's Verified Petition for Relief from Void Judgment and for Declaratory Relief Based on Lack of Jurisdiction and Due Process Violations Under 735 ILCS 5/2-1401(F) Under 735 ILCS 5/2-615(a) and 735 ILCS 5/2-619 and Other Relief is set for hearing on October 8, 2025 at 9:00 a.m. in Courtroom C-105 in-person. Parties are required to appear and may attend via Zoom.

ENTER:

_____
               Judge

KATZ, GOLDSTEIN & WARREN
2345 Waukegan Road, Suite 150
Bannockburn, Illinois 60015
Telephone No. (847) 317-9500
pleadings@kgwlaw.com

*Pro Se* Petitioner: HBendl@comcast.net

Exhibit E, Page 1

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

FILED

JUDGE áHGÁUT

Erin Cartwright Weinstein
**Clerk of the Court**
**Lake County, Illinois**

BENDL
_____
                    Plaintiff(s)

vs.

SERLICK
_____
                    Defendant(s)

)
)
)
)
)
)
)
)
)
)

Gen No: 20F 00000422 /13D981

## ORDER

This matter coming to be heard on the Court's own motion, the matter being up earlier in the day,
IT IS HEREBY ORDERED:

1.  Ms. Heather Bendl and Will Trabaris are ordered to appear in-person in C-105 for the October 8, 2025 Motion to Dismiss hearing date.

2.  Heather Bendl's Zoom privileges are being further reviewed, but have been revoked for purposes of any and all hearings.    Ms. Bendl's failure to appear in person will prevent her from being able to make any arguments at the scheduled hearing date.

ENTER:

Dated this K September 2nd, 2025

_____
                    JUDGE

171-94  (Rev. 12/17)

Exhibit E, Page 2

**FILED**
**10/1/2025 1:53 PM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**

**LAKE COUNTY, ILLINOIS**

| | | |
|---|---|---|
| IN RE THE FORMER MARRIAGE OF: | ) | |
| | ) | |
| HEATHER L. BENDL f/k/a SERLICK, | ) | |
|     Petitioner, | ) | |
| | ) | No. 13 D 981 |
|     and | ) | 20 F 422 |
| | ) | |
| JUSTIN D. SERLICK, | ) | |
|     Respondent. | ) | |

<u>**VERIFIED EMERGENCY MOTION TO (1) CLARIFY AND/OR VACATE**</u>

<u>**CONFLICTING SEPTEMBER 2, 2025 ORDERS AS TO APPEARANCE**</u>

<u>**MODE; (2) REINSTATE/CONFIRM REMOTE APPEARANCE UNDER**</u>

<u>**ILLINOIS SUPREME COURT RULE 45; AND (3) GRANT ADA**</u>

<u>**ACCOMMODATIONS (EFFECTIVE COMMUNICATION) INCLUDING**</u>

<u>**ZOOM APPEARANCE AND REAL-TIME CAPTIONING FOR THE**</u>

<u>**OCTOBER 8, 2025 HEARING**</u>

**NOW COMES** Petitioner, **Heather Louise Bendl**, pro se, and moves

this Court for emergency relief regarding the October 8, 2025 hearing

currently set in C-105 with **Judge Jacquelyn D. Melius**, stating:

1

Exhibit E, Page 3

## I. Procedural Background and Conflicting Orders

1. On September 2, 2025, after the 9am scheduled hearing, this Court entered a written order on Respondent's motion setting the matter for October 8, 2025 at 9:00 a.m. and expressly providing: "**Parties are required to appear and may attend via Zoom.**" This order is dated September 2, 2025 at 2:07pm CST (Exhibit A)

2. Then, on September 23, 2025, the Clerk's office (Iris Salcedo, email: ISalcedo@lakecountyil.gov) transmitted a blank email (Exhibit B) attaching a different September 2 order, showing the read receipt of Petitioner's prior message that day; there was no clarifying instruction contradicting the "may attend via Zoom" language.

3. This "order" that was attached to a BLANK email dated September 23, 2025 at 9:48am from Iris Salcedo (ISalcedo@lakecountyil.gov) states that "Ms. Bendl's failure to appear **in person** will prevent her from being able to make any arguments at the scheduled hearing date." (Exhibit C)

4. These two same-day orders conflict. The later-emailed directive appears to condition argument on **in-person** attendance, while the earlier signed order permits **Zoom** attendance for **both** parties. The

2

Exhibit E, Page 4

inconsistency creates due-process risk and practical prejudice on the eve of hearing.

5. Considering what was discussed via Zoom in the September 2nd, 2025 hearing where Judge Melius granted Justin Serlick Zoom access after his Attorney Will Trabaris argued it would not be feasible for Justin Serlick to attend in person, she granted him Zoom and then Heather Bendl argued the same so Judge Melius ALSO granted her Zoom access for October 8, 2025 at 9am CST. Then, out of the blue September 23rd, 2025 Petitioner Heather Bendl receives this completely BLANK email with this random order attached with a date of September 2nd, 2025 at 3:12pm. It very much appears that **Heather Bendl's docket is continuing to be MANIPULATED.** Let it be known that Heather Bendl has **NOT** been **PROPERLY SERVED** this order as it just came from some random Clerk in Illinois Circuit 19. Heather's previous instructions on file is that we will **ONLY receive service via eService in the Odyssey Portal** and she will not accept direct emails from anyone, including Circuit 19 employees.

3

## II. Petitioner's Disabilities and Need for Reasonable Modifications/EFFECTIVE COMMUNICATION

1. Petitioner has diagnosed **C-PTSD** caused by Justin Serlick, Justin Serlick's attorneys, and this Illinois Circuit 19 court that illegally kidnapped the four children from their daycare October 8th, 2025, trafficked them in Illinois' DCFS foster system for a year through For-Profit Private Agency Camelot Care based in Rockford, Illinois, then **SOLD** the children via Illinois Circuit 19 GAL Kathleen McGee and Judge Christopher Morozin to the **NON-custodial parent Justin Serlick** and then trafficked the four children across multiple state lines August 2021 where Justin Serlick has been holding the four children hostage from mother Heather Bendl since. Petitioner Heather Bendl is **deaf in her right ear/hearing-impaired (Exhibit D)**, which substantially limits hearing and stress-tolerance in crowded/echoing courtrooms. She has consistently relied on **remote appearance** and **CART/real-time captioning** to meaningfully participate in proceedings. See Fed. ADA Title II, 42 U.S.C. §§ 12131–12134; 28 C.F.R. §§ 35.130(b)(7)(i) (reasonable modifications), 35.160(a)–(b) (effective communication/auxiliary aids).

4

Petitioner also invokes § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (programs receiving federal financial assistance).

2. Under Title II and its regulations, courts (as state entities) must make reasonable modifications to avoid discrimination and must ensure effective communication with individuals with hearing disabilities, including by providing appropriate auxiliary aids and services (e.g., **Zoom with live CART**). See 28 C.F.R. § 35.160.

3. Illinois courts likewise provide for accommodations through the judiciary's ADA policy and local ADA coordinators; and **Illinois Supreme Court Rule 45** authorizes and structures **remote appearances** at the court's discretion. Given Petitioner's hearing impairment and trauma-related limitations, **Zoom appearance with CART** is a reasonable, narrowly tailored accommodation that imposes no undue burden and protects due process.

## III. Geographic Burden and Parity

1. The parties and the involved children have been in **Volusia County, Florida** since 2021. (Florida filings and dockets reflect the family's Florida presence and Florida proceedings.)

5

2. Requiring Petitioner to **fly to Waukegan, Illinois Circuit 19 Court House on October 8, 2025** while permitting Respondent to appear remotely (or not requiring his travel) would create an uneven playing field and exacerbate Petitioner's disability-related barriers, contrary to ADA parity and due-process fairness. The September 2 order permitting **both** parties to attend by **Zoom** cures this inequity.

3. Petitioner Heather Bendl is a Public School Science Teacher in the State of Florida and being required to fly to Waukegan, Illinois is a burden to her public teaching position and her 184 students she teaches.

4. If travelling to Waukegan, Illinois Court House is required then Petitioner Heather Louise Bendl is **demanding** that Respondent Justin Derrick Serlick **REIMBURSE** her and Peter Arnold for the flights, hotel, and other travel expenses as **Justin Serlick is the SOLE REASON** for Heather Bendl to have to file this Petition for Relief and Vacature of the April 27, 2022 Illinois "Order" because Justin Serlick has been / still is currently actively **HIDING AND ALIENATING THE MINOR CHILDREN** behind this unlawful, ex parte Void Ab Initio 3-page Illinois Order in Daytona, Florida from Petitioner / Mother Heather Louise Bendl since Judge Marnie Slavin signed it

6

Exhibit E, Page 8

illegally April 27th, 2022 where Marnie Slavin unlawfully RESERVED biological mother's rights to her own children violating Illinois and Federal Constitutional Laws. There is also an unlawful connection between Michael G. Nerheim in Illinois Circuit 19 with ex parte communications with Heather Bendl's Florida Attorney Mary Jane Nettles on January 26th, 2024. Illinois Circuit 19 Judges have been Heather Bendl and her four minor children's abusers since October 8th, 2020. No one in this court has been protecting these minor children and in fact human trafficked the four of them, then SOLD them to the known abusive non-custodial parent. In **Troxel v. Granville, 530 U.S. 57 (2000)** the US Supreme Court held that there is a fundamental right under the Fourteenth Amendment for a parent to oversee the care, custody, and control of a child. In **Morgan v Morgan 2023 NY Slip Op 00424** a New York Appellant Court held that Child support payments **may be suspended when the noncustodial parent establishes that his or her right of reasonable access to the child has been unjustifiably frustrated by the custodial parent** — but only when the custodial parent's interference rises to the level of **deliberate frustration or active interference** with visitation.

7

Exhibit E, Page 9

## IV. Legal Standards

1. **ADA Title II / RA § 504:** State courts must afford reasonable modifications where necessary to avoid discrimination by reason of disability, 28 C.F.R. § 35.130(b)(7)(i), and must ensure **effective communication** via appropriate auxiliary aids/services, 28 C.F.R. § 35.160.

2. **Illinois Supreme Court Rule 45 (Remote Appearances):** Authorizes remote participation and allows the Court to set terms. Remote appearance here is both previously authorized and necessary as a disability accommodation.

3. **Due Process:** Conflicting appearance directives, especially where one order conditions argument on physical presence, risk impairing a pro se litigant's ability to be heard on the merits. Clarification is warranted to ensure notice, a meaningful opportunity to be heard, and orderly administration.

## V. Constitutional and Statutory Authority (United States and Illinois)

1. **United States Constitution – Fourteenth Amendment (Due Process and Equal Protection).**

   The Fourteenth Amendment, Section 1, provides:

8

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Conditioning Petitioner's ability to argue on in-person attendance only, despite her hearing disability and despite a conflicting order authorizing Zoom, denies a meaningful opportunity to be heard (due process) and imposes unequal burdens compared to the Respondent (equal protection).

2. **United States Constitution – First Amendment (Right to Petition).**

   The First Amendment provides:

   "Congress shall make no law abridging the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

   Access to the courts is a protected form of petitioning. Forcing Petitioner to travel interstate while excusing the Respondent burdens her ability to meaningfully petition the judiciary.

3. **United States Constitution – Supremacy Clause (ADA as Supreme Law).**

9

Exhibit E, Page 11

Article VI, Clause 2 provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby"

Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12134, and implementing regulations (28 C.F.R. § 35.160), mandate that courts provide reasonable modifications and ensure effective communication for persons with disabilities. Illinois courts are constitutionally bound to follow these federal requirements.

4. **Illinois Constitution – Due Process and Equal Protection.**

Article I, Section 2 provides:

"No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."

This provision mirrors the Fourteenth Amendment and guarantees Petitioner equal and fair access to Illinois judicial proceedings.

5. **Illinois Constitution – Right to Assemble and Seek Redress.**

Article I, Section 5 provides:

"The people have the right to assemble in a peaceable manner, to consult for the common good, and to make known their opinions to their representatives and to apply for redress of grievances."

10

Exhibit E, Page 12

This protects Petitioner's right to participate in hearings without unnecessary barriers that effectively silence her voice.

6. **Illinois Constitution – Disability Protections.**

Article I, Section 19 provides:

"All persons with a physical or mental handicap shall be free from discrimination in the sale or rental of property and shall be free from discrimination in the hiring and promotion practices of any employer." Although framed in employment and housing, it expresses Illinois' constitutional policy against disability-based discrimination. When harmonized with the ADA, it obligates Illinois courts to provide reasonable accommodations ensuring equal participation.

7. **Illinois Supreme Court Rule 45 – Remote Appearances.**

Rule 45(b) states:

"A remote appearance shall be equivalent to an in-person appearance for all purposes."

Rule 45 expressly authorizes courts to allow parties to appear by Zoom or telephone, and provides that such appearances carry the same legal effect as physical presence. The September 2, 2025 order already invoked this Rule by permitting both parties to attend via Zoom. Any subsequent contradictory directive requiring Petitioner

11

alone to appear in person conflicts with Rule 45, the ADA, and both federal and state constitutional guarantees.

## VI. Reservation of Appellate Rights and Federal Remedies

1. **No Waiver of Objections; Record Preserved.** Petitioner expressly preserves and does **not** waive any objections raised or reasonably inferable from this motion and the hearing record, including objections grounded in the U.S. Constitution, the Illinois Constitution, the ADA (Title II), and § 504 of the Rehabilitation Act. All arguments herein are intended to **preserve error** for review.

2. **Right to Direct Appeal (Final Orders).** To the extent the Court enters a **final** order resolving the relief sought herein, Petitioner preserves the right to appeal under **Illinois Supreme Court Rule 303**, and to seek a **stay pending appeal** pursuant to **Rule 305**.

3. **Interlocutory Review (Non-Final Orders).** If the order is non-final, Petitioner preserves the right to pursue:

   - **Rule 307(a)** interlocutory appeal as of right if the order **grants, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction** (including orders effectively restraining or conditioning Petitioner's participation/advocacy);

12

- **Rule 306(a)** permissive interlocutory appeal by petition for leave, where applicable; and/or

- **Rule 308** certification of a **controlling question of law** (e.g., the legal standards governing ADA-compliant remote appearance and effective communication) that would materially advance the termination of the litigation.

4. **Request for Protective Findings for Appellate Review.** Petitioner requests that, if relief is denied in whole or part, the Court make **brief, written findings** identifying the basis for denial (including whether denial is discretionary or legal) so that the issues are cleanly framed for any Rule 303/306/307/308 proceedings, and to facilitate a Rule 305 stay analysis.

5. **Stay Pending Review.** Petitioner requests a **temporary administrative stay** of any in-person-only requirement and any sanction for appearing by Zoom, pending the earlier of (a) issuance of a written order on this motion with ADA findings, or (b) resolution of any timely interlocutory or direct appeal, per **Rule 305**.

6. **Reservation of Federal Claims (No Rooker-Feldman Relief Sought).** Petitioner **does not** ask this Court to adjudicate federal civil rights claims. Petitioner expressly **reserves** all independent rights

13

and remedies to pursue appropriate relief in federal court against proper parties for ongoing or threatened violations of federal law, including but not limited to:

- **Title II of the ADA**, 42 U.S.C. §§ 12131–12134 (reasonable modifications; effective communication), and **28 C.F.R. § 35.160**;

- **Rehabilitation Act § 504**, 29 U.S.C. § 794;

- **42 U.S.C. §§ 1983, 1985, and 1986** (to vindicate federal constitutional rights, including Due Process, Equal Protection, and access-to-courts); and

- **42 U.S.C. § 12203** (ADA **anti-retaliation**), should any adverse action be taken because Petitioner requested accommodations. Any such federal action, if necessary, would seek **prospective relief** to enforce federal rights (e.g., under **Ex parte Young**) rather than appellate review or modification of state-court judgments.

7. **Administrative and Oversight Remedies.** Petitioner also reserves all rights to pursue non-judicial remedies, including requests for accommodation through the Circuit's ADA Coordinator, complaints

14

Exhibit E, Page 16

with the **U.S. Department of Justice Civil Rights Division** (Title II), and any appropriate state judicial-branch ADA grievance processes.

8. **Supremacy and Harmonization.** Petitioner asserts these reservations consistent with the **Supremacy Clause** and Illinois Supreme Court **Rule 45** (remote appearances), and requests that any order entered be construed, if reasonably possible, to **avoid conflict with federal disability law** and to preserve the status quo necessary for meaningful appellate and federal review.

## VII. Requested Relief

**WHEREFORE**, Petitioner respectfully requests that the Court enter an order providing that:

A. The September 2, 2025 directive conditioning argument on **in-person** attendance is **clarified and, to the extent inconsistent, vacated**, in light of the September 2, 2025 order expressly permitting **Zoom** appearances for both parties. Or, **BOTH parties must be physically in-person**, not just one. If Petitioner Heather Bendl is required to travel for this October 8, 2025 hearing Respondent Justin Serlick MUST reimburse Heather Bendl and Peter Arnold for any and all travel expenses since Justin Serlick is the SOLE CAUSE for this Petition for Relief and Vacatur to exist.

15

B. For the **October 8, 2025** hearing (and future hearings unless otherwise ordered), **both parties may appear via Zoom** pursuant to Illinois Supreme Court Rule 45; no party will be barred from argument for choosing Zoom.

C. **ADA Accommodations Granted:** (i) Zoom appearance for Petitioner; (ii) **live CART/real-time captioning** integrated into the Zoom proceeding; (iii) permission for Petitioner to use personal assistive listening devices; and (iv) designation of the Court's ADA Coordinator contact in the order to coordinate logistics. (Authorities: ADA Title II, 42 U.S.C. §§ 12131–34; 28 C.F.R. §§ 35.130(b)(7)(i), 35.160; 29 U.S.C. § 794.)

D. The Clerk is directed to **circulate the Zoom link** and CART access instructions to both parties and to confirm in the minute order that Zoom attendance satisfies the appearance requirement. The Clerk is further directed to docket this clarification and serve it on the parties forthwith.

E. Any further appearance notices or emails shall **not** contradict this accommodation order; in the event of conflict, this ADA-based order controls.

Respectfully submitted on the 28th day of September 2025.

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Respondent Justin Derrick Serlick via US Mail, eService, and direct email and his attorney Will Trabaris via eService and direct email on this 28th day of September, 2025.

Name: Justin Derrick Serlick

Address: 333 S. Lanvale Avenue

City, State, Zip: Daytona Beach, Florida, 32114

**and**

KATZ, GOLDSTEIN & WARREN

Attorney Will Trabaris

wtrabaris@kgwlaw.com

ARDC No. 6336869

Attorneys for JUSTIN SERLICK

Bannockburn Lake Office Plaza

2345 Waukegan Road, Suite #150

Bannockburn, Illinois 60015

Telephone No. (847) 317-9500

E-mail: pleadings@kgwlaw.com

17

Dated: 9-28-2025

Signature: *Heather S. Bendl*

Printed Name: Heather Louise Bendl,
Pro Se

Address: 1709 Queen Palm Drive

City, State, ZIP: Edgewater, Florida,
32132

Telephone No.:386-846-0599

Email: HBendl@comcast.net

18

## VERIFICATION:

I, HEATHER LOUISE BENDL, being first duly sworn, do hereby verify and

state:

1. The facts set forth therein are true and correct to the best of my

    knowledge and belief.

Executed this ___28th___ day of ___September___ 2025

_Heather S. Bendl_

**Heather Louise Bendl**

Petitioner

State of Florida / County of **VOLUSIA**

Swore to (or affirmed) and subscribed before me by means of [✓] physical

presence or [ ] online notarization this ___28___ day of ___September___, 2025 by

**Heather Louise Bendl**, who is personally known to me of who has

produced ___FL DL___ as identification.

_Pet J. Arnold_

**Notary Public**

My Commission Expires: _____

PETER J. ARNOLD
MY COMMISSION # HH349560
EXPIRES: January 22, 2027

19

Exhibit E, Page 21

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

IN RE THE FORMER MARRIAGE OF: )
)
HEATHER L. BENDL f/k/a SERLICK, )
    Petitioner, )
) No. 13 D 981
    and )    20 F 422
)
JUSTIN D. SERLICK, )
    Respondent. )

---

## EXHIBIT A

## TO

## **EMERGENCY MOTION**

September 2, 2025 Order time stamped 2:07pm CST granting allowance of BOTH PARTIES to appear via Zoom since they all live in Daytona, Florida Region

---

Exhibit E, Page 22

**FILED**

9/2/2025 2:07 PM
Erin Cartwright Weinstein
**Clerk of the Court**
**Lake County, Illinois**

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

|  |  |  |
|---|---|---|
| IN RE THE FORMER MARRIAGE OF: | ) | |
| | ) | |
| HEATHER L. BENDL f/k/a SERLICK, | ) | |
| Petitioner, | ) | |
| | ) | No. 13 D 981 |
| | ) | 20 F 422 |
| and | ) | |
| | ) | |
| JUSTIN D. SERLICK, | ) | |
| Respondent. | ) | |

## ORDER

**THIS CAUSE** coming on before the Court for presentation of Respondent's Two Count Motion to Strike and Dismiss Petitioner's Verified Petition for Relief from Void Judgment and for Declaratory Relief Based on Lack of Jurisdiction and Due Process Violations Under 735 ILCS 5/2-1401(F) Under 735 ILCS 5/2-615(a) and 735 ILCS 5/2-619 and Other Relief; counsel for Respondent, and the Petitioner representing herself *pro se* appearing via Zoom; the Court being fully advised in the premises;

**IT IS HEREBY ORDERED**:

1. As Petitioner has already filed a Response on August 28, 2025; Respondent's Two Count Motion to Strike and Dismiss Petitioner's Verified Petition for Relief from Void Judgment and for Declaratory Relief Based on Lack of Jurisdiction and Due Process Violations Under 735 ILCS 5/2-1401(F) Under 735 ILCS 5/2-615(a) and 735 ILCS 5/2-619 and Other Relief is set for hearing on October 8, 2025 at 9:00 a.m. in Courtroom C-105 in-person. Parties are required to appear and may attend via Zoom.

ENTER:

_____
Judge

KATZ, GOLDSTEIN & WARREN
2345 Waukegan Road, Suite 150
Bannockburn, Illinois 60015
Telephone No. (847) 317-9500
pleadings@kgwlaw.com

*Pro Se* Petitioner: HBendl@comcast.net

Exhibit A, Page 1
Exhibit E, Page 23

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

IN RE THE FORMER MARRIAGE OF: )
)
HEATHER L. BENDL f/k/a SERLICK, )
    Petitioner, )
) No. 13 D 981
    and )    20 F 422
)
JUSTIN D. SERLICK, )
    Respondent. )

---

**EXHIBIT B**

**TO**

**EMERGENCY MOTION**

Blank email from Iris Salcedo (ISalcedo@lakecountyil.gov) dated September 23, 2025 at 9:48am with a conflicting September 2, 2025 Order REQUIRING only Heather Bendl to now be IN-PERSON for the October 8th, 2025 hearing. This appears to be evidence of MORE docket manipulation.

---

**Iris Salcedo <isalcedo@lakecountyil.gov>**       9/23/2025 9:48 AM

# 20F422/13D981

To HBendl@comcast.net <hbendl@comcast.net>

---

This mail has no content

---

- Order09-02-2025.pdf (90 KB)

Exhibit B Page, 1

Exhibit E, Page 25

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

IN RE THE FORMER MARRIAGE OF: )
                                           )

HEATHER L. BENDL f/k/a SERLICK, )
     Petitioner, )
                                          ) No. 13 D 981
   and )      20 F 422
                                           )

JUSTIN D. SERLICK, )
     Respondent. )

---

## EXHIBIT C

## TO

## **EMERGENCY MOTION**

Order emailed from Iris Salcedo (ISalcedo@lakecountyil.gov) dated September 2, 2025 at 3:12pm CST REQUIRING only Heather Bendl to now be IN-PERSON for the October 8th, 2025 hearing. This appears to be evidence of MORE docket manipulation.

---

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS**

**FILED**

9/2/2025 3:12 PM

**Erin Cartwright Weinstein
Clerk of the Court
Lake County, Illinois**

BENDL _____

                                Plaintiff(s)

           vs.

SERLICK _____

                          Defendant(s)

Gen No: 20F 00000422/13D981

**ORDER**

This matter coming to be heard on the Court's own motion, the matter being up earlier in the day, IT IS HEREBY ORDERED:

1. Ms. Heather Bendl and Will Trabaris are ordered to appear in-person in C-105 for the October 8, 2025 Motion to Dismiss hearing date.

2. Heather Bendl's Zoom privileges are being further reviewed, but have been revoked for purposes of any and all hearings. Ms. Bendl's failure to appear in person will prevent her from being able to make any arguments at the scheduled hearing date.

ENTER:

_____
JUDGE

Dated this: September 2nd, 2025

171-94 (Rev. 12/17)

Exhibit C, Page 1

Exhibit E, Page 27

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

IN RE THE FORMER MARRIAGE OF: )
                                       )

HEATHER L. BENDL f/k/a SERLICK, )
    Petitioner, )
                                       ) No. 13 D 981
    and )      20 F 422
                                       )

JUSTIN D. SERLICK, )
    Respondent. )

---

## EXHIBIT D

## TO

## EMERGENCY MOTION

Petitioner Heather Bendl's Audiology Report showing she is 100% DEAF in RIGHT EAR and is hearing impaired / disabled. Heather Bendl is protected under Federal and Illinois ADA Laws.

---

Exhibit E, Page 28



# Northwestern Lake Forest Hospital

## Audiologic Report

Northwestern Lake Forest Hospital
Department of Speech & Audiology
660 N. Westmoreland Road
Lake Forest, Illinois 60045
Phone: 847-535-6114
Fax: 847-535-7809

| | | | |
|---|---|---|---|
| **Patient Name:** | Heather Bendl [LF593683] | **Audiologist:** | Abigail Rogers, Au.D. |
| **Date of Birth:** | 01/15/1981 | **Title:** | Clinical Audiologist |
| **Visit Date:** | 05/23/2014 | **Referral Source:** | Alex Kostiv, M.D. |



| CONFIGURATION | |
|---|---|
| Audiometer | GSI-61-Lake Forest |
| Calibration | 03/24/2015 |
| Reliability | Excellent |
| Test Method | Conventional |
| Transducer | Inserts |

| TYMPANOMETRY [226 Hz] | Right | Left |
|---|---|---|
| Type | A | A |
| Pressure (daPa) | 25 | 25 |
| Compliance (ml) | 0.5 | 0.7 |
| ECV (ml) | 1.1 | 0.9 |
| Gradient (daPa) | | |
| Width (daPa) | | |

| PTA (3 Freqs) | |
|---|---|
| Right | Left |
| | 10 |

**Neg:** No significant reflex decay **Pos:** Significant reflex decay **Abs:** Absent **Pres:** Present **WNL:** Within Normal Limits **Red:** Reduced
**NR:** No Response **CNS:** Could Not Seal **CNT/DNT:** Could/Did Not Test **WR:** Word Recognition **SF:** Soundfield **EP:** Earphones

| WORD RECOGNITION (Presentation: MLV / Word List: NU-6) | | | | | | |
|---|---|---|---|---|---|---|
| | dBHL | % | Mask | dBHL | % | Mask |
| Right | CNT | | | | | |
| Left | 50 | 100 | | | | |
| Binaural | | | | | | |

| SPEECH AUDIOMETRY (Word List: Spondees) | | | | | |
|---|---|---|---|---|---|
| | SAT | SRT | Mask | MCL | UCL |
| Right | NR | NR | | | |
| Left | | 5 | | | |
| Binaural | | | | | |

**HISTORY:** Heather Bendl, a 33-year-old female, was referred by Dr. Alex Kostiv for an audiological evaluation due to a longstanding history of unilateral hearing loss. Ms. Bendl reported that she was identified with a right profound hearing loss in third grade; however, it was the opinion of her physicians that she was born with the loss. She reported difficulty with localization and understanding speech in the presence of background noise. She also reported some occasional dizziness and left-sided tinnitus.

**RESULTS:** Otoscopy revealed clear ear canals bilaterally. Pure tone air and bone conduction results for the left ear revealed normal hearing sensitivity at 250-8000 Hz. Results for the right ear revealed no response at the limits of the equipment for speech and pure tones at 250-8000 Hz. The speech reception threshold for the left ear was in agreement with pure tone results. The left word recognition score was excellent at a normal conversational level. Tympanograms recorded normal compliance, middle ear pressure, and ear canal volumes bilaterally.

**IMPRESSIONS:** Left normal hearing sensitivity. Right profound sensorineural hearing loss. Normal middle ear function bilaterally.

**RECOMMENDATIONS:**

1. Follow up with Dr. Kostiv regarding today's results.

2. Consider a trial with a CROS (Contralateral Routing of Signal) system. This system consists of a transmitter worn on the right ear which will route the signal to a receiver worn on the left ear. Another option is a Baha, a bone-anchored device which routes the signal through the bone of the skull. Baha fittings are not performed at this facility.

3. Annual audiologic evaluations to monitor hearing sensitivity.

Audiologist: _____

Abigail Rogers, Au.D.
License #: 147.001362

CC: Alex Kostiv, M.D., patient

Date: 05/23/2014

Exhibit D, Page 1

**FILED**
**10/1/2025 1:53 PM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
Lake County, Illinois

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**

**LAKE COUNTY, ILLINOIS**

IN RE THE FORMER MARRIAGE OF:)

)

HEATHER L. BENDL f/k/a SERLICK, )

    Petitioner, )

                  )     No. 13 D 981

    and           )         20 F 422

                  )

JUSTIN D. SERLICK, )

    Respondent. )

## EMERGENCY AFFIDAVIT IN SUPPORT OF VERIFIED EMERGENCY MOTION TO CLARIFY/VACATE CONFLICTING ORDERS, REINSTATE ZOOM ACCESS UNDER ILLINOIS SUPREME COURT RULE 45, AND REQUEST ADA ACCOMMODATIONS

**NOW COMES** the Petitioner, **HEATHER LOUISE BENDL**, under penalty of perjury pursuant to 735 ILCS 5/1-109, and provides the following affidavit in support of the concurrently filed Verified Emergency Motion:

1. My name is Heather Louise Bendl. I am the Petitioner in the above-captioned matter and I reside in Volusia County, Florida.

2. I respectfully submit this affidavit in support of the emergency nature of my motion filed on September 30, 2025, and the immediate need for judicial intervention and clarification prior to the October 8, 2025 hearing.

3. On September 2, 2025, Judge Jacquelyn D. Melius entered an order explicitly stating that the parties "may attend via Zoom" for the

1

Exhibit E, Page 30

hearing set on October 8, 2025 at 9:00 a.m.

4. On September 23, 2025, I received an unsolicited, blank email from Clerk Iris Salcedo (ISalcedo@lakecountyil.gov) with a conflicting order dated the same day (September 2, 2025, but time-stamped 3:12 p.m.) which purportedly revokes my Zoom access and threatens that failure to appear in-person would forfeit my right to present argument.

5. I believe the existence of two conflicting orders—issued on the same date—creates confusion, undermines due process, and risks prejudicing my participation in the October 8 hearing.

6. I suffer from a documented disability: I am profoundly deaf in my right ear and experience chronic Complex PTSD from the abuse this Illinois Circuit 19 Court has inflicted upon my children and I since October 8th, 2020. These impairments affect my ability to safely and effectively attend court proceedings in person, particularly in echo-prone, crowded courtrooms.

7. My disabilities are protected under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and Article I, Section 19 of the Illinois Constitution. I require and request the following accommodations for the October 8 hearing:

   - Appearance by Zoom;

   - Real-time CART captioning;

   - Use of personal assistive hearing devices.

8. The denial or revocation of remote access and failure to confirm CART would amount to a denial of effective communication and equal access under federal and state disability laws.

2

Exhibit E, Page 31

9. Further, both parties currently reside in Volusia County, Florida. I am a full-time public school teacher in Florida, and travelling to Waukegan, Illinois for this hearing would cause severe logistical, financial, and professional hardship—particularly if the Respondent is not held to the same standard.

10. The urgency of this matter stems from the rapidly approaching hearing date of October 8, 2025, and the conflicting appearance instructions that create legal ambiguity. Without immediate clarification, I risk being penalized for non-compliance with an unclear order.

11. Therefore, I respectfully request the Court to:
a. Treat my Motion as an emergency under Local Rule 2-1.02 and/or the inherent power of the Court;
b. Immediately clarify or vacate any contradictory directive requiring only me to appear in person;
c. Reinstate and confirm Zoom access pursuant to Illinois Supreme Court Rule 45;
d. Enter an ADA-compliant order granting the accommodations outlined above.

12. I declare that the facts set forth herein are true and correct to the best of my knowledge, and that this affidavit is submitted in good faith for the purpose of ensuring access to justice and protection of my statutory and constitutional rights.

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Respondent Justin Derrick Serlick via US Mail, eService, and direct email and his attorney Will Trabaris via eService and direct email on this 30th day of September, 2025.

Name: Justin Derrick Serlick

Address: 333 S. Lanvale Avenue

City, State, Zip: Daytona Beach, Florida, 32114

**and**

KATZ, GOLDSTEIN & WARREN

Attorney Will Trabaris

wtrabaris@kgwlaw.com

ARDC No. 6336869

Attorneys for JUSTIN SERLICK

Bannockburn Lake Office Plaza

2345 Waukegan Road, Suite #150

Bannockburn, Illinois 60015

Telephone No. (847) 317-9500

E-mail: pleadings@kgwlaw.com

4

Exhibit E, Page 33

Dated: 9-30-2025

Signature: *Heather S. Bendl*

Printed Name: Heather Louise Bendl, Pro Se

Address: 1709 Queen Palm Drive

City, State, ZIP: Edgewater, Florida, 32132

Telephone No.:386-846-0599

Email: HBendl@comcast.net

5

**VERIFICATION UNDER 735 ILCS 5/1-109:**

I, Heather Louise Bendl, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certify that the statements set forth in this instrument are true and correct.

I, HEATHER LOUISE BENDL, being first duly sworn, do hereby verify and

state:

1. The facts set forth therein are true and correct to the best of my

   knowledge and belief.

Executed this ___30th___ day of __September__ 2025

_Heather S. Bendl_

**Heather Louise Bendl**

Petitioner

State of Florida / County of **VOLUSIA**

Swore to (or affirmed) and subscribed before me by means of [X] physical presence or [ ] online notarization this __30__ day of __September__, 2025 by **Heather Louise Bendl**, who is personally known to me of who has

produced __FL DL__ as identification.

_____

**Notary Public**

My Commission Expires: 

> PETER J. ARNOLD
> MY COMMISSION # HH349560
> EXPIRES: January 22, 2027

6

Exhibit E, Page 35

**FILED**

̀Ð0ÐGĺÁFKÏÁÚT

Erin Cartwright Weinstein
**Clerk of the Court**
**Lake County, Illinois**

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

IN RE THE FORMER MARRIAGE OF:  )
                                )
HEATHER L. BENDL f/k/a SERLICK,  )
    Petitioner,                  )
                                )    No. 13 D 981
                                )       20 F 422
        and                     )
                                )
JUSTIN D. SERLICK,              )
    Respondent.                 )

## ORDER

**THIS CAUSE** coming on before the Court for hearing on Respondent's Two Count Motion to Strike and Dismiss Petitioner's Verified Petition for Relief from Void Judgment and for Declaratory Relief Based on Lack of Jurisdiction and Due Process Violations Under 735 ILCS 5/2-1401(F) Under 735 ILCS 5/2-615(a) and 735 ILCS 5/2-619 and Other Relief; counsel for Respondent appearing in-person, and the Petitioner representing herself *pro se* failing to appear in-person and refusing to do so, despite another date being offered by the Court in order for her to appear in-person; the Court being fully advised in the premises;

**THIS COURT FINDS:** This matter was called at 10:19 a.m. because Ms. Bendl did not appear in the zoom waiting room until 10:10 a.m.

A.  On October 1, 2025, Petitioner filed a Verified Emergency Motion to (1) Clarify And/or Vacate Conflicting September 2, 2025 Orders as to Appearance Mode; (2) Reinstate/confirm Remote Appearance Under Illinois Supreme Court Rule 45; and (3) Grant ADA Accommodations (Effective Communication) Including Zoom Appearance and Real-Time Captioning for the October 8, 2025 Hearing ("Emergency Motion"). This Court finds that there were the following defects with said Emergency Motion:

    i.  Petitioner failed to notice said Emergency Motion for hearing in violation of C-105 Standing Order;

    ii.  Petitioner failed to appear in-person for said Emergency Motion in violation of C-105 Standing Order;

    iii.  Petitioner failed to provide courtesy copies in advance of any hearing to the Court as required by Local Rule;

iv.   Petitioner failed to provide an affidavit as required by Local Rule;

B.   Upon seeing that the Petitioner was only present via Zoom, this Court asked repeatedly if like a new hearing date so that she could appear in Court in person  as required JDM Petitioner would ~~appear in-person today, or if she would ever appear in-person so that~~ the Court advised that it would enter and continue today's hearing to a date more convenient. Petitioner responded that she sees this Court as an abuser and that Chicago is a warzone, and that she will not appear. JDM   After numerous and continued interruptions, the Court placed Ms. Bendl in the Zoom waiting room. She was not allowed back into the courtroom after 10:52 a.m.

C.   Due to the continued abuse of the Zoom Meeting Software by Petitioner, the September 2, 2025 Order at 3:12 pm Order was entered by this Court ~~required~~ requiring that Petitioner be present in-person and that her Zoom privileges are being reviewed and have been revoked for purposes of and all hearings and that her failure to appear in person will prevent her from being able to make any arguments at the scheduled hearing date.

D.   That on September 3, 2024, this Honorable Court and Judge Warren in Volusia County, Florida conducted a UCCJEA conference to determine jurisdiction of this matter, providing, in pertinent part as follows:

"4. The State of Illinois relinquishes jurisdiction to hear the case(s), as it is not the home state."

E.   No parties, nobody acting as a parent, nor the Minor Children in this matter currently reside in Illinois, and continue to reside in Florida and have done so for a number of years, since before the September 3, 2024 UCCJEA conference.

**IT IS HEREBY ORDERED**:

1.   Petitioner's Verified Emergency Motion to (1) Clarify And/or Vacate Conflicting September 2, 2025 Orders as to Appearance Mode; (2) Reinstate/confirm Remote Appearance Under Illinois Supreme Court Rule 45; and (3) Grant ADA Accommodations (Effective Communication) Including Zoom Appearance and Real-Time Captioning for the October 8, 2025 Hearing is   JDM hereby stricken, *instanter*.  due to lack of notice and failure to comply with the C-105 Standing Order.

2.   Respondent's Two Count Motion to Strike and Dismiss Petitioner's Verified Petition for Relief from Void Judgment and for Declaratory Relief Based on Lack of Jurisdiction and Due Process Violations Under 735 ILCS 5/2-1401(F) Under 735 ILCS 5/2-615(a) and 735 ILCS 5/2-619 and

Other Relief is hereby granted under both Counts. Therefore, Petitioner's Verified Petition for Relief from Void Judgment and for Declaratory Relief Based on Lack of Jurisdiction and Due Process Violations Under 735 ILCS 5/2-1401(F) Under 735 ILCS 5/2-615(a) and 735 ILCS 5/2-619 and Other Relief is hereby dismissed with prejudice, *instanter*.

3. This Court expressly reserves the issue of sanctions related to the filing of Petitioner's pleadings in this matter.

4. This matter is off call.

DATED: October 8, 2025          ENTER:

_____
               Judge

KATZ, GOLDSTEIN & WARREN
2345 Waukegan Road, Suite 150
Bannockburn, Illinois 60015
Telephone No. (847) 317-9500
pleadings@kgwlaw.com

*Pro Se* Petitioner: HBendl@comcast.net

Exhibit E, Page 38



# Northwestern Lake Forest Hospital

**Audiologic Report**

Northwestern Lake Forest Hospital
Department of Speech & Audiology
660 N. Westmoreland Road
Lake Forest, Illinois 60045
Phone: 847-535-6114
Fax: 847-535-7809

| | | | |
|---|---|---|---|
| **Patient Name:** | Heather Bendl [LF593683] | **Audiologist:** | Abigail Rogers, Au.D. |
| **Date of Birth:** | ████████ | **Title:** | Clinical Audiologist |
| **Visit Date:** | 05/23/2014 | **Referral Source:** | Alex Kostiv, M.D. |



| CONFIGURATION | |
|---|---|
| Audiometer | GSI-61-Lake Forest |
| Calibration | 03/24/2015 |
| Reliability | Excellent |
| Test Method | Conventional |
| Transducer | Inserts |

| TYMPANOMETRY [226 Hz] | | |
|---|---|---|
| | Right | Left |
| Type | A | A |
| Pressure (daPa) | 25 | 25 |
| Compliance (ml) | 0.5 | 0.7 |
| ECV (ml) | 1.1 | 0.9 |
| Gradient (daPa) | | |
| Width (daPa) | | |

| PTA (3 Freqs) | |
|---|---|
| Right | Left |
| | 10 |

**Neg:** No significant reflex decay  **Pos:** Significant reflex decay  **Abs:** Absent  **Pres:** Present  **WNL:** Within Normal Limits  **Red:** Reduced
**NR:** No Response  **CNS:** Could Not Seal  **CNT/DNT:** Could/Did Not Test  **WR:** Word Recognition  **SF:** Soundfield  **EP:** Earphones

| WORD RECOGNITION (Presentation: MLV / Word List: NU-6) | | | | | | |
|---|---|---|---|---|---|---|
| | dBHL | % | Mask | dBHL | % | Mask |
| Right | CNT | | | | | |
| Left | 50 | 100 | | | | |
| Binaural | | | | | | |

| SPEECH AUDIOMETRY (Word List: Spondees) | | | | | |
|---|---|---|---|---|---|
| | SAT | SRT | Mask | MCL | UCL |
| Right | NR | NR | | | |
| Left | | 5 | | | |
| Binaural | | | | | |

**HISTORY:** Heather Bendl, a 33-year-old female, was referred by Dr. Alex Kostiv for an audiological evaluation due to a longstanding history of unilateral hearing loss. Ms. Bendl reported that she was identified with a right profound hearing loss in third grade; however, it was the opinion of her physicians that she was born with the loss. She reported difficulty with localization and understanding speech in the presence of background noise. She also reported some occasional dizziness and left-sided tinnitus.

**RESULTS:** Otoscopy revealed clear ear canals bilaterally. Pure tone air and bone conduction results for the left ear revealed normal hearing sensitivity at 250-8000 Hz. Results for the right ear revealed no response at the limits of the equipment for speech and pure tones at 250-8000 Hz. The speech reception threshold for the left ear was in agreement with pure tone results. The left word recognition score was excellent at a normal conversational level. Tympanograms recorded normal compliance, middle ear pressure, and ear canal volumes bilaterally.

**IMPRESSIONS:** Left normal hearing sensitivity. Right profound sensorineural hearing loss. Normal middle ear function bilaterally.

**RECOMMENDATIONS:**

1. Follow up with Dr. Kostiv regarding today's results.
2. Consider a trial with a CROS (Contralateral Routing of Signal) system. This system consists of a transmitter worn on the right ear which will route the signal to a receiver worn on the left ear. Another option is a Baha, a bone-anchored device which routes the signal through the bone of the skull. Baha fittings are not performed at this facility.
3. Annual audiologic evaluations to monitor hearing sensitivity.

Audiologist: _____   Date: 05/23/2014

Abigail Rogers, Au.D.
License #: 147.001362

CC: Alex Kostiv, M.D.,  patient

Exhibit F, Page 1

**Heather Bendl <hbendl@comcast.net>**                                                    5/3/2022 2:35 PM

# *URGENT* In NEED of help from Illinois DCFS Corruption and Break Down of the System!

To StatesAttorney@lakecountyil.gov <statessattorney@lakecountyil.gov> • RTheis@lakecountyil.gov <rtheis@lakecountyil.gov> • WBrooks@lakecountyil.gov <wbrooks@lakecountyil.gov>

---

Good Afternoon State's Attorney Eric Rinehart, Investigator Tony Theis, and Investigator Wayne Brooks,

Please see the attachments and this VERY long and documented chain of corruption Lake County and the State of Illinois has done to MYSELF AND MY CHILDREN!

I beg of you to take the time and read through all of this corruption, failure of the Lake County Judicial System, and failure of the State of Illinois.

I emailed this to Representative Joyce Mason on April 29th and I have NOT heard from her. BUT this is what State's Attorney Nerheim FAILED to do his job and ultimately led to the utter destruction of my family and my children being SHIPPED off to their documented abuser Justin Serlick, Mary Serlick, and Ira Serlick.

THIS will eventually turn into a lawsuit with me against the State of Illinois and whomever FAILED my family and PROTECT us will be brought to light.

State Attorney Eric Rinehart, I voted for you to REPLACE SA Nerheim, my children and I are victims of his failed Leadership, and I NEED my voice to be heard.

In the meantime, PLEASE start investigating RLB PD Chief Rivera's Investigation of my OTHER current abusers Robert Rothunde and Donna Fritz. This is indeed an EASY WIN for your Prosecutors. Investigator Brooks and Investigator Theis were handed my victim statement I made at RLB PD yesterday from 10am-12pm and when I stopped in 2 hours later and spoke to Chief Rivera he CONFIRMED he has not even bothered to take some of his precious time as the Chief of Police to start watching all the documented videos as well as my legal and binding lease that my landlord and his mother ABUSED and TORTURED me and are STILL abusing and controlling me as I type this.

I NEED justice to be served, I am TIRED of being a victim of Domestic Violence and all these documented cases falling through our sham of Illinois Judicial System's cracks.

RLB PD Case # 2022-108989

Chief Rivera has all of the evidence he needs between my current lease AND a thumb drive of videos documenting hours upon hours of Robert Rothunde and Donna Fritz TORTURING ME and ENJOYING it!

We are all in this together.

Stay safe, stay healthy!

Exhibit G, Page 1

Thank You,

Heather Bendl

IDPH COVID-19 Prevention Ambassador

HBendl@comcast.net

224-427-0904

---------- Original Message ----------
From: Heather Bendl <hbendl@comcast.net>
To: info@repjoycemason.com
Date: 04/29/2022 9:48 AM
Subject: *URGENT* In NEED of help from Illinois DCFS Corruption and Break Down of the System!

Hello Joyce,

I was provided your info by Lake County Treasurer Holly Kim.

We NEED to have a serious chat about what has transpired with my children and I since I sought help to protect myself and my children from Justin Serlick's abuse July 2020 at A Safe Place. We we given temp housing in a hotel for a month in Waukegan, BP Gas cards, Aldi Gift Cards, and access to crisis counselors that my children and I utilized in Libertyville.

A Safe Place HELPED us in a very traumatic time of need, however, the application process to get housing assistance had a VERY long wait list and ultimately caused the intense break down of my family October 8th, 2020 where DCFS Investigator Jessica Lyman STOLE my children from Kiddie Kottage in Fox Lake and ultimately lead to the last TWO YEARS of pure hell.

The DCFS system is incredibly broken, it has been since the early 90's when they FAILED me as well by NOT protecting me from y sexual abuser Neal Sedlacko FORCING me to continue living with the man that was climbing in my bed at midnight after work at US Tsubaki groping and touching me. Forever causing me to have PTSD, trust issues, and insomnia, this case ACTUALLY shows on my DCFS report from the early 90's.

I NEED a call to action on this and my story NEEDS to be told.

We NEED DCFS reform.

Please take the time to read my attached "The Serlick Saga" showing just how bad the abuse has been and how I NEEDED my State of Illinois to PROTECT me and they failed on every levels and THEN gave a key to the Serlick Family to CONTINUE controlling me and hurting me in Florida, where Judge Morozin SHIPPED them to August of 2021 even AFTER I pleaded with him NOT to because Justin, Mary, and Ira Serlick are abusive to a SCARY level.

My ex-husband Justin Serlick and my ex-mother in law Mary Serlick should be in jail for a multitude of reasons, but instead, the State of Illinois HANDED them my babies!!

Exhibit G, Page 2

We need to talk about my heartbreaking situation and I desperately need your help as my State Rep! You are a Board Member on A Safe Place, I am truly grateful for ASP as a Girl Scout Leader and volunteer, but also as a victim of Domestic Violence that no matter HOW hard I try, this family has managed to walk away with ZERO criminal charges and Judge Morozin is THE reason they now have my babies.

Please, I am begging you, I NEED your help with this!

Below is the most recent email I sent to over 20 parties INCLUDING DCFS Director Marc D. Smith, I have a CONFIRMED Read Receipt! It was also sent to Governor JB Pritzker on every format on Illinois.gov but all I get is automated email replies.

Sent 4-20-2022 at 3:35pm:

*Hello All,*

*This email would also include Governor JB Pritkzer as well, but apparently he does not list his email publicly; instead I must contact him through Illinois.gov which I will be doing after this email is sent.*

*I am a GeoScientist that directly works with Mayors, Government Officials, Village of Gurnee Public Works, Lake County Public Works, Racine Health Department, and other Government Officials to protect our Environment and our Potable Water, the list goes on.*

*I will NOW be giving EVERYONE the REAL story of all the corruption from all the included parties and shed some light on just HOW horrible the Serlick Family is.*

*If I can stand in the Madison Capital Building and give a 45 minute Presentation to Governor Scott Walker in regards to my Wisconsin Water Quality Research to fight for Waukesha, Wisconsin to get grants to hook up to Great Lakes to have healthy, potable water I can most certainly use my voice to shed very much needed light on the lies, deceit, break down of Illinois' corrupt DCFS System that Director Marc D. Smith has been all over the news for doing EXACTLY what has been done to myself and my children nationally and even GLOBALLY!*

*I have a News Reporter friend in Darwin, NWT, Australia that actually told me he had to RUN Illinois DCFS Marc Smith's Corruption!*

*My family is living PROOF of this corruption and my voice WILL be heard.*

*I have taught my amazing daughter Ariana Serlick to USE HER VOICE to make changes as a NJHS Member AND a Girl Scout National Delegate to help make changes in GSUSA for future generations of Girl Scouts, I am showing her and my other children just how much MY voice has been silenced for nearly TWO FULL YEARS because of Justin, Mary, and Ira Serlick's control, manipulation, and abuse (AND Abuse of Power as a Volunteer Port Orange Police Officer)*

*Please see the attached "The Serlick Saga" that was written with the advice of my HORRIBLE Family Attorney Thomas Hunter back in August of 2020, this excerpt from MY story that WILL eventually be published only tells UP TO August 2020, a LOT more*

Exhibit G, Page 3

*heartbreaking and horrible things have happened since August 2020 in regards to myself and my children.*

*NEW light has been shed on just how sick and abusive my ex-husband Justin Serlick is as one of his MANY victims is coming forward, Linda Pierce. Linda put in her police report 4-19-2022.*
*Justin Serlick highly intoxicated WHILE I was pregnant with my son Charlie who was conceived by Justin Serlick RAPING me May 2016 THEN attempted to Sexually Assault Linda Pierce (Mother is Liane Pierce, Father is Jeff Pierce, a Retired Round Lake Park PD Officer) when she was BARELY old enough to vote and is Autistic, let alone fight off a 300 pound drunk man from Tequila at 9 Tweed Road, Fox Lake, Illinois, 60020 July 24th, 2016. Justin Serlick put Linda Pierce in a FULL Panic Attack from trying to GRAB her sexually in my pool. I drove Linda home after I calmed her down and sat in Liane and Jeff's Driveway at 1am that night discussing just how disturbing Justin's actions were WHILE I was pregnant with Charles Serlick.*

*Once I got back to the house Justin started drunkenly throwing FULL beer bottles at me shattering them all over my kitchen because I "ruined" his fun. My roommate Ted Hanson had to get him sober enough to go to bed while I cleaned up all the shattered glass.*

*This happened WHILE my children Ariana, Thomas, and Bianca were in my home asleep.*

*Please see Fox Lake PD Rape Report # 20-06858*

*Which ALSO includes my report of Justin Serlick shoving me to the floor of Tommy's bedroom THEN kicking my son Thomas is the ribs three times, THEN physically picking him up and THROWING him THROUGH the wall of his bedroom that smashed a 4 foot diameter hole into the dry wall that I had to cover with a movie poster so my son would not have a CONSTANT reminder of his father's physical abuse.*

*Thomas and Bianca Serlick made RECORDED, documented reports to the Gurnee Children's Advocate Center State's Attorney's Office September 2020 backing up my written report. Nerheim was up for re-election November 2020 so their focus was on the election, NOT keeping families SAFE from their abusers. Ironically, Nerheim LOST said Election.*

*Lake County State Attorney Nerheim FAILED myself and my children and it just kept getting WORSE.*

*Please see the following EOP's:*

*Justin Serlick 2020OP001687*
*Mary Serlick 2020OP001689*
*Ira Serlick 2020OP001688*

*These were filed by me to PROTECT myself and my 4 children FROM this ongoing abuse of nearly 20 years and STILL continuing.*
*The Serlick Family lawyered up and Judge Lombardo DISMISSED my request to protect my children and I from these sick, controlling, abusive people which was a the catalyst for the last TWO YEARS of my children and I's lives!*

*Please see Lake County Sheriff's investigation where I filed an attempted Sexual Assault where I caught Justin Serlick trying to rape me while my children slept just feet away from him in our RV July 2020 when I was dating a man named Greg Sheppard. Justin was AWARE I was seeing someone yet felt MY body was HIS property to do with what he so chose.*

*Lake County Report # 2020-7992*

*If you look up Justin Serlick's Criminal History you will see just how long this abuse has been going on, in particular, look at July 2010 when he shoved me down the stairs of our Lake Villa, Illinois home, broke my tailbone, was arrested and the State of Illinois put an EOP on him and he HID at Mary and Ira's House and managed to as always "get away" with his actions.*

*There are many other victims of his abuse, including my childhood friend Michelle Thompson in 2015, Jason Flohe in 2010 where Justin randomly showed up at his house in Kenosha, Wisconsin and VIOLETNLY started screaming my name from the parking lot. Jason opened the door and asked Justin to leave or he was calling the Kenosha, Wisconsin PD. I witnessed Justin Serlick punch Jason in the face and Jason then threw him in a headlock to the ground in self-defense and dislocated Justin's shoulder. I was inside Jason's apartment scared out of my mind. Witnessed in the parking lot called the Kenosha PD and they arrived asking Jason Flohe if he wanted to press charges for Assault. Jason consulted with me and I stupidly begged him not to, I should have advised him TO press charges. Justin was given a "Disturbing the Peace" fine and was asked to leave Jason's Residence.*

*Justin Serlick, under the protection of his sick and twisted parents Mary and Ira Serlick, has somehow managed to get away with ALL of this documented abuse over the years. Justin Serlick deserves to be behind bars for the rest of his life yet SOMEHOW Judge Morozin felt that it was OKAY to ship my babies 1,300 miles away to 1048 Chelsea Way, Port Orange, Florida 32129 August 2021 because Thomas Hunter and Oren Graupe FAILED to do anything BUT rack up over $40,000 in attorney fees then shrugged and said: "Oh well, we lost. Now fork over the balance of over $20,000"*

*I have been down in Florida to be near my children since December 6th, 2021. I am now a Legal Resident of Florida since February 2022.*

*Justin Serlick has had me BLOCKED on every form of communication, phone, text, and email since Judge Morozin CLOSED Thomas, Bianca, and Charles Serlick's Case December 14th, 2021 after I BEGGED him NOT to because I KNEW the Serlick Family would cut all communications with my children.*

*The LAST communication I have had with my children was Monday, December 6th, 2021 through a ZOOM CALL even though I was literally BLOCKS away from my own children at Nova Family Campground in Port Orange, Florida while I established myself here in Florida since Justin Serlick FORCED MY HAND in moving 1,300 miles away from everything I have ever known. My family, my friends, my support system.*

Exhibit G, Page 5

*I did this SOLELY for the purpose of being able to see and be with my children because JUSTIN realized after nearly 20 years of physical, emotional, mental, AND sexual abuse I was DONE allowing myself OR my children to be his and his parents VICTIMS and allow him to LIVE OFF ME.*

*NOW, I am engaged to an AMAZING man Greg Shivers who wants as much as I do, to be a part of my children's lives, BUT the Serlicks are CONTINUING to control me by means of my children. Using them as Pawns in their disgusting Game of Chess.*
*Financial Control, Manipulation, Mental Abuse, and Verbal Abuse.*

*Greg called Justin two days ago to talk man to man. Since Greg will eventually be my children's step-father.*

*Justin did nothing but bash me, lie to Greg about what REALLY happened, not once take ANY accountability for Justin's OWN choices of about why he ABANDONED his children to live with Mary and Ira Serlick in Port Orange, Florida so he no longer had to actually support himself financially since he realized I was NO LONGER willing to live with MY abuser and my CHILDREN'S abuser.*

*Then, Mary Serlick answered Justin's phone and called Greg Shivers something along the lines of a "Pussy Ass Bitch".*

*About 5 minutes later a Port Orange PD Officer called Greg from JUSTIN'S PHONE informing him not to contact Justin again, however, I am "allowed to". That's great, I have documented call logs and emails ATTEMPTING to reach out to Justin so I can speak to or spend time with my children but Justin has me BLOCKED on everything effectively keeping me from contacting my children in any way.*

*In that State of Florida, Family Law CLEARLY states what Justin is doing is ILLEGAL and he WILL go to jail.*

*I am in the process of obtaining an Attorney in the State of Florida to get my babies RETURNED to me.*

*I should NOT have to do any of this!*

*The State of Illinois FAILED my family.*
*The State of Illinois DESTROYED my family.*

*The entire world WILL eventually know my story and every single one of your names WILL be included in my lawsuit that will eventually happen BECAUSE no one would LISTEN to me!*

*Justin Serlick jumped on his motorcycle July 29th, 2020 and ABANDONED his 4 children so he could live for free off Mary and Ira Serlick.*
*He arrived in Florida not even 48 hours after he left Antioch, Illinois at 9pm July 29th, 2020. He LITERALLY could not get AWAY from his own children fast ENOUGH.*
*Justin Serlick owes me THOUSANDS of dollars in back child support for Ariana, Thomas, and Bianca Serlick.*
*Justin Serlick has NEVER paid a cent in Child Support for Charles Serlick.*

Exhibit G, Page 6

*Please see Family Court Case SERLICK; 13 D 981 / 20 F 422*

*This case was originally filed by ME with my Divorce Attorney Denis Gravel in June 2020 to have a MODIFIED Child Support Order so I WOULD start getting the CORRECT child support amount as Justin GAVE UP his parental rights WILLINGLY as well as went in front of the Judge TELLING her that Mary and Ira Serlick abuse HIM, me, AND our children and UNDER OATH requested Page 7, Line 7 be entered into our Divorce.*

*Yet, somehow, based on MULTIPLE zoom visits with Elizabeth Tevis as witness, my son Thomas Serlick and Bianca Serlick were stating I GAVE THEM AWAY to the State of Illinois because I no longer wanted them. That I FORCED their father to get on his motorcycle July 29th, 2020 and leave the State of Illinois, that I supposedly FORCED Justin to commit Perjury and lied about Mary and Ira Serlick's history of abuse.*

*My children are being lied to, manipulated, alienated, and KEPT FROM ME by the Serlick Family in Port Orange, Florida.*

*I drove my RV 1,300 miles away from everything I have ever known to BE with my children, Justin Serlick drove 1,300 miles to get AWAY from his children.*

*Please see photos of Justin's April 2020 Psych Evaluation with Dr. Reynish that Judge Morozin and Elizabeth Tevis had access to but CHOSE TO IGNORE!*

*Please explain to me WHO to fit parent is, and who is NOT?*

*As a former Government Employee myself, I EXPECT answers from ALL responsible parties that have done this to my children and I.*

*This WILL be going to Governor JB Pritkzer.*

We are all in this together.

Stay safe, stay healthy!

Thank You,

Heather Bendl

IDPH COVID-19 Prevention Ambassador

HBendl@comcast.net

224-427-0904

- Heather Bendl A Safe Place 7-23-2020.pdf (738 KB)
- The Serlick Saga - Written by Heather Bendl.docx (108 KB)
- Justin Serlick Psych Eval 2.jpeg (1 MB)
- Justin Serlick Psych Eval 3.jpeg (2 MB)
- Justin Serlick Psych Eval 1.jpeg (2 MB)

Exhibit G, Page 7

**Heather Bendl <hbendl@comcast.net>**                                          1/14/2025 7:46 AM

# Michael Nerheim Corruption and Collusion Emailed 1-14-2025

To statesattorney@lakecountyil.gov <statesattorney@lakecountyil.gov>

---

Hello,

Please see my following post EXPOSING former SA now Presiding Family Law Judge Michael Nerheim of Lake County, Illinois:

https://www.facebook.com/share/p/1ZMnhKSs6K/

Also please see attached EVIDENCE of said collusion and corruption between Michael Nerheim and Florida Circuit Seven Court of which I obtained from a Florida Circuit Seven Public Records Request December 19th, 2020.

This was emailed to me by Florida Circuit Seven's Attorney Joshua Griffith 1-7-2025

Joshua L. Griffith, esq.
General Counsel
Seventh Judicial Circuit of Florida
Bar No.: 1038320
Phone: 386.626.6574
Email: JGriffith@Circuit7.org

I would appreciate an urgent response to this matter.

Thank You,

Ms. Heather Bendl, B.S.

HBendl@comcast.net

386-846-0599

https://www.linkedin.com/in/heatherbendl/

---

- Email Connecting IL Family to FL Family Court 1-7-2025.pdf (38 KB)

Exhibit G, Page 8

**Lake County State's Attorney <statesattorney@lakecountyil.gov>**                    1/14/2025 7:48 AM

# Automatic reply: Michael Nerheim Corruption and Collusion Emailed 1-14-2025

To Heather Bendl <hbendl@comcast.net>

---

Thank you for contacting the Lake County State's Attorney's Office. Inquires sent to this email address may take time to receive a response.  Please call 847-377-3000 if you need immediate assistance.  Otherwise, we thank you for your patience.

Please note, this email does not accept court notices or filings.  If you need to provide the office with a notice, or official court filings, please call 847-377-3000, so you can get the correct person to whom the information should be sent.

Confidentiality Notice: This message and any attached files contain information intended for the exclusive use of the person(s) to whom it is addressed and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are notified that any viewing, copying, disclosure, or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

Exhibit G, Page 9

Uniform Rules of Practice
Circuit Court of Illinois
Nineteenth Judicial Circuit

JUL 2 4 2023

*Ena Cartanjut Weinstan*
**CIRCUIT CLERK**



Adopting of **Local Rule, Chapter 1 Administration of the Courts, Part 1.00, Organization, Rule 1-1.22 Court Appearances and Procedures,** of the Uniform Rules of Practice, Circuit Court of Illinois, Nineteenth Judicial Circuit.

### 1-1.22    COURT APPEARANCES AND PROCEDURES

**PURPOSE.** Justice, and the judiciary responsible for ensuring it, is quintessentially a people-based undertaking. Courts must guard against the dehumanization of the judicial process. While considerations of convenience and economic efficiencies have their place, they alone cannot drive the administration of justice. Accordingly, meeting the Court's mission of "providing a fair and efficient system of justice, committed to excellence, fostering public trust, understanding and confidence" requires the Court to determine whether a remote appearance is appropriate without impairing the Court's ability to deliver justice in every case and proceeding. The court's determination to allow a remote appearance depends upon the nature of the case and the purpose of the proceeding. The more substantive the proceeding, the more it is necessary for the case participants to be present in-person; conversely, the less transformative the proceeding, the less necessary in-person participation may be needed.

In certain case types, the resources are most readily available to those participants who appear in-person, including but not limited to the following: Public Defender, resources from Prairie State Legal Services, mediators, Guardians *ad Litem*, and self-help resources.

When permitted, remote appearances shall comply with the definitions and provisions of Illinois Supreme Court Rule 45 as further provided below.

1. **GENERAL RULES.**

    a.  Judicial proceedings open to the public shall be conducted by the court in the courtroom as assigned by the Chief Judge. When appropriate, pursuant to this Rule, the individual trial court judge may permit participation remotely.

    b.  Remote Participation.

        1) Requests to appear remotely may be made by written motion or verbally. If the request is made by written motion, it must be in the proper form, filed with the Clerk of the Circuit Court, and noticed to all parties of record.

Exhibit H, Page 1

2) Prior to permitting a case participant to participate remotely, the participant shall certify to the court that appropriate safeguards are available and operational to ensure accurate identification of the case participant and to protect against inappropriate influences during the case proceedings. See the Certification Order below.

3) A Zoom link for each morning and/or afternoon court session posted by courtroom, date and time may be found at the following web location: https://19thcircuitcourt.state.il.us/2163/Remote-Court-Hearings.

   A Nineteenth Judicial Circuit Zoom Instruction and Protocol Sheet can be found at the following link: https://19thcircuitcourt.state.il.us/DocumentCengroter/View/2812/Zoom-Instruction-and-Protocol-Sheet-51820.

   All parties are directed to read and follow the protocol during Zoom proceedings.

c. **Summonses, Notices, and Court Orders.** All Summonses, Notices, and Court Orders setting court dates where case participants have the option to appear remotely shall include the following:

   "Parties wishing to attend may appear in-person in the courtroom or may attend remotely on Zoom video or telephone conferencing. A Zoom meeting ID, password and link for this court call will be listed by courtroom, date, and time at:

   https://19thcircuitcourt.state.il.us/2163/Remote-Court-Hearings."

d. **Recording/Photographs/Reproduction.** Any video recording, audio recording, photographing, taking screenshots, and/or reproducing of the proceeding is strictly prohibited. The recording, publishing, broadcasting or other copying or transmission of courtroom proceedings by video, audio, still photography or any other means is strictly prohibited by Illinois Supreme Court Rule 68(A)(8) and is subject to the penalties for contempt of court. Observers must keep their video off and sound muted.

e. **Standing Orders.** In addition to the rules set forth below, refer to individual judges' Standing Orders for additional specific courtroom procedures.

2. **PROCEEDINGS BY CASE CATERGORY/EVENTS.**

2

Exhibit H, Page 2

a. **All Divisions.** Case Participants may appear in-person for any court event unless otherwise ordered by the court for good cause shown.

b. **Civil Division.** Case Participants must appear in-person for the following court events:

    1) Evidentiary Hearings, except for *ex parte* evidentiary hearings where only one side of the case is presenting evidence (for example, emergency orders of protection and hearings on applications for waiver of court fees);

    2) Arbitration hearings;

    3) Probate and Guardianship;

    4) Hearings on contested dispositive motions;

    5) Jury or Bench trials; and

    6) Contempt of court proceedings; and

    7) As ordered by the court to appear in-person.

Case participants may ask the court for permission to appear remotely. The court in its discretion may for good cause shown permit such remote appearance. When the case is before the court for a hearing identified above, the court may permit remote appearance upon assuring appropriate safeguards as provided in the attached Certification.

c. **Family Division.** Case Participants must appear in-person for the following court events:

    1) Evidentiary Hearings, except for *ex parte* evidentiary hearings where only one side of the case is presenting evidence (for example, emergency orders of protection and hearings on applications for waiver of court fees);

    2) Hearings on contested dispositive motions;

    3) Bench trials;

    4) Contempt of court proceedings, including case status and status of purge dates; and

    5) As ordered by the court to appear in-person.

Case participants may ask the court for permission to appear remotely. The court in its discretion may for good cause shown permit such remote appearance. When the case is before the court for a hearing identified above, the court may permit remote appearance upon assuring appropriate safeguards as provided in the attached Certification.

d. **Criminal Division.** Case Participants must appear in-person for the following court events:

    1) Bond/First Appearance hearings;

    2) Arraignment hearings;

3

3) Evidentiary hearings, except for *ex parte* evidentiary hearings where only one side of the case is presenting evidence (for example, emergency orders of protection);
4) Non-evidentiary hearings;
5) Settlement conferences;
6) Guilty plea hearings;
7) Bench trials (including stipulated bench trials);
8) Jury trials;
9) Sentencing hearings;
10) Probation revocation hearings;
11) Hearings conducted under the Sexually Dangerous Persons Act (725 ILCS 205/0.01 *et seq.*),
12) Expungements and Sealings, and
13) As ordered by the court to appear in-person.

Case participants may ask the court for permission to appear remotely. The court in its discretion may for good cause shown permit such remote appearance. When the case is before the court for a hearing identified above, the court may permit remote appearance upon assuring appropriate safeguards as provided in the attached Certification.

e. **Branch Court.** First appearances may be in-person or remotely on Zoom, except when the first appearance is set for trial. All hearings and trials shall be in-person.

Case participants may ask the court for permission to appear remotely. The court in its discretion may for good cause shown permit such remote appearance. When the case is before the court for a hearing identified above, the court may permit remote appearance upon assuring appropriate safeguards as provided in the attached Certification.

f. **Restorative Justice Division**

1) **Problem Solving/Specialty Courts.** (Drug Court, Therapeutic Intensive Monitoring (TIM) Court, Veteran's Treatment and Assistance Court (VTAC), Supervised Treatment Opioid Program (STOP), DUI Diversion Program (DDP), and Alternative Prosecution Program (APP). All matters will be heard in-person.

2) **Fitness Status Dates, Hearings and Discharge Hearings.** Fitness status dates will be conducted in-person. Defendants who are in the custody of the Sheriff or DHS may appear remotely, as directed by the court. Fitness and Discharge hearings will be conducted in-person, although the court, in its discretion, may allow a witness to testify remotely upon and upon assuring appropriate safeguards as provided in the attached Certification.

3) **Mental Health (MH) Proceedings.** Mental health proceedings will be heard in-person, although the court, in its discretion, may allow a witness

4

to testify remotely upon assuring appropriate safeguards as provided in the attached Certification.

4) **Juvenile Abuse, Neglect, and Dependency Matters.** Case Participants shall appear in-person for the following court events:
   a) Any dispositive proceeding;
   b) Any hearing where evidence will be presented;
   c) Shelter care hearings;
   d) Arraignments;
   e) Admissions;
   f) Adjudication hearings;
   g) Disposition hearings;
   h) Permanency hearings; and
   i) Termination of parental rights hearings.

Case participants may ask the court for permission to appear remotely. The court in its discretion may for good cause shown permit such remote appearance. When the case is before the court for a hearing identified above, the court may permit remote appearance upon assuring appropriate safeguards as provided in the attached Certification.

5) **Juvenile Delinquency Matters.** Case Participants, including Minors alleged to be delinquent, and Parents or Guardians of the Minor must appear in-person for the following court appearances:

   a) Detention/First Appearance hearings;
   b) Arraignment hearings;
   c) Evidentiary hearings, except for *ex parte* evidentiary hearings where only one side of the case is presenting evidence (for example, emergency orders of protection);
   d) Non-evidentiary hearings;
   e) Guilty plea hearings;
   f) Trials (including stipulated bench trials);
   g) Sentencing hearings;
   h) Probation revocation hearings;
   i) Fitness hearings; and
   j) As ordered by the court to appear in-person.

Case participants may ask the court for permission to appear remotely. The court in its discretion may for good cause shown permit such remote appearance. When the case is before the court for a hearing identified above, the court may permit remote appearance upon assuring appropriate safeguards as provided in the attached Certification.

3. **CONDUCT OF REMOTE PROCEEDINGS.** Unless otherwise ordered by the court, remote proceedings shall be conducted as follows:

a. The court, or the Circuit Clerk at the Court's direction, will host the proceeding and control entry into the proceeding;

b. If requested by a party and if technologically feasible, the court may allow breakout meetings, private chats, or other private communication between attorneys and clients during the proceeding; provided, however, that a witness may not communicate with any other person;

c. Any witness permitted to testify remotely must appear by both video and audio;

d. When not speaking, participants shall mute their microphone;

e. All participants must be in an environment free of video and audio distractions;

f. No person shall operate a motor vehicle while remotely appearing in court;

g. No exhibit may be used during a remote proceeding unless a copy of the pre-marked exhibit was provided to all other parties and the court at least one full business day before the hearing;

h. The court may terminate or suspend the remote proceeding for technological or any other reason at any time;

i. Remote proceedings shall be conducted with the same standards as in-person proceedings and in accordance with the Illinois Rules of Civil Procedure, Illinois Rules of Evidence, Illinois Supreme Court Rules, and the Local Rules;

j. The precise method by which a remote proceeding will be conducted remains within the discretion of the court;

k. All persons must use and display their real names (not aliases, "user," or "iPhone") on the Zoom platform to gain entrance to and participate in the proceeding;

l. If a party or a party's witness requires the use of an interpreter, that party shall be responsible for coordinating with the court in advance of the hearing that an interpreter will be needed for the proceeding;

m. Participants shall ensure any background used is appropriate; and

n. Participants shall not sit directly in front of or behind a window or otherwise use lighting that interferes with the quality of the video.

o. The court may order a case participant to appear in-person for reasons specific to the case, including failure to act in accordance with the above rules during a remote proceeding.

6

4. **DECORUM.** Participants shall engage in appropriate behavior at all times and be appropriately dressed (i.e. business attire) when appearing either in-person or remotely.

5. **VIOLATIONS.** A violation of this Rule may result in sanctions, referral to the Illinois Attorney Registration and Disciplinary Commission, denial of the option to appear by remotely at future proceedings, criminal prosecution, contempt of court, and any other sanctions deemed necessary by the court.

6. **COMMUNICATION OF RULE 1-1.22.** To ensure persons desiring to appear remotely are informed regarding this Rule, a link shall be created on the website identified in Rule 1-1.22(2) and copies of Rule 1-1.22 shall be posted in the Circuit Clerk's office.

Adopted by the Circuit Judges
of the Nineteenth Judicial Circuit
this 24th day of July, 2023
and effective immediately.

7

Exhibit H, Page 7

# How to Use Zoom for Court

Until further notice, all Court hearings will be conducted by Zoom (which is similar to Skype).

What will I need to attend Court using Zoom?
You will need a **desktop computer, laptop, or** **smartphone that are equipped with a camera and microphone and a stable internet connection**. If you do not have access to those devices, see **Call-In Options** at the bottom of this document. The instructions for attending a remote hearing are as follows:

## First Step: Install Zoom For Free
For **smartphones** and **tablets**, install ZOOM from the Play Store or App Store.
For your **desktop computer**, **laptop** or notebook device with webcam and microphone, please visit www.zoom.us and follow the instructions to download the app.

## Second Step: Create an Account
Create a Zoom account by going to Zoom.us, and click, "sign up, it's free" and follow the prompts from there. You will need to use your email address and create a password. You only need to do this one time; this is the account you will use each time you enter a Zoom virtual hearing.

You should test audio and video at least 24 hours before the conference.  This can be done in the "Preferences" or "Settings" window of the program.  You will also want to test the program to be sure that you have a strong Wi-Fi connection. If your signal strength is too weak this may impact your ability to participate in the virtual hearing.  If you are unable to participate by video, see the section titled "Call-In Options".

## Third Step: Join the Zoom Call
**Be sure to join the Zoom call 15 minutes before the start time.**
To join, you will need to access the Zoom remote court session information, which includes the meeting ID and password. This information can be found on the Nineteenth Judicial Circuit Court's website https://19thcircuitcourt.state.il.us/2163/Remote-Court-Hearings.
1. From the Remote Court Hearings webpage, locate your assigned courtroom and click on the link to that courtroom's Remote Court Session schedule.
2. From the courtroom's Daily Remote Court Session webpage, find the remote court session for the date and time of your scheduled hearing.
3. Please take note of the Meeting ID and Password for that specific court session.
4. A "Join Now" link to the hearing will be provided. Clicking on the Join Now link will open your Zoom app and ask you to enter the Zoom session's meeting ID and password.
5. After you enter the meeting ID and password, a screen should load showing your face, after you see this screen, click "**join with video**"
6. Once these above steps have been completed, you will have joined the Zoom session and be placed into the Zoom Waiting Room. (When in the Waiting Room, you cannot hear or see the court proceedings.)
7. The name that you choose for yourself will be shown on the screen during the call.  You **must** use your full name as it appears in your case as well as your case number so that you can be identified. If you fail to do so you may not be admitted into the proceeding from the Waiting Room.
8. When the court is ready to hear your case, you will be allowed entry into the Zoom meeting from the Waiting Room.
9. A message box will then appear asking you to "**join with computer audio**," or "**join with internet audio**."  Selecting this will allow you to hear the meeting and speak through your device.

1

Exhibit H, Page 8

## Tips:

- Do not join the Zoom meeting while in a moving vehicle. Internet connectivity may affect your Zoom connection.
- You may join the Zoom court session if you join before the host is ready to start the session. **Please do not leave the meeting**; once the host begins the session, you will be placed into the Waiting Room
- Join the Zoom Court Session 15 minutes before the scheduled time. If you arrive late, you will end up waiting longer in the Waiting Room.
- When you are admitted from the Waiting Room, you should mute yourself by clicking on the microphone icon. If there is a red line through the microphone you are muted and cannot be heard by the people in the meeting.  When it is your turn to speak, you will need to unmute yourself by clicking the microphone.
- If you have not previously clicked on the "Join by Video" button, you may click on "start video" after joining the meeting so that others can see you.  If the "start video" icon on the bottom left corner has a red line through it, that means that no one else can see you.

## Behave As You Would in a Courtroom

- You should be appropriately dressed if appearing by video for a virtual hearing.
- Be aware of your background (area behind you).  Make sure it is appropriate; it will be seen by the Judge and other people attending the hearing.  Make sure you are not sitting directly in front of or behind a window, because the light or reflection can affect the video.
- Choose a quiet place to participate in the hearing. Cell phones should be muted, doors to rooms closed and disruptions minimized.
- You should remain on mute until it is your time to speak. Do not speak over anyone and do not interrupt anyone.  Use appropriate language as you would in a courtroom.
- If there is a court reporter or language interpreter present, be aware that he or she may interrupt from time to time to clarify who is speaking.
- If you do not follow the Court's rules, you may be removed from the Court hearing, and the Judge can impose a fine or other punishment.
- **Recording/Photographs/Reproduction:  Any video recording, audio recording, photographing, taking screenshots, and/or reproducing of the livestream is strictly prohibited.  The recording, publishing, broadcasting or other copying or transmission of courtroom proceedings by video, audio, still photography or any other means is strictly prohibited by Illinois Supreme Court Rule 68(A)(8) and is subject to the penalties for contempt of court.  Observers should keep their video off and sound on mute.**

## Other Zoom Features

- Breakout Room: If two or more participants need to have a private conversation, the Judge can send them into their own meeting and then bring them back into the hearing when the conversation is over.
- Share Screen:  This feature can be used to share documents that you have on your computer. The ability to present documents will depend on the courtroom.  If a document needs to be shared with the participants, be prepared to show a PDF version from your computer with the "Share Screen" feature or in any other manner in which that court deems appropriate (i.e. Dropbox). The Host will be the only one to assign participants to share screen.

2

Exhibit H, Page 9

- Chat Room: This feature can also be used to send documents or messages.  Some courtrooms may allow the chat rooms.  However, you may not have a private chat with the judge at any time.  If anyone uses the chat to have an ex parte communication (private chat) with the Judge, the Judge will let everyone know, and that person may be removed from the proceeding.
- Interpretation: An interpreter can join the Zoom meeting:
  To request a Spanish Interpreter, call 847-377-3596 or email batkinson@lakecountyil.gov ;
  To request an Interpreter for any other language, call 847-377-3819 or email at
  pcadrecha@lakecountyil.gov

## Call-In Options

If you are unable to join using a computer, laptop, or smartphone, you may join the hearing by calling in. While you will not be able to see the other participants, and they will not be able to see you, you will still be able to hear each other.

The number to call to join the meeting can be found on the Court website: https://19thcircuitcourt.state.il.us/2163/Remote-Court-Hearings. You will then need to enter the phone number followed by the pound sign (#) located on the courtroom's Daily Remote Court Session schedule. See steps 1 and 2 above to access the Daily Remote Court Session schedule and phone number.

You will join the meeting on mute.  To unmute yourself when dialing in by phone you, will have to press **\*6**. You should remain on mute except when it is your turn to speak. Please identify yourself when it is your turn to speak, please speak clearly and loudly so that everyone can hear you.

## More Zoom Assistance

- For a short video on How to Join a Zoom meeting:
  https://www.youtube.com/watch?v=hlkCmbAHQQ
- For a short video on Joining a Zoom meeting for the first time (8:15 minutes in duration):
  https://www.youtube.com/watch?v=9isp3qPeQ0E
- For a short video on how to use Zoom on a mobile device (10:45 minutes in duration):
  https://www.youtube.com/watch?v=sOJkfflN804

## CANNOT APPEAR VIA ZOOM OR PHONE

All hearings are to be conducting using Zoom.
- If you believe you have good cause why you cannot join using Zoom you will have to file a motion.
- The Motion must state your reasons that you are unable to use Zoom and that you are requesting an in-person hearing.
- You must file the Motion with the Clerk of the Court.
- The Court will review your motion and either grant or deny it.

Exhibit H, Page 10



FILED

AUG 0 6 2025

*Erin Cartwright Weinstein*
**CIRCUIT CLERK**

Uniform Rules of Practice
Circuit Court of Illinois
Nineteenth Judicial Circuit

**Chapter 1, Administration of the Courts, Part 4.00 Use of Electronic Devices and Recording Equipment**

**1-4.01 Electronic Devices, Photographing, Broadcasting & Recording Devices**

A. **General Allowances and Prohibitions.**
   1. Recording of court proceedings in person or remotely is prohibited and may be subject to criminal prosecution, contempt of court, and any other sanctions deemed necessary by the court.
   2. Subject to screening and compliance with these rules, Portable Electronic Devices may be allowed in court facilities.
   3. If permitted, all Portable Electronic Devices must be placed in "silent" mode within court facilities, and court visitors shall ensure that audio or video transmissions do not interfere with court proceedings.
   4. No phone calls, text messages, photographs or video shall be sent or received within any courtroom except as permitted below.
   5. The use of speakerphones, videotelephony, or video conferencing applications (including but not limited to FaceTime and Zoom) is strictly prohibited in all Court Facilities and their environs. However, case participants may use court-approved videotelephony to participate in remote court in conference rooms, lobbies, hallways, or the law library provided that such use does not interfere with the use of said premises by others present.
   6. Photography, broadcasting, audio or video recording, live streaming, and social media broadcasting are prohibited in all Court Facilities areas and their surrounding environs.
   7. All rules regarding the use of electronic devices apply equally to remote court proceedings, including those conducted via Zoom or other videoconferencing platforms. Participants are expected to follow the same standards of conduct and courtroom behavior as required when appearing in-person.
B. **Definitions.**
   1. "Case participant" means any individual participating in a court proceeding including but not limited to the parties, criminal defendants, minors, lawyers, guardians *ad litem*, guardians, youth in the care of the Department of Children and Family Services (DCFS), witnesses, interpreters, treatment providers, probation officers, pretrial officers, DCFS caseworkers and contract service providers, court reporters, clerks of court, and the judge presiding over the case. This term does not include jurors, the public, or members of the media that are not a party or witness in the case.
   2. "Court Facilities" refers to the following: all Nineteenth Judicial Circuit courthouses

Exhibit H, Page 11

and buildings, including the Lake County Courthouse (Main) (from the South Atrium on the north end of the building to the Criminal Tower on the south), the Criminal Tower, Adult Probation & Psychological Services, Pretrial Services, Mundelein Branch Court, North Branch Court (Round Lake Beach), Park City Branch Court, Robert W. Depke Juvenile Complex Center (Juvenile Court, Probation, and Detention Services, the Office of the Guardian *ad Litem*, and the Circuit Clerk of Lake County), ), and the Lake County Arbitration Center. Additionally, all court security desks and security magnetometers are included in Court Facilities.

- The North Atrium, Lake County Clerk's Office, Lake County Treasurer's Office and the Lake County Administration Tower are subject to the rules of Lake County Administration and are not included in Court Facilities.

3. "Court visitor" means any individual present at a court facility.
4. "Environs" refers to the following areas:
   a. All courtrooms, private and public hallways, rooms adjacent to said hallways and to the courtroom, witness or jury assembly/deliberation rooms, conference rooms, law library, Kids Korner, Court Administration, public restrooms, corridors and lobbies.
   b. The offices of Adult Probation & Psychological Services, Pretrial Services, Juvenile Probation and Detention Services, the Office of Guardian *ad Litem*, the Circuit Clerk of Lake County, public restrooms, corridors and lobbies immediately adjacent to those offices.
   c. In the interest of conducting a fair trial in a particular case, the Court may expand the area of environs in a written order.

5. "Portable Electronic Devices" are mobile devices capable of recording or storing by any means, accessing, or transmitting information including but are not limited to personal computers, tablet computers, mobile telephones (including cell phones and any form of telephone with cameras and audio and video recording and transmission capabilities), electronic calendars, e-book readers, smartwatches, and similar devices.

C. **Electronic Devices in Courtroom.** Case participants may use portable electronic devices in the courtroom solely for the purposes of assisting in their case, provided that the device is silenced and in no way interferes with the dignity and decorum of the courtroom or its activities. This may include checking calendars, reviewing documents related to the case, presenting case-related information, or conducting legal research.

D. **Jurors.** No individual shall take photographs, or audio or video recordings of prospective jurors or jurors at any time. No individual shall use Portable Electronic Devices to communicate or attempt to communicate with any potential juror or juror at any time.

E. **Witnesses.** No individual shall take photographs or make audio or video recordings of witnesses at any time. No individual shall use Portable Electronic Devices to harass, intimidate, or communicate about given testimony with any witness at any time.

F. **Other Electronic Devices.** Cameras, video cameras, video recording equipment and recording devices not classified as Portable Electronic Devices are not allowed in Court Facilities without the express approval of the Chief Judge or where Extended Media Coverage has been approved.

G. **Decorum Orders.** The Court may issue an order governing such matters as extra-judicial statements by parties and witnesses, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters which the Court may deem appropriate for inclusion in such an order.

H. **Confiscation Of Equipment and Ejection.** Anyone using a Portable Electronic Device, or possessing other electronic devices, in violation of this or any other court order or policy may be removed from Court Facilities, held in contempt of court, and/or subject to penalties as provided by law. Any Portable Electronic Device used in violation of an order may be confiscated or seized by law enforcement officers for investigative purposes. Court personnel shall not be responsible or liable for any damage to or loss of a confiscated Portable Electronic Device.

I. **Restrictions On Portable Electronic Devices.** If the Chief Judge determines that Portable Electronic Devices interfere with the administration of justice or cause a threat to safety or security, he or she may prohibit Portable Electronic Devices from being carried into specific courtrooms (for example, courtrooms hearing certain criminal cases) or into the Court Facilities as a whole.

J. **Non-Judicial Events and Activities.** The Court may permit photography, broadcasting, and recording of non-judicial events and activities, or of judicial personnel or facilities, for educational, instructional, informational, or ceremonial purposes. Such non-judicial events and activities include, but are not limited to, weddings, graduations in problem solving courts, bar association activities, induction ceremonies, award ceremonies, dedication ceremonies, mock trials, seminars, training sessions, journalistic undertakings not covered by extended media coverage, public awareness activities, and similar events and activities.

K. **Extended Media Coverage.** The terms and requirements for extended media approval are set forth in Local Rule 1-4.03.

L. **Enforcement.** The Lake County Sheriff's Office shall enforce this rule.

M. **Attorneys.** Attorneys should advise their clients, witnesses and support staff of this Rule.

N. **Purpose.** The purpose of this policy is to protect and enhance the safety of the public, case participants, and the integrity of the judicial process. The policy

establishes order and decorum in all Court Facilities, ensuring that the courtroom environment supports and enhances the fair and impartial administration of justice. Consistent with practices in other circuit courts in Illinois and the Northern District of Illinois, the 19th Judicial Circuit's policy guarantees the public's right to access the courts and observe judicial proceedings while protecting the safety of those who come to court and enhancing the integrity of the judicial process.

## 1-4.02 Official Use of Recording and Broadcasting by the Court.

A. **Authorized Court Personnel**. Authorized court personnel, which include judges, court clerks, court services personnel and court reporters, may operate computers, including laptops and personal computers, within the courtroom while court is in session when such operation is in furtherance of or related to official court business.

B. **Approved Broadcasting and Digital Recording of Proceedings.**
   Notwithstanding the provisions of Rule1-4.01:
   1. Court proceedings may be conducted remotely in accordance with Local Court Rules and Illinois Supreme Court Rules.
   2. Court proceedings may be recorded digitally by certified court reporters in the performance of their regular duties or by digital equipment, subject to regulations of the Administrative Office of Illinois Courts and Orders of the Court.
   3. Digital recordings of proceedings shall remain under the control of the Nineteenth Judicial Circuit.

C. **Lake County Sheriff's Office.**
   1. All recordings from security cameras monitoring court facilities and security magnetometers are the property of the Nineteenth Judicial Circuit Court and are deemed to be in the possession of the Court notwithstanding actual possession by another party.
   2. Video or images captured on a body camera in a Nineteenth Judicial Circuit court facility, courtroom, its environs or the security magnetometers are court security video and are deemed to be in the possession of the Court notwithstanding actual possession by another party.
   3. Any requests for disclosure of a video or image captured on body worn or security cameras monitoring the facilities of the 19th Judicial Circuit must be (1) in writing and (2) presented to the Chief Judge.

## 1-4.03 EXTENDED MEDIA COVERAGE.

A. Extended media coverage in the Nineteenth Judicial Circuit is permitted in accordance with the provisions contained in Illinois Supreme Court Order M.R. 2634 and the Policy for Extended Media Coverage in Circuit Courts of Illinois.

News media organizations shall comply with the Rules regarding the general use of cellular phones and other electronic devices within the courtrooms and outside of the courtrooms, but still within the confines of the courthouse. Nothing in this Rule shall limit or restrict the power, authority or responsibility otherwise vested in the Chief Judge of the Circuit; and the Judge presiding to: control the conduct of any proceeding; maintain decorum and prevent distractions; guarantee the safety of the courtroom, including any party, witness, or juror; and ensure the fair and impartial administration of justice in the pending cause.

B. **Media Coordinator and Court Media Liaison.**
    1. **Media Coordinator.** A single representative acting on behalf of all news media organizations shall be selected to organize and submit requests for extended media coverage and administer all aspects of extended media coverage for the news media. The Media Coordinator shall be selected by and among representatives of the news media and shall be approved by the Chief Judge.
    2. **Court Media Liaison.** A representative from Court Administration shall serve as the Court Media Liaison. The Court Media Liaison is responsible to the Court and shall work with the Media Coordinator on all matters pertaining to extended media coverage. The Media Liaison may consult with the Trial Judge regarding any questions or concerns from the media and may direct the media consistent with the rulings of the Trial Judge regarding extended media coverage of any case. The Trial Judge may direct the Media Liaison to convey any changes or alterations to the Order entered in the case to interested individuals or organizations.

C. **Requests, Objections and Orders.**
    1. **Notice of Requests for Extended Media Coverage.** Notices for Requests for Extended Media Coverage shall be filed with the Office of the Clerk of the Circuit Court. The form for filing a Request for Extended Media Coverage shall be as prescribed in Appendix "A."
    2. **Notices of Requests for Extended Media Coverage.** The Office of the Clerk of the Circuit Court shall send a written Notice and copy of the Request for Extended Media Coverage to the following persons:

        a. Attorneys of Record;
        b. Self-represented litigants;
        c. The Court Media Liaison;
        d. The Judge presiding over the case for which extended media coverage is sought;
        e. The Chief Judge.

The form of the Notice to be sent by the Clerk of the Circuit Court shall be as prescribed in Appendix "C."

The Notice and copy of the Request shall be sent by first class mail or facsimile transmission or delivered by personal service, no later than the close of business on the day following the filing of the Request. The Chief Judge may order alternate means of service, such as electronic mail, for persons identified in Sections C through E of this Rule.

3. **Objections by Parties**. The form for a party to object to extended media coverage shall be as prescribed in Appendix "D."
4. **Objections by Witnesses**. All witnesses shall be notified by counsel proposing to introduce testimony from a witness of their right to object to extended media coverage. Notification shall be provided by using the form as prescribed in Appendix "'E," or a substantially similar form. Objections by witnesses shall be filed with the Clerk of the Circuit Court prior to the commencement of the proceeding. Any objecting witness shall file his or her objection using the form as prescribed in Appendix "F," or a substantially similar form. Counsel shall file proof that Notice was provided to the witness(es) each counsel intends to call at trial.
5. **Notice of Objections**. The Office of the Clerk of the Circuit Court shall provide written Notice of all filed objections to extended media coverage to the persons designated in Section (C)(2) and to the Media Coordinator.
6. **Written Orders**. The Judge shall enter a written Order on all requests for extended media coverage specifying the scope of coverage permitted. An Order for extended media coverage shall be effective for all subsequent proceedings until the conclusion of the involved case(s) or as otherwise ordered by the Court and subject to ruling on any filed objections. The form of an Order for Extended Media Coverage shall be as prescribed in Appendix "B."
7. **Timeframe for Request and Objections**. Calendar days shall be used for the purpose of calculating the timeframes for the filing of requests and objections.
8. **Certain Trial Proceedings Prohibited from Extended Media Coverage**. Extended media coverage is prohibited in any court proceeding required under Illinois law to be held in private. No coverage shall be permitted in any juvenile, dissolution, adoption, child custody, evidence suppression or trade secret cases. Extended media coverage is also prohibited as to evidentiary pre-trial motions, including Motions in Limine and in all Specialty Court proceedings including drug court, veteran's court and mental health court due to the sensitive nature of these proceedings unless otherwise ordered by the Court.

## D. **Equipment and Courtroom Conduct.**

1. **Enhanced Microphones**. Parabolic or other highly sensitive long-range microphones are prohibited.
2. **Assigned Locations**. The Court, in consultation with the Court's Court Media Liaison or designee will direct the news media to their assigned spot(s). Still photographers and videographers must stay seated unless they are positioned beyond the last row of spectator seats.

3. **Decorum**. In the courtroom, members of the news media shall:
   a. Not make comments in the courtroom during court proceedings;
   b. Not comment to or within hearing of the jury or any member thereof at any time before the jury is dismissed;
   c. Not conduct interviews in the courtroom; and
   d. Comply with the Orders and directives of the Court.
4. **Prohibition on Certain Materials**. Focusing on and photographing of materials on counsel tables, materials on evidence carts, or materials that have not yet been presented as evidence is prohibited.

E. **General Provisions.**
   1. **Temporary and Permanent Installations**. The Judge may order the news media to install any manner of temporary courtroom alterations including, but not limited, to a screen or divider to conceal the jury from the view of recording equipment. No permanent installation of any audio or visual recording equipment shall be made nor shall any court facility be altered, unless approved in advance by the Chief Judge. All expenses for permanent or temporary installations shall be borne by the news media.
   2. **Sub-contracting and Assignment**. Permission for extended media coverage shall not be sub-contracted or assigned.
   3. **Non-exclusivity**. This Rule shall not preclude coverage of a judicial proceeding by other members of the news media who have not been granted permission for extended media coverage.
   4. **Courthouse Security**. Court security policies require all persons and equipment entering the courthouse to pass through a magnetometer. News media representatives will not be permitted to bypass screening and should allow sufficient time to get through the magnetometer in advance of the commencement of proceedings.
   5. **Inadmissibility in Proceedings**. Film, videotape, photograph and audio reproductions obtained by and through extended media coverage shall not affect the official court record of the proceeding for purposes of appeal or otherwise. Nor shall the same be admissible as evidence in the proceeding out of which it arose or in any proceeding subsequent or collateral thereto.
   6. **Knowledge of Plan Provisions**. The Media Coordinator is charged with actual and constructive knowledge of the provisions contained within the Policy for Extended Media Coverage in Circuit Courts of Illinois and this Rule. By the submission of a Request for Extended Media Coverage, the Media Coordinator, respective agents from involved news media organizations and designees of such, acknowledge and agree to abide by all applicable provisions.
   7. **Sanctions**. In addition to contempt and any other sanctions allowed by law, the Judge or Chief Judge may remove anyone violating the Policy for Extended Media Coverage in Circuit Courts of Illinois or this Rule from the courtroom and revoke the privileges for extended media coverage.

8. **Revocation of Permission**. If the Media Coordinator or any media representative fails to comply with the conditions set forth in the Policy for Extended Media Coverage in Circuit Courts of Illinois, this Rule or other Orders imposed by the Judge or Chief Judge, the Judge or Chief Judge may impose restrictions on the dissemination, broadcast and/or publication of extended media coverage.

> Amended by the Circuit Judges of the Nineteenth Judicial Circuit this 4th day of August, 2025 and effective immediately.

Exhibit H, Page 18

M.R. 3140

**IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS**

Order entered February 2, 2017.

(Deleted material is struck through, and new material is underscored.)

Effective immediately, Illinois Supreme Court Rule 63 and an administrative order relating thereto are amended as follows.

**Amended Rule 63**

**Rule 63.**

CANON 3

A Judge Should Perform the Duties of Judicial
Office Impartially and Diligently

The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the following standards apply:

A. Adjudicative Responsibilities.

(1) A judge should be faithful to the law and maintain professional competence in it. A judge should be unswayed by partisan interests, public clamor, or fear of criticism.

(2) A judge should maintain order and decorum in proceedings before the judge.

(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.

(4) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge may make reasonable efforts, consistent with the law and court rules, to facilitate the ability of self-represented litigants to be fairly heard.

(5) A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:

(a) Where circumstances require, *ex parte* communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

(i) the judge reasonably believes that no party will gain a procedural or tactical

advantage as a result of the *ex parte* communication, and

(ii) the judge makes provision promptly to notify all other parties of the substance of the *ex parte* communication and allows an opportunity to respond.

(b) A judge may consult with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities or with other judges.

(c) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.

(d) A judge may initiate or consider any *ex parte* communications when expressly authorized by law to do so.

(6) A judge shall devote full time to his or her judicial duties, and should dispose promptly of the business of the court.

(7) A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to the judge's direction and control. This paragraph does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.

(8) Proceedings in court should be conducted with fitting dignity, decorum, and without distraction. The taking of photographs in the courtroom during sessions of the court or recesses between proceedings, and the broadcasting or televising of court proceedings is permitted only to the extent authorized by order of the sSupreme eCourt. This rule is not intended to prohibit local circuit courts from using security cameras to monitor their facilities. courtrooms, provided that cameras are controlled by designated court personnel. For the purposes of this rule, the use of the terms "photographs," "broadcasting," and "televising" include the audio or video transmissions or recordings made by telephones, personal data assistants, laptop computers, and other wired or wireless data transmission and recording devices.

(9) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not permit staff, court officials and others subject to the judge's direction and control to do so.

(10) Proceedings before a judge shall be conducted without any manifestation, by words or conduct, of prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, by parties, jurors, witnesses, counsel, or others. This section does not preclude legitimate advocacy when these or similar factors are issues in the proceedings.

B. Administrative Responsibilities.

(1) A judge should diligently discharge the judge's administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.

(2) A judge should require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge.

-2-

Exhibit H, Page 20

M.R. 3140

## IN THE
## SUPREME COURT
## OF
## THE STATE OF ILLINOIS

Order entered May 17, 2019.

(Deleted material is struck through, and new material is underscored.)

Effective immediately, the Administrative Order appended to Illinois Supreme Court Rule 68 is amended, as follows.

### Amended Rule 68

**Rule 68**

A judge shall file annually with the Clerk of the Illinois Supreme Court (the Clerk) a verified written statement of economic interests and relationships of the judge and members of the judge's immediate family (the statement).

As statements are filed in the Clerk's office, the Clerk shall cause the fact of that filing to be indicated on an alphabetical listing of judges who are required to file such statements. Blank statement forms shall be furnished to the Clerk by the Director of the Administrative Office of the Illinois Courts (the Director).

Any person who files or has filed a statement under this rule shall receive from the Clerk a receipt indicating that the person has filed such a statement and the date of such filing.

All statements filed under this rule shall be available for examination by the public during business hours in the Clerk's office in Springfield or in the satellite office of the Clerk in Chicago. Original copies will be maintained only in Springfield, but requests for examination submitted in Chicago will be satisfied promptly. Each person requesting examination of a statement or portion thereof must first fill out a form prepared by the Director specifying the statement requested, identifying the examiner by name, occupation, address and telephone number, and listing the date of the request and the reason for such request. The Director shall supply such forms to the Clerk and replenish such forms upon request. Copies of statements or portions of statements will be supplied to persons ordering them upon payment of such reasonable fee per page as is required by the Clerk. Payment may be by check or money order in the exact amount due.

The Clerk shall promptly notify each judge required to file a statement under this rule of each instance of an examination of the statement by sending the judge a copy of the identification form filled out by the person examining the statement.

The contents of the statement required by this rule shall be as specified by administrative order of this court.

Effective March 15, 1970; amended April 1, 1986, effective August 1, 1986.

**FILED**

MAY 17 2019

SUPREME COURT
CLERK

## ADMINISTRATIVE ORDER

The verified statements of economic interests and relationships referred to in our Rule 68, as amended effective August 1, 1986, shall be filed by all judges on or before April 30, 1987, and on or before April 30, annually thereafter. Such statements shall also be filed by every person who becomes a judge, within 45 days after assuming office. However, judges who assume office on or after December 1 and who file the statement before the following April 30 shall not be required to file the statement due on April 30. The form of such statements shall be as provided by the Administrative Director of the Illinois Courts, and they shall include all information required by Rule 68 and this order, including:

1. Current economic interests of the judge and members of the judge's immediate family (spouse and minor children residing with the judge) whether in the form of stock, bond, dividend, interest, trust, realty, rent, certificate of deposit, deposit in any financial institution, pension plan, Keogh plan, Individual Retirement Account, equity or creditor interest in any corporation, proprietorship, partnership, instrument of indebtedness or otherwise. Every source of noninvestment income in the form of a fee, commission, compensation, compensation for personal service, royalty, pension, honorarium or otherwise must also be listed. No reimbursement of expenses by any unit of government and no interest in deferred compensation under a plan administered by the State of Illinois need be listed. No amounts or account numbers need be listed in response to this paragraph 1. **In listing his or her personal residence(s) in response to this paragraph 1, the judge shall not state the address(es).** Current economic interests shall be as of a date within 30 days preceding the date of filing the statement.

2. Former economic interests of the type required to be disclosed in response to numbered paragraph 1 which were held by the judge or any member of the judge's immediate family (spouse and minor children residing with the judge) during the year preceding the date of verification. Current economic interests listed in response to numbered paragraph 1 need not be listed. No amounts or account numbers need be listed in response to this paragraph 2. **In listing his or her personal residence(s) in response to this paragraph 2, the judge shall not state the address(es).**

3. The names of all creditors to whom amounts in excess of $500 are owed by the judge or members of the judge's immediate family (spouse and minor children residing with the judge) or were owed during the year preceding the date of verification. For each such obligation there is to be listed the category for the amount owed as of the date of verification and the maximum category for the amount of each such obligation during the year preceding the date of verification of the statement. The categories for reporting the amount of each such obligation are as follows:

  (a) not more than $5,000;

  (b) greater than $5,000 but not more than $15,000;

  (c) greater than $15,000 but not more than $50,000;

  (d) greater than $50,000 but not more than $100,000;

  (e) greater than $100,000 but not more than $250,000; and

  (f) greater than $250,000.

Excluded from this requirement are obligations consisting of revolving charge accounts, with an

-2-

outstanding liability equal to or less than $5,000.

4. The name of any individual personally known by the judge to be licensed to practice law in Illinois who is a co-owner with the judge or members of the judge's immediate family (spouse and minor children residing with the judge) of any of the economic interests disclosed in paragraphs 1 and 2, and the name of any person who has acted as a surety or guarantor of any of the obligations required to be disclosed in paragraph 3.

5. A list of every office, directorship and salaried employment of the judge and members of the judge's immediate family (spouse and minor children residing with the judge). Exclude unsalaried positions in religious, social or fraternal organizations, and honorary positions.

6. Pending cases in which the judge or members of the judge's immediate family (spouse and minor children residing with the judge) are parties in interest and, to the extent personally known to the judge, pending cases in which a party is an economic entity in which the judge or any member of the judge's immediate family has an interest. Cases in which a judge has been sued in the judge's official capacity shall not be included.

7. Any fiduciary position, including executorships and trusteeships of the judge or members of the judge's immediate family (spouse and minor children residing with the judge).

8. The name of the donor and a brief description of any gifts received by the judge or members of the judge's immediate family (spouse and minor children residing with the judge). Gifts of transportation, food, lodging or entertainment having a value in excess of $250 must be reported. All other gifts having a value in excess of $100 must be reported. Gifts between the judge and the judge's spouse, children, or parents shall not be reported.

9. Any other economic interest or relationship of the judge or of members of the judge's immediate family (spouse and minor children residing with the judge) which could create a conflict of interest for the judge in the judge's judicial capacity, other than those listed in numbered paragraphs 1 to 8 hereof.

Prior to the first Monday in March of each year the Director shall inform each judge by letter of the requirements of this amended rule. The Director shall similarly inform by letter each person who becomes a judge of the requirements of the rule within 10 days of such person assuming office. The Director shall include with such letter instructions concerning the required statements, two sets of the statement forms, and one mailing envelope preaddressed to the Clerk. **The Clerk shall redact personal residence and e-mail addresses contained in any statement filed pursuant to Supreme Court Rule 68.** The letter, instructions, and statements shall be in substantially the form provided in the Article I Forms Appendix.

Adopted by Order Entered April 1, 1986; order amended April 20, 1987, effective August 1, 1987; order amended December 30, 1993, effective January 1, 1994; order amended December 1, 1995, effective immediately; order amended September 23, 2005, effective immediately; order amended June 22, 2017, eff. July 1, 2017; amended May 17, 2019, eff. immediately.

-3-

Exhibit H, Page 23

M.R. 31329

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

Order entered July 1, 2022.

Effective January 1, 2023:

1.  Supreme Court Rule 71 is amended to read as follows:

    **Rule 71. Violation of ~~Rules~~ Code of Judicial Conduct**

    A judge who violates ~~Rules 61 through 68~~ the Illinois Code of Judicial Conduct of 2023 may be subject to discipline by the Illinois Courts Commission.

2.  The provisions of the Illinois Code of Judicial Conduct, Supreme Court Rules 61 through 68, are repealed and replaced by the following Illinois Code of Judicial Conduct of 2023.

3.  The Administrative Order accompanying current Supreme Court Rule 68 is repealed and replaced by the Administrative Order accompanying Rule 3.15 in the Illinois Code of Judicial Conduct of 2023.

4.  The Administrative Order accompanying current Supreme Court Rule 63 is appended to Supreme Court Rule 44.

## ARTICLE XI. ILLINOIS CODE OF JUDICIAL CONDUCT OF 2023

### PREAMBLE & SCOPE

[1] An independent, fair, and impartial judiciary is indispensable to our system of justice. The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of judges with integrity, will interpret and apply the law. Thus, the judiciary plays a central role in preserving justice and the rule of law.

**FILED**

JUL 1 - 2022

SUPREME COURT
CLERK

Exhibit 1, Page 24



<p style="color:red; text-align:center; font-size:1.5em">NEW ILLINOIS SUPREME COURT RULE<br>Does NOT include the wording "Screenshots"</p>

**Rule 44. Photography and Video in the Courtroom**

(a) Except as provided in paragraph (b) of this Rule, the taking of photographs in the courtroom during sessions of the court or recesses between proceedings and the broadcasting or televising of court proceedings are permitted only to the extent authorized by order of the Supreme Court. For the purposes of this rule, the use of the terms "photographs," "broadcasting," and "televising" includes the audio or video transmissions or recordings made by telephones, personal data assistants, laptop computers, and other wired or wireless data transmission and recording devices. This prohibition does not extend to areas immediately adjacent to the courtroom, but courts may by order regulate or restrict the use of those areas where the circumstances so warrant.

(b) The foregoing prohibition is not intended to prohibit local circuit courts from using security cameras to monitor their facilities. Additionally, photography and/or video in the following situations are explicitly permitted

(1) Where permitted pursuant to a court order under the Supreme Court's Extended Media Coverage Policy;

(2) In any proceeding conducted remotely pursuant to Rules 45 and 241 and any other rules governing remote appearances;

(3) To live broadcast any proceeding that is conducted remotely, or at which remote attendance is permitted;

(4) If permitted by the judge, and on such conditions as ordered by the judge, for ceremonial events such as marriages, investitures, and graduations in problem solving courts;

(5) If permitted by the judge, for parties and counsel to make a copy of a court order or other paperwork received in court;

(6) If permitted by the judge, to make a broadcast available to interested persons, such as victims of crime or persons who have a statutory right to be present during court proceedings but who do not wish to attend in person.

(c) Nothing in this Rule permits the photographic recording, digital capturing, or other recording of a remote proceeding or a court broadcast of a proceeding except (1) a recording by the court or at the court's direction or (2) pursuant to the terms of an order approving extended media coverage.

Adopted December 16, 2020, eff. immediately.

<p style="text-align:center">Committee Comments<br>(January 1, 2023)</p>

Effective January 1, 2023, Rule 63 is repealed and replaced by the adoption of the Illinois Code of Judicial Conduct of 2023. Comments below are retained to document Rule 44's history.

(December 16, 2020)

The prohibition against photographing courtroom proceedings was formerly part of Supreme Court Rule 63. It has been relocated and expanded for a number of reasons. First, Rule 63 is a part of the Canons of Judicial Ethics, and the matters covered by this Rule are not predominantly related to judicial ethics. Second, the increased use of remote court appearances required that the Court provide additional guidance for the use of live streaming court appearances to preserve public access to the courts. Finally, the process of revising the Rule brought to light other instances in which courtroom photography or video are already permitted or are otherwise desirable.

**APPENDIX**

M.R. No. 2634.

Order entered April 16, 2007; amended February 2, 2017.

Any security cameras installed in the courtrooms in the various circuits shall be in accordance with the following standards; (1) security cameras are to be placed in areas of the courtroom such that there is no video recording of the jury or witnesses; (2) audio recordings of the proceedings are prohibited in connection with security cameras; (3) use of such cameras is limited to security purposes and any video tape produced therefrom shall remain the property of the court and may not be used for evidentiary purposes by the parties or included in the record on appeal; (4) security cameras shall be monitored by designated court personnel only; and (5) signs shall be posted in and outside of the courtroom notifying those present of the existence of the court surveillance.

All recordings from security cameras monitoring court facilities are the property of the local circuit courts and are deemed to be in the possession of the local circuit courts notwithstanding actual possession by another party.

-2-

Exhibit H, Page 27